**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CAMPUS INVESTMENTS, INC., | ) | |
| | ) | **FILED: JULY 3, 2008** |
| Plaintiff, | ) Case No. | 08CV3835 |
| v. | ) | JUDGE SHADUR |
| | ) Judge | MAGISTRATE JUDGE MASON |
| LAKE COUNTY STORMWATER | ) | MKH |
| MANAGEMENT COMMISSION, and | ) Magistrate | |
| LAKE COUNTY, ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**NOTICE OF REMOVAL OF**
**CIVIL ACTION TO DISTRICT COURT (28 U.S.C. § 1441)**

COMES NOW Campus Investments, Inc, and Zero Energy Estates, LLC and pursuant to 28 U.S.C. § 1441 file this notice of removal of the lawsuit filed on June 20, 2008 in the Circuit Court for Nineteenth Judicial Circuit, Lake County, Illinois, Case No. 08-CH-2376, titled *County of Lake, et. al, v. Campus Investments, et. al.,* and represents as follows:

1.      This court has jurisdiction over this proceeding pursuant to 28 USC § 1441(b).

2.      On May 27, 2008 Campus Investments, Inc, ("Campus") filed a complaint in this court docketed as Case No. 08-cv-3046, against Lake County and Lake County Stormwater Management Commission (collectively "Lake County") the case is now pending before Senior District Judge George Lindberg.

3.      On May 29, 2008 Lake County was served the summons and complaint (ECF Dkt #6 in 08-cv-3046). On June 17, 2008 a verified amended complaint was filed alleging that Lake County retaliated against Campus for filing the complaint challenging it's wetland

1

authority, and that Lake County denied access and linked the right to access with the resolution of the litigation. (ECF Dkt # 10). Also, on June 17, 2008 a preliminary injunction was filed, along with a notice of hearing. (ECF Dkt # 11-13). On June 18, 2008 a temporary restraining order was filed after Lake County fenced the property to prevent all access to the property. (ECF Dkt # 14). Later that day, attorneys entered appearances for Lake County and SMC. (ECF Dkt # 15, 18). On June 20, 2008 the TRO was denied (ECF Dkt # 23).

4.      On June 20, 2008 Lake County and Lake County Stormwater Management Commission (collectively "Lake County") filed a lawsuit against Campus Investments ("Campus"), and Zero Energy Estates, LLC, in the **Circuit Court for the Nineteenth Judicial Circuit, Lake County**, Illinois, Case No. 08-CH-2376, titled *County of Lake, et. al, v. Campus Investments, et. al.* ("State Complaint" copy attached as Exhibit A).

5.      This **case is properly before this Court pursuant to 28 U.S.C. § 1441(b)**. Campus Investments, Inc. is incorporated in, and has its principal office in Ohio. Zero **Energy Estates, LLC which has nothing to do with this litigation**, is incorporated in and has its principal office in Missouri. Lake County and SMC, are political corporations from Illinois. The value of the property exceeds $1 million. (ECF Dkt # 10).

6.      28 U.S.C. § 1446(a) provides that a defendant "desiring to remove any civil action . . . from a State court shall file in the district court . . . a notice of removal signed . . . . containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." This notice contains the grounds for removal, and the state complaint is attached.

7.    28 U.S.C. § 1446(b) provides that the "notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant . . ." This notice of removal is filed well within the thirty day period (State Complaint filed on June 20, 2008).

8.    28 U.S.C. § 1446(d) provides that "[p]romptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which **shall effect removal and the State court shall proceed no further** unless and until the case is remanded." Copies of this removal notice have been filed with the state court and copies served on Lake County and SMC pursuant to 28 U.S.C. § 1446(d).

9.    Zero Energy Estates, LLC has no interest in this controversy. According to the State Complaint. Campus "is the owner" of 28 acre parcel at issue. (State Compl. ¶ 3). Lake County sent a letter to Campus asking them to obtain a permit from Lake County. (ECF Dkt #10, Verified Amend. Compl ¶ 35, Ex. C). Campus sought approval for the no wetland impact letter. (*Id*. ¶ 35). All village permits for subdivision and development of the property were issued to Campus. (*Id*. ¶ 34). The approval to bring fill into the property is issued to Campus. (*Id*. ¶ 47). The responses from Lake County were all issued to Campus engineer. (State Complaint Ex. A, B and C). Lake County's affidavit presented at the TRO hearing, confirmed that the application for access was from Campus. (Duckert Aff. ¶ 4-6).

10.    Zero Energy Estates, LLC has no basis for being included as a defendants in the State Complaint. The Sate Complaint alleges that "Zero Energy Estates, LLC represents itself to be the contract purchaser" of the property. (State Compl. ¶ 4). Zero Energy is not the contract purchaser, and has no right of possession of the property, hence, it is unclear what purpose Lake County had in naming Zero Energy as a defendant. See *Gottlieb v. Westin*

3

*Hotel Co.*, 990 F.2d 323, 328 (7th Cir. 1993) ("it is unclear what purpose [plaintiff] had in naming the limited partnerships as defendants in this action" the "limited partnerships played no role in the creation or sale of the partnership units.")

11.    Moreover, a contract purchaser without "a possessory interest" lacks "standing to maintain this action questioning the validity of the ordinance." *Clark Oil & Refining Corp. v. City of Evanston*, 177 N.E.2d 191, 192 (Ill. 1961). Lake County argued this in *Metroweb v. County of Lake*, 474 N.E.2d 900, 902 (Ill. App. 1985) where "the county of Lake, moved to dismiss the complaint on the basis that plaintiff lacked standing to bring the action because under the provisions of the agreement, plaintiff was not obligated to pay rent unless the necessary zoning approval was granted by the county and thus, did not have a 'possessory interest' in the property." The court agreed and dismissed the complaint. *Id.*

12.    Zero Energy Estates has no genuine interest in this controversy. See *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 328 (7th Cir. 1993) (fraudulent joinder established to "limited partnerships played no role in the creation or sale of the partnership units."); *Faucett v. Ingersoll-Rand Mining & Machinery Co.*, 960 F.2d 653, 654-55 (7th Cir. Ill. 1992) (defendant "had absolutely nothing to do with any roof-bolters" that caused plaintiff's injury "is sufficient to establish fraudulent joinder."); *Bodine's, Inc. v. Federal Ins*. Co., 601 F. Supp. 47, 49-50 (N.D. Ill. 1984) (plaintiffs could not possibly recover contract damages from defendants who were not parties to contract); *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 94, 96-98 (1921) (defendant was not present at all when the plaintiff was injured); *Wecker v. National Enameling & Stamping Co.*, 204 U.S. 176, 183-85 (1907) (defendant was merely a draftsman with no responsibility for designing the machine at issue).

### ALTERNATIVE BASIS FOR REMOVAL (RETALIATION)

13.    An alternative basis for removal is found in 28 U.S.C. § 1441(b) which permits the removal of any "civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties."

14.    This court has original jurisdiction because the State Complaint is a retaliatory filing in response to the original lawsuit challenging Lake County's regulation of wetlands in the first instance. The underlying dispute arises over Lake County's **regulation of wetlands without statutory authority**. Lake County has retaliated against Campus for challenging it's wetland authority. Lake County has linked the preservation of wetlands, with the right of access to the property. Lake County has denied Campus access to it's property, and has taken the extraordinary step of **fencing the property** to prevent all access and use.

15.    After the federal complaint was filed in 08-cv-3046, Campus imported fill onto the "property during the first two weeks in June 2008." (Ex. A, State Compl. ¶ 21). Campus sought from Lake County, an access permit, which was approved ten months earlier, Lake County linked the access permit with wetland preservation. (ECF Dkt #10, Verified Amend. Compl ¶ 45-46). The Lake County Highway Access Reg. Ord.§ 3.12 states that the "County Engineer shall also have the **authority to delay the issuance of permits** if the property. . . has not complied with the provisions of the Access Ordinance or **any other ordinance**, statute, regulation or administrative order **that may apply to such property**." Lake County has in effect linked the right of access with giving up wetlands without compensation.  See *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994) (unconstitutional condition give up right to receive just compensation when property is taken in exchange for access to property).

16.     On June 17, 2008 Campus filed a Verified Amended Complaint, alleging that Lake County linked the right to access the property to agreeing to their wetland regulations. (Verified Amend. Compl. ¶ 46, 48). Lake County denied access in retaliation "for suing the Defendants over the regulation of isolated wetlands." (Am. Compl ¶ 67). Lake County seeks "to chill the assertion of constitutional and statutory rights, by forcing developers to give up their rights to develop isolated wetlands or face retaliatory denials of their project in violation of the First Amendment . . . which is actionable under 42 U.S.C. § 1983." (Am. Compl ¶ 68). "The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights--to protect the people from unconstitutional action under color of state law." *Mitchum v. Foster* 407 U.S. 225, 242-43 (1972).

17.     On June 17, 2008 Campus also filed a preliminary injunction motion to obtain access to the property. (ECF Dkt # 11). The next day, on June 18, 2008, Lake County **fenced the property**, under threat of arrest, preventing all access and use. (Dkt # 37, Aff. ¶ 13-18). Later that day, on June 18, 2008, Campus filed a TRO to obtain access. (ECF Dkt #14).

18.     Within hours after the TRO was filed, Lake County entered an appearance, and immediately moved for more time to respond stating it was "in the process of reviewing the complaint" and "has not had sufficient time to review the complaint" and the "records relating to the plaintiff." (ECF Dkt #16). However, two days later, on June 20, 2008, after the hearing on the TRO was held, Lake County found time to file the State Complaint, and then immediately moved for abstention, with only one days notice. (ECF Dkt # 25-27).

19.     On Wednesday June 18, 2008 Lake County did not have "sufficient time to review the [federal] complaint" yet on Friday June 20, 2008 Lake County has sufficient time

to file a State Complaint, in a clear effort to create a state filing in which to move for abstention. The State Complaint alleges that the wetland were filled on May 24-26, 2008 (State Compl. ¶ 18). There was no urgency on June 20, 2008, Lake County seized the property, they fenced it and prevented all use, the also threatened to arrest anyone who accessed the property. (ECF Dkt # 37, Aff. ¶ 13-18). The only event after the fence was put up, is the injunction hearing was filed and set for hearing.

20.    The **timing of the State Complaint** is no coincidence. According to the State Complaint, on May 24-26, 2008 the wetlands are filled. On May 27, 2008, the federal complaint is filed. On June 17, 2008 the Amended Complaint alleging retaliation is filed, along with a preliminary injunction. The next morning, Lake County **fences the property**, under threat of arrest. Campus files for a TRO, and two days later (right after the hearing) Lake County files the State Complaint and immediately moves for abstention.

### THE STATE COMPLAINT IS FILED FOR HARASSMENT IN BAD FAITH

21.    As explained below, Lake County lacks authority to regulate wetlands within the incorporated village of Grayslake. Consequently, Lake County has no reasonable hope of prevailing in state court which evidences **prima facie harassment and bad faith**.

22.    Lake County regulates wetlands inside villages pursuant to 55 ILCS 5/5-1062. The legislative purpose is identified in § 5-1062(a) as floodplain and stormwater management. The state statute comprises 2,504 words, and uses the word "stormwater" fifty-one times, the word "wetland" is absent from its language.

23.    Lake County's lack of authority is displayed by § 5-1062(k) which mandates that "the **county shall not enforce** rules and regulations adopted by the county in any municipality" that has a consistent "stormwater management ordinance."

24.    Each of the three letter exhibits attached to the State Complaint confirm that "Grayslake is a certified community for approval and enforcement of the standard (stormwater management) provisions of the WDO." (State Compl. Ex. A, B and C). Nonetheless, Lake County's "approval of isolated wetland impacts (or a no wetland impact determination) is required prior to the Village's issuance" of a permit. A permit is required for direct or indirect impacts, if "no direct or indirect impacts" will occur, a no impact letter from Lake County is required. (*Id.*).

25.    The state statute further limits Lake County's authority to adopting "rules and regulations for **floodplain management** and for governing the location, width, course and release rate of all **stormwater runoff** channels, streams and basins in the county." § 5-1062(f). Lake County has expanded the strictly construed state statute to include the regulation of wetlands, soil erosion, and municipal planning. Lake County's essentially a boundless view of the scope of its power is demonstrated by their reliance on the stormwater statute to license village engineers, wetland scientists and erosion inspectors.[1]

26.    The state statute limits Lake County's right to enter property "for the purpose of **inspecting stormwater facilities** or causing the removal of any obstruction to an affected

---

[1] Lake County's regulation of wetlands within incorporated villages also conflicts with the exclusive power of villages to establish "standards of design for subdivisions" including requirements for "storm water drainage." (65 ILCS 5/11-12-5). Villages also have exclusive zoning power within "within the corporate limits" of the municipality, including the power to "establish, regulate and limit. . . storm or floodwater runoff channel or basin." (65 ILCS 5/11-13-1). The County Code limits the county's subdivisions power to land "not being within" any "village." (55 ILCS 5/5-1041). The county's zoning power is similarly limited to the "entire county outside the limits" of "villages." (55 ILCS 5/5-12001). County building permits are limited to areas "located outside the limits" of "villages." (55 ILCS 5/5-1063).

watercourse." § 5-1062(j). Lake County demonstrates remarkable reluctance in applying the simple language of the statute and expands the limited inspection authority and demands "wetland compliance inspections." (State Compl. Ex. A, B and C).

27.    The plain language of § 5-1062(a), (k), (f) and (j) confirms that Lake County regulates outside their authority and in direct conflict with the explicit statutory language. "Counties . . . shall have only powers granted to them by law." Ill. Const. Art. VII § 7. The "powers" of "counties, are **not to be enlarged**" but "**strictly construed**" against the governmental entity." *Inland Land Appreciation Fund v. County of Kane*, 800 N.E.2d 1232, 1236 (Ill. App. 2003). It is not proper "to **depart from plain language** by reading into a statute exceptions, limitations, or conditions which **conflict** with the clearly expressed legislative intent." *County Knox v. The Highlands, L.L.C.*, 723 N.E. 2d 256, 263 (Ill. 1999).

28.    Lake County lacks authority to regulate the plaintiffs wetlands within the incorporated village of Grayslake. See § 5-1062(k) ("county shall not enforce rules and regulations" in "any municipality" with a consistent stormwater ordinance). Lake County has no reasonable hope of prevailing which evidences prima facie harassment and bad faith. See *Perez v. Ledesma*, 401 U.S. 82, 118 n.11 (1971) (Brennan, J., concurring) (Bad-faith harassment can, of course, take many forms, including where "there is no reasonable hope of obtaining a conviction."); *Shaw v. Garrison*, 467 F.2d 113, 119-20 (5th Cir. 1972) (perjury charge was in bad faith because no witnesses were available to testify against the person).

29.    The denial of access, the fencing of the property and the filing of the State Complaint are a **pattern of continued harassment and retaliation** for filing the pending

federal litigation. "An act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper." *Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005). "An action that would otherwise be permissible is unconstitutional if it is taken in retaliation for the exercise of the right of access to the courts." *Bradley v. Pittsburgh Bd of Ed.*, 910 F.2d 1172, 1177 (9th Cir 1990). See also, *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1428 (8th Cir. 1986) (state officials conspired to condemn plaintiff's land in "retaliation for filing lawsuits"); *Cate v. Oldham*, 707 F.2d 1176 (11th Cir. 1983) (state attorney instituted action for malicious prosecution in retaliation for suit against them); *Show-World Ctr., Inc. v. Walsh*, 438 F. Supp. 642, 649-51 (S.D.N.Y. 1977) (court found "bad faith enforcement of the New York City building code in order to suppress plaintiff's First Amendment rights.")

WHEREFORE, pursuant to 28 U.S.C. § 1441 the recently filed lawsuit in the Circuit Court for the Nineteenth Judicial Circuit, Lake County, Illinois, Case No. 08-CH-2376, titled *County of Lake, et. al, v. Campus Investments, et. al.*, is hereby removed to this Honorable Court for further proceedings.

Dated: July 3, 2008                    Respectfully submitted,

                                       *Sebastian Rucci*
                                       Sebastian Rucci (ND IL No. 90785689)
                                       40 The Ledges, 3C
                                       Youngstown, Ohio 44514
                                       Phone: (330) 707-1182
                                       Fax:    (330) 707-1882
                                       Email: SebRucci@Gmail.com
                                       Attorney for Campus Inv. and Zero Energy

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2008, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties via the Court's electronic filing system and

parties may access this filing through the Court's Case management/Electronic Case Files

(CM/ECF) found on the internet at https://ecf.ilnd.uscourts.gov. A copy was also emailed to

Daniel Jasica at djasica@co.lake.il.us, and to Lisle Stalter at lstalter@co.lake.il.us and to

James Bakke at lojbakk9876@sbcglobal.net.

Sebastian Rucci (ND IL No. 90785689)

11

DUPLICATE ORIGINAL   **SUMMONS**

## IN THE NAME OF THE PEOPLE IN THE STATE OF ILLINOIS, IN THE CIRCUIT COURT
## OF THE NINETEENTH JUDICIAL CIRCUIT,
## LAKE COUNTY, ILLINOIS

| | |
|---|---|
| COUNTY OF LAKE and LAKE COUNTY )<br>STORMWATER MANAGEMENT )<br>COMMISSION )<br>_____ )<br>_____ )<br>_____ )<br>**Plaintiffs**)<br>vs. )<br>)<br>CAMPUS INVESTMENTS, INC. and )<br>ZERO ENERGY ESTATES, LLC. )<br>_____ )<br>_____ )<br>_____ )<br>_____ )<br>**Defendants**) | *08 CH 2376*<br>No. _____<br><br>CAMPUS INVESTMENTS, INC.<br>c/o Sebastian Rucci<br>40 The Ledges, 3C<br>Youngstown, Ohio 44514<br><br>08CV3835<br>JUDGE SHADUR |

To each of the above-named defendants:                    MAGISTRATE JUDGE MASON

MKH

You are hereby summoned and required to file an answer in this case, or otherwise file your appearance, in the office of the Clerk of this Court, within 30 days after service of this summons, exclusive of the day of service. If you fail to do so, a judgment or decree by default may be taken against you for the relief prayed in this complaint.

This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed.

This summons may not be served later than 30 days after its date.

WITNESS SALLY D. COFFELT. Clerk of said Circuit Court, and the seal thereof at Waukegan, Illinois, this _____ day of
JUN 2 u _____ A.D., 20 _____

_Sally D. Coffelt_
**SALLY D. COFFELT, Clerk**

SEAL
OF
COURT

**Plaintiff's Attorney:**
(or plaintiff, if he be not represented by attorney) Daniel L. Jasica #6237373
Assistant State's Attorney

Date of Service: _____, 20 _____        Address 18 N. County St., Waukegan, IL
(To be inserted by officer on copy left with defendant or        Telephone (847) 377-3050
other person.)

STATE OF ILLINOIS          )
                           ) ss
COUNTY OF LAKE             )

IN THE CIRCUIT COURT OF THE NINETEENTH
JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS

COUNTY OF LAKE and LAKE COUNTY )
STORMWATER MANAGEMENT          )
COMMISSION                     )
          Plaintiffs,          )
                               )
vs.                            )        General No. 08 CH 2376
                               )
CAMPUS INVESTMENTS, INC. and   )
ZERO ENERGY ESTATES, LLC       )
                               )
                               )
          Defendants.          )
                               )

## VERIFIED COMPLAINT FOR ORDINANCE VIOLATIONS
## SEEKING INJUNCTIVE RELIEF AND MONETARY FINES

Plaintiffs, County of Lake and Lake County Stormwater Management Commission, by

and through their counsel, Michael J. Waller, State's Attorney of Lake County, and Daniel L.

Jasica and Lisle Stalter, Assistant State's Attorney, and James Bakk, Special Assistant State's

Attorney complains of Defendants Campus Investments, Inc. and Zero Energy Estates, LLC and

allege as follows:

1.    Plaintiff County of Lake ("County") is a body politic and corporate of the State of

Illinois.

2.    Plaintiff Lake County Stormwater Management Agency ("SMC") is an agency of

Lake County established pursuant to 55 ILCS 5/5-1062.

3.    Defendant Campus Investments, Inc. ("Campus") is the owner of an

1

approximately 28-acre parcel of undeveloped property located at 21157 West Rollins Road, Grayslake, Illinois, PIN 06-15-200-018 (the "Subject Property").

4.      Zero Energy Estates, LLC ("Zero") represents itself to be the contract purchaser of the Subject Property.

5.      Venue is proper in this Court pursuant to Section 2-101(2) and 2-102(a) of the Illinois Code of Civil Procedure, 735 ILCS 5/2-101(2) and 5/2-102(a).

6.      Commencing over the Memorial Day weekend, May 24-26, 2008, and continuing thereafter, grading and other development activities occurred on the Subject Property and fill material has been brought onto the Subject Property from Rollins Road, dumped, and bulldozed into existing wetlands on the Subject Property, without the necessary highway access permits from the Lake County Division of Transportation ("LCDOT") or the necessary permits and approvals from SMC.

8.      This conduct by or at the direction of Campus and Zero violates the Lake County Highway Access Regulation Ordinance and the SMC Watershed Development Ordinance for which the County and SMC seek injunctive relief and monetary fines from the Defendants.

COUNT I-Violations of the Watershed Development Ordinance

1-8. SMC restates and realleges Paragraphs 1-8 above as and for Paragraphs 1-8 of this Count I of this Complaint as if fully set forth herein.

9. That, at all times pertinent to this action, there was and is in full force and effect a Lake County Watershed Development Ordinance ("WDO"), which provides county-wide minimum stormwater management rules and regulations relating to development or improvement of real property in Lake County, Illinois.

2

10. That the Subject Property consists of approximately 28 acres, upon which is located

an Isolated Waters of Lake County (hereinafter "wetlands"), as defined in the WDO (Appendix

A), consisting of approximately 16.5 acres.

11. That the Village of Grayslake is not certified to administer the Wetlands provisions

of the WDO, and, therefore, the WDO Wetlands provisions are administered by SMC.

12. That WDO, Art. IV, §A.(1), provides:

> No person ... shall commence any development regulated by this Ordinance
> on any lot or parcel of land without first obtaining a Watershed Development
> Permit from the (SMC) ... A Watershed Development Permit is required for
> any development ... which:
>
> > (d) Creates a wetland impact within an area defined as ... Isolated
> > Waters of Lake County; ....

13. That WDO, Art. IV, § E (2)(c) specifies certain of the Watershed

Development Permit submittal requirements for proposed developments with wetland impacts

to Isolated Waters of Lake County.

14. Defendants, knowing of WDO permit requirements, submitted to SMC on March 8,

2007 a General Development Plan for the Subject Property, as well as a wetland delineation

report, prepared by Christopher B. Burke Engineering, Ltd. (CBBEL). On April 2, 2007, the

SMC sent to Defendants, or their representatives, a review letter which identified the Subject

Property as having Isolated Waters of Lake County located thereon. (A copy of the April 2, 2007

SMC letter is attached hereto, marked Exhibit A, and incorporated by reference.)

15. Defendants' next contact with the SMC was an August 2, 2007 requesting a Letter of

No Wetland Impact determination from the SMC. By a letter dated August 17, 2007, the SMC

responded to Defendants, or their representatives, advising that a grading plan showing the

3

surveyed wetland boundary was required. (A copy of the SMC August 17, 2007 letter is attached, marked Exhibit B, and incorporated by reference.)

16. On January 9, 2008, Defendants submitted to the SMC updated plans for the development of the Subject Property, along with a revised wetland hydrology analysis. By a letter dated February 13, 2008, the SMC responded to Defendants' submittals by, among other things, noting that the wetland limits shown on the grading plan do not coincide with the wetland boundaries shown in the CBBEL wetland delineation report. The SMC advised Defendants that review of the wetlands submittals could not proceed until the delineated wetland boundary was reviewed in the field. The SMC asked Defendants to re-stake the wetland boundary and call for a site inspection. (A copy of the February 13, 2008 SMC letter is attached, marked Exhibit C, and incorporated by reference.)

17. Defendants did not respond to the SMC February 13, 2008, request for a field review of the wetland boundary.

18. Over the Memorial Day weekend, on or about May 24-26, 2008 Defendants, or their agents, contractors, or representatives, commenced grading on the Subject Property and filled in or impacted approximately 2.5 acres of the Isolated Waters of Lake County on the site.

19. Defendant(s) actions in commencing development activities on the Subject Property, without a properly issued Watershed Development Permit, on or about May 24-26, 2008, and thereafter, constitute a violation of the WDO permit requirements.

20. On Tuesday, May 27, 2008 the Village of Grayslake issued a stop work order to Defendant(s).

21. Other development activity, including additional importation of fill, has been

4

performed on the Subject Property during the first two weeks of June 2008, in further violation of WDO permitting requirements.

22. That SMC has no adequate legal remedy to effectuate the replacement or restoration of the wetlands that Defendants have caused to be filled in knowing violation of applicable county-wide minimum WDO permitting requirements and regulations relating to isolated waters of Lake County.

WHEREFORE, Plaintiff Lake County Stormwater Management Commission prays that this Honorable Court:

A) enter a preliminary injunction and, after trial, a permanent injunction against Defendants, enjoining Defendants to cease and desist from any development activities on the Subject Property unless and until after all required WDO permits have been first obtained;

B) enter a preliminary injunction and, after trial, a permanent injunction against Defendants, that Defendants be ordered to restore the filled or impacted wetlands in accordance with WDO requirements, or to replace the filled or impacted wetlands with newly established wetlands of a size, hydrology, and function as provided in the applicable mitigation provisions of the WDO;

C) that the Defendants be fined $1,000 for each day that the Court finds that a violation has existed; and,

D) for such other or further relief as is just and equitable under the circumstances.

COUNT II-Violations of the Lake County Highway Access Regulation Ordinance

9. The County restates and realleges Paragraphs 1 through 8 above as and for Paragraphs 1 through 8 of this County II of this Complaint, as though fully set forth herein.

5

10.     Rollins Road is a county highway owned and operated by the Lake County

Division of Transportation. The Subject Property abuts the south side of the Rollins Road right-

of-way.

11.     Prior to the recent events, a seasonal dirt farm field access for farm equipment

existed on the Subject Property. On or about June 14, 2008, the existing dirt access was

expanded, modified, and improved by Defendants, or their agents, contractors, or representatives,

with multiple loads of fill and topped with course gravel to allow construction equipment to enter

the Subject Property.

12.     Pursuant to its statutory authority set forth at 605 ILCS 5/5-413 and 605 ILCS

8/801, the County has adopted the Lake County Highway Access Regulation Ordinance (the

"Access Ordinance"), in effect at all relevant times, which regulates access to and from County

highways, such as Rollins Road.

13.     Pursuant to Section 4 of the Access Ordinance:

An access permit shall be required for the construction of any new access facility
or the modification of any existing access facility within the right-of-way of a
County Highway when the work is to be done by any person or public agency
other than Lake County or when the use of an existing facility is changed.

14.     Section 2.4 of the Access Ordinance defines an "access facility" as "[a] private or

public driveway or road providing service to and/or from abutting property to a highway."

15.     Defendants have violated and continue to violate the Access Ordinance by

modifying, expanding, altering, and changing the use of an access facility without having

obtained a permit for LCDOT and by allowing construction equipment to access to the Subject

Property through the illegal access.

16.     Section 3.12 of the Ordinance provides that:

6

Whoever shall construct, or cause to be constructed, any access facility in
violation of the requirements of this Ordinance shall be subject to a fine of not
less than $100.00 and not more than $500.00 for each access facility so
constructed. Each day that the access facility is in place in violation of this
Ordinance shall constitute a separate offense, subject to the above penalties. A
violation shall also include any access facilities to County highways built without
approval, and a permit as required by this Ordinance as well as approved facilities
built with substandard designs and specifications....

The provisions of this Ordinance shall not be deemed exclusive and shall not be
deemed to prevent the maintenance of any other action or proceeding in law or in
equity to enforce the provisions of this Ordinance or to vacate and remove any
access facility constructed in violation of this Ordinance.

WHEREFORE, Plaintiff County of Lake respectfully prays that this Honorable Court:

Order:

A.       Enter a preliminary injunction and, after trial, a permanent injunction, enjoining

Defendants from accessing the Subject Property from Rollins Road unless and until they have

obtained all necessary permits from LCDOT for the access facility to the Subject Property, or

alternatively, compelling Defendants to remove the access facility from the Subject Property;

B.       Fining Defendants, jointly and severably, $500.00 per day for each day the illegal

access facility has been in place and continues to be in place in violation of the Access

Ordinance; and

C.       Ordering such other and further relief as this Court deems just and equitable.

7

Respectfully submitted,
COUNTY OF LAKE

MICHAEL J. WALLER
State's Attorney of Lake County

DANIEL L. JASICA
Assistant State's Attorney

Michael J. Waller
State's Attorney of Lake County
Daniel L. Jasica #06237373
Lisle Stalter
Assistant State's Attorney
18 North County Street, 3rd Floor
Waukegan, IL 60085
(847) 377-3050

James Bakk (#3121531)
Special Assistant State's Attorney
200 N. M.L. King Ave., Suite 206
Waukegan, Il. 60085
(847) 249-9900

U:\WPDATA\CIVIL\LSdlj\08 cv3046-Campus Inv\complaint.wpd

8

## **VERIFICATION**

Tony Wolff, Chief Engineer, Lake County Stormwater Management Commission,

being of legal age and sound mind, and being sworn on oath does state and depose and, under

penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, certifies

that the statements set forth in Count I, Paragraphs 1-22 of this instrument are true and correct,

and that statements made on information and belief, based upon reasonable investigation, the

undersigned certifies that he verily believes the same to be true.

Tony Wolff

SUBSCRIBED & SWORN to before
me this 20th of June, 2008.

NOTARY PUBLIC

"OFFICIAL SEAL"
LESLIE BULAICH
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 10-7-2009

## **VERIFICATION**

Betsy Duckert, Development Engineer, Lake County Division of Transportation, being of legal age and sound mind, and being sworn on oath does state and depose and, under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, certifies that the statements set forth in Count II, Paragraphs 1-16 of this instrument are true and correct, and that statements made on information and belief, based upon reasonable investigation, the undersigned certifies that she verily believes the same to be true.

_Betsy Duckert_
Betsy Duckert

SUBSCRIBED & SWORN to before
me this 20th of June, 2008.

_Linda J. Miller_
NOTARY PUBLIC

LINDA J. MILLER
MY COMMISSION EXPIRES
NOVEMBER 10, 2011
OFFICIAL SEAL

**STORMWATER MANAGEMENT COMMISSION**

April 2, 2007

Mr. Sebastian Rucci
3058 Chardonnay Lane
Poland, OH 44514

Subject:     **Watershed Development File #07-11-040**
             **Proposed Autumn Ridge Subdivision on Rollins Road**
             **(PIN # 06-15-200-018)**
             **Grayslake, Lake County, Illinois**
             **ISOLATED WETLANDS REVIEW #1**

Dear Mr. Rucci:

Thank you for your submittal for the subject development, received by the Lake County Stormwater Management Commission (SMC) on March 8, 2007. The submittal included the General Development Plan prepared by your firm dated 2-07-07 and the wetland delineation report prepared by Christopher B. Burke Engineering, Ltd. (CBBEL) dated 10-18-05. Please reference the above Watershed Development File # in future correspondence with SMC related to this development.

A Watershed Development Permit (WDP) from the Village of Grayslake is required for the proposed development, in accordance with the Lake County Watershed Development Ordinance (WDO, 1-10-06). Grayslake is a certified community for approval and enforcement of the standard (stormwater management) provisions of the WDO, but not the isolated wetland provisions of the WDO. Please contact Mr. Kurt Baumann of Baxter & Woodman, the Village's WDO Enforcement Officer, at (847)223-5088 for the WDP standard provisions submittal requirements. **SMC's review of the proposed development for potential isolated wetland impacts is required prior to the Village's issuance of the WDP.**

We have the following comments on your submittal, with respect to isolated wetlands:

1) The one wetland identified on the development site is an *Isolated Water of Lake County* (IWLC), per the jurisdictional determination letter from the U.S. Army Corps of Engineers dated 5-17-02 (Corps ref. #200200622). The IWLC is subject to regulation by SMC under the WDO. Please confirm that the wetland limits shown on the General Development Plan are the surveyed boundaries from CBBEL's wetland delineation.

2) According to the General Development Plan, it does not appear the IWLC will be directly impacted by the development (i.e., filled). However, a wetland hydrology analysis is required to determine if indirect impacts to the IWLC may occur (see #3 below). If no direct or indirect impacts to the IWLC will occur, a Letter of No Wetland Impact Determination ("LONI") can be issued by SMC. The LONI review fee is $920. Please

EXHIBIT
A

*Sebastian Rucci*
*WDP # 07-11-040*
*April 2, 2007*
*Page 2 of 2*

provide the LONI review fee prior to or with your next submittal. If it is determined that IWLC impacts will occur form the development, a full wetland submittal will be required in accordance with WDO IV.E.2.c. and additional review fees will apply.

3) Please provide a "80-150%" wetland hydrology analysis for the preserved IWLC meeting the requirements of WDO IV.E.7.a. If the wetland hydrology requirement is not met, a wetland impact will be assumed and mitigation will be required per WDO Article IV.E.7.b.

4) The IWLC is greater than 2.5 acres in size; therefore, a minimum 50-foot buffer width is required for this wetland (WDO, IV.B.1.i.(1)(b)(iii)). Final approval of the wetland buffer will be by the Village. Note that the preserved wetland and buffer on the development site shall be protected by a deed or plat restriction (WDO, IV.B.1.i.(12)). Please provide SMC and the Village with a draft copy of a proposed plat restriction and any associated exhibit(s) for review. For your consideration, we are enclosing SMC's example Wetland and Wetland Buffer Restrictive Covenant by Plat. Final approval of the plat restriction will be by the Village.

5) According to the General Development Plan, the wetland buffer area will be graded. Note that the disturbed buffer area shall be planted with appropriate native vegetation per WDO IV.B.1.i.(9). Please provide SMC and the Village with the proposed native seeding list for the disturbed buffer area.

We would like to be of assistance. If you have any questions, or would like to set up a meeting, please call me at (847) 918-3611 or e-mail me at gwestman@co.lake.il.us.

Sincerely,
LAKE COUNTY STORMWATER MANAGEMENT COMMISSION

*Glenn H. Westman*

Glenn H. Westman, PWS, CWS, CFM
Principal Wetland Specialist

Enclosure: Example Wetland and Wetland Buffer Restrictive Covenant

cc:   Kurt Baumann, Baxter & Woodman, Inc. (EO - Village of Grayslake)
      Greg Waller, Campus Investments, Inc.

U:\Regulatory Program\Permits\07 Permits\07-11-040\Wetland Review 1_040207



**STORMWATER MANAGEMENT COMMISSION**

August 17, 2007

Mr. Sebastian Rucci
3058 Chardonnay Lane
Poland, OH 44514

Subject:    **Watershed Development File #07-11-040**
**Proposed Autumn Ridge Subdivision on Rollins Road**
**(PIN # 06-15-200-018)**
**Grayslake, Lake County, Illinois**
**ISOLATED WETLANDS REVIEW #2**

Dear Mr. Rucci:

On August 2, 2007, the Lake County Stormwater Management Commission (SMC) received a wetland submittal for the subject development on your behalf from Bollinger, Lach & Associates, Inc. (BLA). The submittal included a request for a "Letter of No Wetland Impact Determination" (LONI) from SMC for the development. Please reference the above Watershed Development File # in future correspondence with SMC related to this development.

A Watershed Development Permit (WDP) from the Village of Grayslake is required for the proposed development, in accordance with the Lake County Watershed Development Ordinance (WDO, 1-10-06).    Grayslake is a certified community for approval and enforcement of the standard (stormwater management) provisions of the WDO, but not the isolated wetland provisions of the WDO.  Please contact Mr. Kurt Baumann of Baxter & Woodman, the Village's WDO Enforcement Officer, at (847)223-5088 for the WDP standard provisions submittal requirements. **A LONI or Isolated Wetland Impacts Approval from SMC's is required prior to the Village's issuance of the WDP.**

We have the completed our review of BLA's submittal.   Please amend (or direct your consultants to amend) the submittal to address the following:

1) Please provide a grading plan and revised erosion control plan showing the surveyed wetland boundary.

2) Please provide a revised wetland hydrology analysis for the preserved isolated wetland based on runoff volume, as outlined in WDO Article IV.E.7.a. The analysis submitted by BLA was based on flow rate. If the wetland hydrology requirement is not met, a wetland impact will be assumed and mitigation will be required per WDO Article IV.E.7.b.

EXHIBIT
$\mathcal{B}$

*Sebastian Rucci*
*WDP # 07-11-040*
*August 17, 2007*
*Page 2 of 2*

3) The proposed location of silt fence is unclear on the Erosion & Sediment Control Plan (Sheet 10). Please enhance the plan to clearly show the silt fence around the perimeter of all areas that will be disturbed, with a minimum of 1' outside the surveyed wetland boundary. SMC recommends that a double-row of silt fence be installed along the edge of the wetland boundary to provide maximum protection of the wetland from disturbance and sedimentation. Note that silt fence materials and installation must meet the applicable sections of AASHTO Standard Specification 288-00, per WDO Article IV.B.1.j(1)(f.). Since the development exceeds 10 acres in size, a Designated Erosion Control Inspector (DECI) is required per WDO Article IV.B.1.j.(2). The Village has final approval authority for the erosion and sediment control measures.

4) According to the Landscaping Plan (Sheet 11), the disturbed wetland buffer is to be seeded with the IDOT Class 4A low-profile native grass mixture. To increase the density and diversity of the native buffer vegetation, SMC recommends the proposed seed mix be enhanced by adding the IDOT Class 5 native forb with annuals mixture to the Class 4A mixture. The Village has final approval authority for the landscape plan.

5) Prior to issuance of the LONI or isolated wetland impacts approval for the development, SMC requires a *deposit* be provided in the amount of $1,600 to ensure we are notified of the pre-construction meeting and to cover the cost of potential wetland compliance inspections. We request the pre-construction meeting be held onsite with you or your consultant, the general contractor, and the DECI in order to inspect the installed wetland protective measures (e.g., silt fence). If SMC is notified at least five (5) working-days in advance of the field pre-construction meeting, $500 of the deposit will be returned upon your written request. The remaining $1,100 of the deposit, minus any assessed wetland inspection fees, will be returned upon your written request following permanent site stabilization and a final site inspection by SMC.

We would like to be of assistance. If you have any questions, or would like to set up a meeting, please call me at (847) 918-3611 or e-mail me at gwestman@co.lake.il.us.

Sincerely,
LAKE COUNTY STORMWATER MANAGEMENT COMMISSION

*Glen H. Westman*

Glenn H. Westman, PWS, CWS, CFM
Principal Wetland Specialist

cc:    Kirk Smith, Village of Grayslake
       Kurt Baumann, Baxter & Woodman, Inc. (EO - Village of Grayslake)
       Cynthia Flower, Bollinger, Lach & Associates, Inc.

U:\Regulatory Program\Permits\07 Permits\07-11-040\Wetland Review 2_081707

**STORMWATER MANAGEMENT COMMISSION**

February 13, 2008

Mr. Sebastian Rucci, P.E.
3058 Chardonnay Lane
Poland, OH  44514

**Subject:    Watershed Development File #07-11-040**
**Proposed Autumn Ridge Subdivision on Rollins Road**
**(PIN # 06-15-200-018)**
**Grayslake, Lake County, Illinois**
**ISOLATED WETLANDS REVIEW #3**

Dear Mr. Rucci:

Thank you for your submittal for the subject development, received by the Lake County
Stormwater Management Commission (SMC) on January 9, 2008. The submittal included
updated plans prepared by your office and a revised wetland hydrology analysis prepared by
Bollinger, Lach & Associates, Inc. (BLA). Please reference the above Watershed
Development File # in future correspondence with SMC related to this development.

A Watershed Development Permit (WDP) from the Village of Grayslake is required for the
proposed development, in accordance with the Lake County Watershed Development
Ordinance (WDO, 1-10-06).    Grayslake is a certified community for approval and
enforcement of the standard (stormwater management) provisions of the WDO, but not the
isolated wetland provisions of the WDO. Please contact Mr. Kurt Baumann of Baxter &
Woodman, the Village's WDO Enforcement Officer, at (847)223-5088 for the WDP standard
provisions submittal requirements. **SMC's approval of isolated wetland impacts (or a no
wetland impact determination) is required prior to the Village's issuance of the WDP.
Note that SMC's approval of the Base Flood Elevation (BFE) for the non-riverine flood-
prone depressional area on the property will also be required prior to issuance of the
WDP if the tributary drainage area to the depression is greater than 20 acres.**

We have the completed our review of your submittal. Please address (or direct your
consultants to address) the following comments:

1) The "Wetland Limits" line shown on the grading plan (Sheet 5) does not appear to
correlate with the wetland boundary delineated by Christopher B. Burke Engineering, Ltd.
(CBBEL), as depicted on Exhibit 9 in CBBEL's wetland report for the property dated
October 18, 2005 (Revised). SMC cannot proceed further with the isolated wetlands
review for the proposed development until we verify the delineated wetland boundary in
the field. Please have the surveyed wetland boundary re-staked and notify SMC when
this has been completed – we will then schedule a review to verify the boundary as soon
as field conditions allow (currently there is a 12+ inch snow cover). The field-verified
wetland boundary shall be shown on the development plans for permitting purposes.

EXHIBIT
C

2) SMC does not concur with BLA's wetland hydrology analysis (rev. 9-06-07). Please revise the analysis to address the items below. If the "80-150" wetland hydrology requirement is not met, a wetland impact will be assumed and mitigation will be required per WDO Article IV.E.7.b.

    a) The existing condition land use (outside the wetland) appears to be agricultural row crops, not grassland/pasture as indicated in BLA's analysis. Please clarify and adjust the runoff curve numbers appropriately.

    b) Our review identified several discrepancies between the detention volume calculations and the plan sheet. For example:

        i) The calculations indicate a 2-year high water level (HWL) of 779.50 and the plan sheet indicates a 2-year of 779.95.

        ii) The provided 2-year volume is 1.44 ac-ft per the plan sheet; 0.88 ac-ft per calculation summary; and approximately 0.45 ac-ft per the volume calculations table.

    c) The report did not include calculations for the total 2-year detention discharge volume. The required peak detention volume may be 0.88 ac-ft; however, runoff is discharging continuously before and after the peak volume. Please provide the total discharge volume from the beginning of the storm event to the end.

    d) If the verified wetland boundary is different from the boundary currently shown on the plans (see #1 above), the tributary drainage areas and hydrology calculations will need to be revised accordingly to reflect the verified wetland boundary.

3) Please enhanced the Erosion & Sediment Control Plan (Sheet 10) as follows:

    a) the note regarding seeding of the wetland buffer should match the revised Landscape Plan (Sheet 11) - buffer shall be seeded with a mixture of IDOT Class 4A low-profile native grasses and IDOT Class 5 native forbs; and,

    b) the field-verified wetland boundary (see #1 above) should also be included on this plan.

4) Prior to issuance of the LONI or isolated wetland impacts approval for the development, SMC requires a *deposit* be provided in the amount of $1,600 to ensure we are notified of the pre-construction meeting and to cover the cost of potential wetland compliance inspections. We request the pre-construction meeting be held onsite with your field construction manager, the general contractor, and your designated erosion control inspector (DECI) in order to inspect the installed wetland protective measures (e.g., silt fence). If SMC is notified at least five (5) working-days in advance of the field pre-construction meeting, $500 of the deposit will be returned upon your written request. The remaining $1,100 of the deposit, minus any assessed wetland inspection fees, will be returned upon your written request following permanent site stabilization and a final site inspection by SMC.

Sebastian Rucci
WDP # 07-11-040
February 13, 2008
Page 3 of 3

If you have any questions, or would like to set up a meeting, please call me at (847)918-3611 or e-mail me at gwestman@co.lake.il.us.

Sincerely,

LAKE COUNTY STORMWATER MANAGEMENT COMMISSION

*Glen H. Westman*

Glenn H. Westman, PWS, CWS, CFM
Principal Wetland Specialist

cc:   Kurt Baumann, Baxter & Woodman, Inc. (EO - Village of Grayslake)
      Kirk Smith, Village of Grayslake
      Greg Waller, Campus Investments, Inc. (via fax)
      Cynthia Flower, Bollinger, Lach & Associates, Inc.
      Kurt Woolford, SMC

U:\Regulatory Program\Permits\07 Permits\07-11-040\Wetland Review3_012308