## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| LAKE COUNTY STORMWATER MANAGEMENT COMMISSION, and LAKE COUNTY, ILLINOIS | ) ) ) | |
| | ) | Case No. 08-cv-3835 |
| Plaintiff's, | ) | |
| v. | ) | Judge Milton I. Shadur |
| | ) | Magistrate Judge Michael T. Mason |
| CAMPUS INVESTMENTS, INC., and ZERO ENERGY ESTATES LLC, | ) ) | |
| | ) | |
| Defendant's. | ) | |
| | ) | |

## ANSWER AND COUNTERCLAIM

COMES NOW defendants, Campus Investments, Inc, and Zero Energy Estates, LLC (collectively "Defendants") and for their **answer** to the State Complaint (ECF Dkt #1 Ex. A) ("Complaint") by Lake County and Lake County Stormwater Management Commission (collectively "Lake County") states as follows:

1.      Answering paragraph 1 of the Complaint, Defendants **ADMIT** that "Plaintiff County of Lake is a body politic and corporate of the State of Illinois."

2.      Answering paragraph 2 of the Complaint, Defendants **ADMIT** that "Plaintiff Lake County Stormwater Management Agency is an agency of Lake County established pursuant to 55 ILCS 5/5-1062."

3.      Answering paragraph 3 of the Complaint, Defendants **ADMIT** that Defendant "Campus Investments, Inc. ("Campus") is the owner of an approximately 28-acre parcel of undeveloped property located at 21157 West Rollins Road, Grayslake, Illinois, PIN 06-15-200-018 (the "Subject Property")."

4.      Answering paragraph 4 of the Complaint, Defendants **DENY** that "Zero Energy Estates, LLC ("Zero") represents itself to be the contract purchaser of the Subject Property."

5.      Answering paragraph 5 of the Complaint, Defendants **DENY** that venue is proper in the Circuit Court for Nineteenth Judicial Circuit, Lake County, Illinois.

6.      Answering paragraph 6 of the Complaint, the Defendants **DENY** that "Commencing over the Memorial Day weekend, May 24-26, 2008, and continuing thereafter, grading and other development activities occurred on the Subject Property and fill material has been brought onto the Subject Property from Rollins Road, dumped, and bulldozed into existing wetlands on the Subject Property, without the necessary highway access permits from the Lake County Division of Transportation ("LCDOT") or the necessary permits and approvals from SMC."

7.      Paragraph 7 is omitted in the Complaint.

8.      Answering paragraph 8 of the Complaint, Defendants **DENY** that the above "conduct by or at the direction of Campus and Zero violates the Lake County. Highway Access Regulation Ordinance and the SMC Watershed Development Ordinance for which the County and SMC seek injunctive relief and monetary fines from the Defendants."

COUNT I - Violations of the Watershed Development Ordinance

9.      Answering paragraph 9 of the Complaint, Defendants **ADMIT** that "at all times pertinent to this action, there was and is in full force and effect a Lake County Watershed Development Ordinance ("WDO"), which provides county-wide minimum stormwater management rules and regulations relating to development or improvement of real property in Lake County, Illinois."

10.     Answering paragraph 10 of the Complaint, Defendants **ADMIT** that "the Subject Property consists of approximately 28 acres, upon which is located an Isolated Waters of Lake County (hereinafter "wetlands"), as defined in the WDO (Appendix A)" Further answering paragraph 10 of the Complaint, the Defendants **DENY** that the wetlands on the Subject Property consist "of approximately 16.5 acres."

11.     Answering paragraph 10 of the Complaint, Defendants **DENY** that "the Village of Grayslake is not certified to administer the Wetlands provisions of the WDO, and, therefore, the WDO Wetlands provisions are administered by SMC."

12.     Answering paragraph 12 of the Complaint, Defendants **ADMIT** that "WDO, Art. IV, §A.(1), provides: No person... shall commence any development regulated by this Ordinance on any lot or parcel of land without first obtaining a Watershed Development Permit from the (SMC) . . . A Watershed Development Permit is required for any development. . . which: (d) Creates a wetland impact within an area defined as . . . Isolated Waters of Lake County."

13.     Answering paragraph 13 of the Complaint, Defendants **ADMIT** that "WDO, Art. IV, § E (2)(c) specifies certain of the Watershed Development Permit submittal requirements for proposed developments with wetland impacts to Isolated Waters of Lake County."

14.     Answering paragraph 14 of the Complaint, Campus **ADMITS** that it "knowing of WDO permit requirements, submitted to SMC on March 8, 2007 a General Development Plan for the Subject Property, as well as a wetland delineation report, prepared by Christopher 13. Burke Engineering, Ltd. (CBBEL). On April 2, 2007, the SMC sent to

Defendants, or their representatives, a review letter which identified the Subject Property as having Isolated Waters of Lake County located thereon. (A copy of the April 2, 2007 SMC letter is attached hereto, marked Exhibit A, and incorporated by reference.)" Further answering paragraph 14 of the Complaint Zero **DENIES** Paragraph 14 of the Complaint.

15.    Answering paragraph 15 of the Complaint, Campus **ADMITS** that it's "next contact with the SMC was an August 2, 2007 requesting a Letter of No Wetland Impact determination from the SMC. By a letter dated August 17, 2007, the SMC responded to Defendants, or their representatives, advising that a grading plan showing the surveyed wetland boundary was required. (A copy of the SMC August 17, 2007 letter is attached, marked Exhibit B, and incorporated by reference.)" Further answering paragraph 15 of the Complaint Zero **DENIES** Paragraph 15 of the Complaint.

16.    Answering paragraph 16 of the Complaint, Campus **ADMITS** that "on January 9, 2008, Defendants submitted to the SMC updated plans for the development of the Subject Property, along with a revised wetland hydrology analysis. By a letter dated February 13, 2008, the SMC responded to Defendants' submittals by, among other things, noting that the wetland limits shown on the grading plan do not coincide with the wetland boundaries shown in the CBBEL wetland delineation report. The SMC advised Defendants that review of the wetlands submittals could not proceed until the delineated wetland boundary was reviewed in the field. The SMC asked Defendants to re-stake the wetland boundary and call for a site inspection. (A copy of the February 13, 2008 SMC letter is attached, marked Exhibit C, and incorporated by reference.)" Further answering paragraph 16 of the Complaint Zero **DENIES** Paragraph 16 of the Complaint.

17.    Answering paragraph 16 of the Complaint, Campus **ADMITS** that Campus "did not respond to the SMC February 13, 2008, request for a field review of the wetland boundary." Further answering paragraph 17 of the Complaint Zero **DENIES** Paragraph 17 of the Complaint.

18.    Answering paragraph 16 of the Complaint, the Defendants **DENY** that "Over the Memorial Day weekend, on or about May 24-26, 2008 Defendants, or their agents, contractors; or representatives, commenced grading on the Subject Property and filled in or impacted approximately 2.5 acres of the Isolated Waters of Lake County on the site."

19.    Answering paragraph 10 of the Complaint, Defendants **DENY** that "Defendant(s) actions in commencing development activities on the Subject Property, without a properly issued Watershed Development Permit, on or about May 24-26, 2008, and thereafter, constitute a violation of the WDO permit requirements."

20.    Answering paragraph 20 of the Complaint, Defendants **DENY** that "on Tuesday, May 27, 2008 the Village of Grayslake issued a stop work order to Defendant(s)."

21.    Answering paragraph 21 of the Complaint, Defendants **ADMIT** that "Other development activity, including additional importation of fill, has been performed on the Subject Property during the first two weeks of June 2008." Further answering paragraph 21 the Defendants **DENY** that the activity was in "iolation of WDO permitting requirements."

22.    Answering paragraph 22 of the Complaint, Defendants **DENY** that "SMC has no adequate legal remedy to effectuate the replacement or restoration of the wetlands that Defendants have caused to be filled in knowing violation of applicable county-wide minimum WDO permitting requirements and regulations relating to isolated waters of Lake County."

COUNT II - Violations of the Lake County Highway Access Regulation Ordinance

10.    Answering paragraph 10 of the Complaint, Defendants **ADMIT** that "Rollins Road is a county highway owned and operated by the Lake County Division of Transportation. The Subject Property abuts the south side of the Rollins Road right-o f-way."

11.    Answering paragraph 11 of the Complaint, Defendants **ADMIT** that "a seasonal dirt farm field access" exists on the Subject Property. Further answering paragraph 11 the Defendants **DENY** that "On or about June 14, 2008, the existing dirt access was expanded, modified, and improved by Defendants, or their agents, contractors, or representatives, with multiple loads of fill and topped with course gravel to allow construction equipment to enter the Subject Property."

12.    Answering paragraph 11 of the Complaint, Defendants **DENY** that "Prior to the recent events, a seasonal dirt farm field access for farm equipment existed on the Subject Property. On or about June 14, 2008, the existing dirt access was expanded, modified, and improved by Defendants, or their agents, contractors, or representatives, with multiple loads of fill and topped with course gravel to allow construction equipment to enter the Subject Property."

13.    Answering paragraph 12 of the Complaint, Defendants **ADMIT** that "Pursuant to its statutory authority set forth at 605 ILCS 5/5-413" the "County has adopted the Lake County Highway Access Regulation Ordinance (the "Access Ordinance"), in effect at all relevant times, which regulates access to and from County highways, such as Rollins Road." Further answering paragraph 12 the Defendants **DENY** that the County has adopted the Access Ordinance pursuant to statutory authority set forth in 605 ILCS 8/801.  No such statute exists.

14.     Answering paragraph 13 of the Complaint, Defendants **ADMIT** that "Pursuant to Section 4 of the Access Ordinance: An access permit shall be required for the construction of any new access facility or the modification of any existing access facility within the right-of-way of a County Highway when the work is to be done by any person or public agency other than Lake County or when the use of an existing facility is changed."

15.     Answering paragraph 14 of the Complaint, Defendants **ADMIT** that "Section 2.4 of the Access Ordinance defines an 'access facility' as '[a] private or public driveway or road providing service to and/or from abutting property to a highway.'"

16.     Answering paragraph 15 of the Complaint, Defendants **DENY** that "Defendants have violated and continue to violate the Access Ordinance by modifying, expanding, altering, and changing the use of an access facility without having obtained a permit for LCDOT and by allowing construction equipment to access to the Subject Property through the illegal access."

17.     Answering paragraph 16 of the Complaint, Defendants **ADMIT** that "Section 3.12 of the Ordinance provides that: Whoever shall construct, or cause to be constructed, any access facility in violation of the requirements of this Ordinance shall be subject to a fine of not less than $100.00 and not more than $500.00 for each access facility so constructed. Each day that the access facility is in place in violation of this Ordinance shall constitute a separate offense, subject to the above penalties. . . . The provisions of this Ordinance shall not be deemed exclusive and shall not be deemed to prevent the maintenance of any other action or proceeding in law or in equity to enforce the provisions of this Ordinance or to vacate and remove any access facility constructed in violation of this Ordinance."

## FIRST AFFIRMATIVE DEFENSE
## (FAILURE TO STATE CAUSE OF ACTION)

As a separate affirmative defense to the Complaint, the Defendants allege that each and every cause of action asserted in the Complaint fails to state facts sufficient to constitute a cause of action against the Defendants.

As the three Exhibit to the Complaint confirm: "Grayslake is a certified community for approval and enforcement of the standard (stormwater management) provisions of the WDO." (Complaint Ex. A, B and C). Lake County regulates wetlands inside villages pursuant to 55 ILCS 5/5-1062. The state statute prohibits the extraterritorial regulation of wetlands within incorporated villages in § 5-1062(k) which mandates that "the **county shall not enforce** rules and regulations adopted by the county in any municipality" that has a consistent "stormwater management ordinance." Lake County's regulation of wetlands within incorporated villages is on it's face plainly invalid.

Moreover, the state statute **does not** authorize the regulation of wetlands. The legislative purpose is identified in § 5-1062(a) as the regulation of floodplain and stormwater management. The state statute comprises 2,504 words, and uses the word "stormwater" fifty-one times, the word "wetland" is notably absent from its language. The state statute permits "reasonable rules and regulations for floodplain management and for governing the location, width, course and release rate of all stormwater runoff channels, streams and basins in the county." § 5-1062(f). Inspections are only allowed for "the purpose of **inspecting stormwater facilities**." § 5-1062(j). The plain language of § 5-1062(a), (k), (f) and (j) confirms that Lake County regulate outside the designated authority and in direct conflict with the explicit statutory language.

The state statutes for subdivision and zoning further confirms that Lake County lacks extraterritorial powers to regulate wetlands within incorporated villages. Villages have exclusive authority to establish "standards of design for subdivisions" including requirements for "storm water drainage." 65 ILCS 5/11-12-5. And exclusive zoning authority "within the corporate limits" including the power to regulate "storm or floodwater runoff channel or basin." 65 ILCS 5/11-13-1. The county's subdivisions authority is limited to land "not being within" any "village." 55 ILCS 5/5-1041. County zoning is limited to land "outside the limits" of "villages." 55 ILCS 5/5-12001.

Lake County's essentially a boundless view of the scope of its power is in conflict with the following principles of statutory construction. "Counties . . . shall have only powers granted to them by law." Illinois Constitution Art. VII, § 7. "Counties" can "exercise **only those powers expressly granted** to them by the **legislature**." *Redmond v. Novak*, 427 N.E.2d 53, 57-58 (Ill. 1981). The "powers" of "counties, are **not to be enlarged** by liberally construing the statutory grant, but, quite to the contrary, are to be **strictly construed** against the governmental entity." *Inland Land Appr. Fund v. County of Kane*, 800 N.E.2d 1232, 1236 (Ill. App. 2003). "When the statutory language is clear, it must be given effect without resort to other tools of interpretation. In interpreting a statute, it is never proper for a court to **depart from plain language** by reading into a statute exceptions, limitations, or conditions which **conflict** with the clearly expressed legislative intent." *County of Knox v. The Highlands, L.L.C.*, 723 N.E. 2d 256, 263 (Ill. 1999). Lake County cannot "**depart from plain language** by reading into the statute exceptions, limitations, or conditions which **conflict** with the clearly expressed legislative intent." *Village of Chatham v. County of Sangamon*, 837 N.E.2d 29, 45 (Ill. 2005).

With regards to the access issue, 605 ILCS 5/5-413 is the only statutory authority over permits for driveways and provides that "driveways for private and public use may, upon receipt of a permit from the county superintendent of highways, be laid out from a county highway in accordance with regulations adopted by the county board."

The Defendants have not asked to lay out a new driveway "a seasonal dirt farm field access" exists on the Subject Property. (Count 2, Complaint ¶ 11). The "existing dirt access" was improved "with multiple loads of fill and topped with course gravel to allow construction equipment to enter the Subject Property." (Count 2, Complaint ¶ 11). There is no allegation that this work was done within the right-of-way, and a permit is only required for "the modification of any existing access facility within the right-of-way of a County Highway." (Count 2, Complaint ¶ 13).

The allegation that the Defendants "chang[ed] the use of an access facility without having obtained a permit for LCDOT." (Count 2, Complaint ¶ 15). Interferes with the Village's exclusive zoning power "within the corporate limits."  (65 ILCS 5/11-13-1). County's zoning is limited to the "entire county outside the limits" of "villages." (55 ILCS 5/5-12001). Once again, Lake County has an essentially a boundless view of the scope of its power in issuing permits for access to property and uses the permit for access to exercise extraterritorial zoning over property.

SECOND AFFIRMATIVE DEFENSE
(PLAINTIFF LACKS STANDING TO PURSUE THIS ACTION)

As a separate affirmative defense to the Complaint, the Defendants alleges that Lake County lacks standing to maintain each and every cause of action asserted in the Complaint against the Defendants. As noted above, Lake County regulates outside the designated authority and in direct conflict with the explicit statutory language.

## THIRD AFFIRMATIVE DEFENSE
### (UNCLEAN HANDS)

As a separate affirmative defense to the Complaint, Defendants alleges that each and every cause of action asserted in the Complaint is barred and Lake County is precluded from recovering any alleged damages by the doctrine of unclean hands. As noted above Lake County regulates outside the designated authority and in direct conflict with the explicit statutory language, and Lake County has unclean hands.

WHEREFORE, having fully answered, Defendants prays for judgment as follows:

(a).    That Plaintiff take nothing by its Complaint;

(b).    That judgment be entered in favor of Defendants and against Plaintiff;

(c).    That Defendants be awarded reasonable attorney's fees, its costs of suit incurred; and such further relief as this Court may deem just and proper.


Dated: July 8, 2008                     Respectfully submitted,


Sebastian Rucci (ND IL No. 90785689)
40 The Ledges, 3C
Youngstown, Ohio 44514
Phone: (330) 707-1182
Fax:    (330) 707-1882
Email: SebRucci@Gmail.com
Attorney for the Defendants

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CAMPUS INVESTMENTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08-cv-3835 |
| v. | ) | |
| | ) | Judge Milton I. Shadur |
| LAKE COUNTY STORMWATER | ) | |
| MANAGEMENT COMMISSION, and | ) | Magistrate Judge Michael T. Mason |
| LAKE COUNTY, ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

COUNTERCLAIM
VERIFIED COMPLAINT

COMES NOW Campus Investments, Inc. and files its verified complaint against, the Lake County Stormwater Management Commission, and Lake County, and states as follows:

JURISDICTION AND VENUE

1.      There are multiple bases for this court's jurisdiction. This Complaint alleges violations of Plaintiff's rights under the United States Constitution, hence, this court has original "federal question" jurisdiction pursuant to 28 U.S.C. §1331 over those claims. The Complaint also alleges violations of the Plaintiff's rights under the Federal Civil Rights Act, 42 U.S.C. § 1983, to redress the deprivation, under color of law, of rights secured by the United States Constitution, giving this court original jurisdiction under 28 U.S.C. §1343(a)(3) over those claims. This court also has jurisdiction pursuant to 28 U.S.C. § 1332 (Diversity of Citizenship Jurisdiction), the parties are diverse and the amount in controversy exceeds $75,000.

2.    This Complaint alleges violation of the guarantee embodied in the Illinois Constitution Art. 1 § 15 (prohibits taking private property without just compensation) and this court has supplemental jurisdiction over that claim pursuant to 28 U.S.C. §1367(a) because that claim is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution."

3.    Personal jurisdiction and venue of the defendants is predicated upon 28 U.S.C. § 1391(a)(1) ("judicial district where any defendant resides") because the defendants are located in, and transact their affairs in Lake County, Illinois which is located within the geographical area of this court. See 28 U.S.C. § 93(a)(1) (Northern District of Illinois comprises Lake County). Venue is also proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the claims occurred in Lake County, Illinois.

## PLAINTIFF AND DEFENDANTS

4.    Plaintiff, Campus Investments, Inc., is an Ohio corporation, engaged in real estate development with its principal office and place of business in Ohio (the "Plaintiff").

5.    Defendant, the Lake County Stormwater Management Commission is an agency of Lake County, established under 55 ILCS 5/5-1062 to develop and implement a countywide storm water management plan.

6.    Defendant, Lake County, is a body corporate and politic, organized and existing under the Counties Code, 55 ILCS 5/1-1001 *et. seq*. The Lake County Stormwater Management Commission and Lake County are collectively referred to as "the Defendants."

## LAKE COUNTY WATERSHED DEVELOPMENT ORDINANCE

7.    The Illinois General Assembly enacted 55 ILCS 5/5-1062 in response to flooding, granting stormwater management powers to northeastern Illinois counties. The legislative purpose is identified as follows: "The **purpose** of this Section is to allow management and mitigation of the effects of urbanization on **stormwater drainage** in metropolitan counties" the "**purpose** of this Section shall be achieved by: (1) consolidating the existing **stormwater management** framework into a united, countywide structure; (2) setting minimum standards for **floodplain and stormwater management**; and (3) preparing a countywide plan for the **management of stormwater runoff**, including the management of natural and man-made drainageways." § 5-1062(a).

8.    The enabling legislation provides that a "stormwater management planning committee shall be established by county board resolution." 55 ILCS 5/5-1062(b). "The principal duties of the committee shall be to develop a **stormwater management plan** for presentation to and approval by the county board." § 5-1062(b). The plan must ensure that stormwater projects will not impact "levels or flows of **stormwaters** in inter-county watersheds" or the capacity "**stormwater** retention facilities" in adjacent counties. § 5-1062(c). The county plan must comply with state and federal "standards for **floodplain** management." § 5-1062(f). The county stormwater plan must also consider "the cumulative effects of **stormwater** discharges on **flood** levels." § 5-1062(d).

9.    The enabling legislation provides that the "county board may enact the proposed plan by ordinance." 55 ILCS 5/5-1062(e). The "county board may prescribe by

ordinance reasonable **rules and regulations for floodplain management** and for governing the location, width, course and release rate of **all stormwater runoff channels, streams and basins in the county**, in accordance with the adopted stormwater management plan." § 5-1062(f). However, the "county **shall not enforce** rules and regulations adopted by the county **in any municipality**" that "has a municipal stormwater management ordinance that is consistent with" the county ordinance. § 5-1062(k). Also, the county may only "enter upon any lands or waters within the county for the purpose of **inspecting stormwater facilities** or causing the removal of any obstruction to an affected watercourse." § 5-1062(j).

10.     Pursuant to 55 ILCS 5/5-1062 Lake County established the Lake County Stormwater Management Commission ("SMC"). In June 1990, SMC developed, and Lake County adopted, the Comprehensive Stormwater Management Plan which was last amended in 2002. See *www.co.lake.il.us/elibrary/publications/smc/StormWater2002CompPlan.pdf*.

11.     On October 18, 1992 Lake County implemented the Watershed Development Ordinance ("WDO"). It was amended seven times; the last amendment was adopted on October 10, 2006. See www.co.lake.il.us/elibrary/publications/smc/wdo2006_appcmod.pdf.

## LAKE COUNTY IMPROPERLY ENLARGED ITS STORMWATER AUTHORITY BY REGULATING WETLANDS IN INCORPORATED VILLAGES

12.     On January 9, 2001 the Supreme Court issued *Solid Waste Agency of Northern Cook County v. Army Corps of Eng.*, 531 U.S. 159 (2001) which held that isolated wetlands are not within the Army Corp's jurisdiction.

13.     SMC's Technical Reference Manual § 5.1 notes that "until January 9, 2001, wetlands were regulated by the Corps under authority of the federal CWA. On that date, the

Supreme Court ruled on the *Solid Waste Agency of Northern Cook County* case and that ruling effectively **removed the Corps' authority to regulate intrastate, isolated waters/wetlands** not tributary to a navigable waterway...On Aug.14, 2001, the Lake County Board amended the [Watershed Development] Ordinance to protect isolated waters/**wetlands within the county that were no longer regulated the Corps** and defined them as Isolated Waters of Lake County." (see *www.co.lake.il.us/smc/regulatory/tac/refmanual.asp*).

14.    Seven months after the *SWANCC* decision, SMC amended the WDO and defined isolated wetlands as "Isolated Waters of Lake County" and defined them as all "wetlands that are not under U. S. Army Corps of Engineers jurisdiction." (Apx. A pg 71). The WDO required "**no net loss** of wetlands in Lake County." (Art. I § B.10 pg 2). "SMC will perform Certified Wetland Specialist duties for communities" until certification. (Art III § B.12 pg 5). The WDO requires isolated wetlands to remain in their natural state, and limits impacts to 1/10 acre; impacts greater than 1/10 require mitigation. (Art IV § E.4 pg 52-53). The WDO requires a permit for impacts to isolated wetlands, and specialists certified by SMC to delineate the wetlands. (Art. IV § E.1-3, pg 49-52).

15.    SMC also requires a letter of no wetland impact, including a review fee for a letter of no impact. However, the so called letter of no wetland impact is not found in the WDO. Nonetheless, SMC demands the same, in effect requiring that every property with an isolated wetland in Lake County will go through an SMC review, either to obtain a permit for development, or to obtain a letter of no wetland impact. SMC will effectively regulate every isolated wetland in Lake County, including the wetlands in incorporated villages.

16.    Lake County's brochure titled "Wetlands" informs landowners that "Lake County Engineering and Environmental Services has **jurisdiction only in the unincorporated areas of Lake County**. For incorporated properties, contact the appropriate municipality." (see www.co.lake.il.us/elibrary/publications/planning/pdfs/wetlands1.pdf.)

## LAKE COUNTY IS WITHOUT EXTRATERRITORIAL AUTHORITY TO REGULATE WETLANDS IN INCORPORATED VILLAGES

17.    The Defendants regulate wetlands inside villages pursuant to 55 ILCS 5/5-1062. The legislative purpose is identified in § 5-1062(a) as floodplain and stormwater management. The state statute comprises 2,504 words, and uses the word "stormwater" fifty-one times, the word "wetland" is notably absent from its language.

18.    The Defendants flagrant misreading of the state statute is shown by § 5-1062(k) which mandates that "the **county shall not enforce** rules and regulations adopted by the county in any municipality" that has a consistent "stormwater management ordinance." The defendants instead regulate wetlands within the Village of Grayslake, which has a stormwater ordinance, in direct conflict with § 5-1062(k).

19.    The state enabling legislation permits the enactment of "rules and regulations for **floodplain management** and for governing the location, width, course and release rate of all **stormwater runoff** channels, streams and basins in the county." § 5-1062(f). The statute limits the county's authority to **"inspecting stormwater facilities**." § 5-1062(j). The defendants have expanded this limited stormwater authority, and instead regulate wetlands, soil erosion, grading, and municipal planning. The Defendants even rely on this limited stormwater authority to license village engineers, wetland scientists and erosion inspectors.

20.     The regulation of wetlands within incorporated villages conflicts with the legislative purpose identified in § 5-1062(a), and an unlawful expansion of the limitation of regulation to stormwater in § 5-1062(f), and an unlawful expansion of the limitation of inspections to only stormwater in § 5-1062(j), and in direct conflict with § 5-1062(k) by retaining jurisdiction after a municipality has adopted a consistent stormwater ordinance.

21.     A comparison of the villages subdivision and zoning powers, with the county's powers, further confirms that the county has no extraterritorial authority to regulate wetlands within villages. Villages have exclusive authority to establish "standards of design for subdivisions" including requirements for "storm water drainage." 65 ILCS 5/11-12-5. And exclusive zoning authority "within the corporate limits" including the power to regulate "storm or floodwater runoff channel or basin." 65 ILCS 5/11-13-1. The county's subdivisions authority is limited to land "not being within" any "village." 55 ILCS 5/5-1041. County zoning is limited to land "outside the limits" of "villages." 55 ILCS 5/5-12001.

22.     Villages have the power to determine whether the "plat of subdivision" complies with Village regulations. (65 ILCS 5/11-12-8). The WDO instead commands that a "community's planning commission or corporate authority shall not approve any preliminary" or "final PUD or Plat of subdivision **located inside or outside its corporate limits** unless such PUD or Plat, at a minimum, meets the performance standards of the Lake County Watershed Development Ordinance." (WDO Art. IV § B.1.a.(7) and (8) pg. 10).

23.     The plain reading of § 5-1062(a), (f), (j) and (k) confirms that the regulation of wetlands within incorporated villages is on it's face plainly invalid, and the Defendants lack extraterritorial powers to regulate wetlands on the plaintiff's property.

24.    The WDO's wetlands regulations are an unlawful expansion of Lake County's limited statutory power over stormwater management granted by 55 ILCS 5/5-1062, and WDO's wetlands regulations (Art. IV § E) are invalid, unconstitutional and unenforceable as applied to Plaintiff's property.

### DEVELOPMENT OF AUTUMN RIDGE SUBDIVISION

25.    Plaintiff is the owner of 28.48 acres of real property located at 21157 Rollins Road, in the Village of Grayslake, in Lake County, Illinois (the "Property"). The Property is vacant, with seasonal farming. The Property is surrounded by residential homes, vacant land and a school. About 11.7 acres of the Property is a low lying isolated wetland. The Property fronts onto Rollins Road and has a curb cut along Rollins Road, and access to the Property has been from Rollins Road for over half a century.

26.    On February 5, 1993, the Property was annexed from unincorporated Lake County to Grayslake. The annexation agreement includes a tentative plat, with 13.40 acre in conservation, and required that the final plat "will generally resemble the area delineated on the tentative plat." (Copy of the Annexation Plat is attached as Exhibit A).

27.    On May 17, 2002, the Army Corps of Engineers issued a letter stating "there are no waterways, wetlands or other areas considered 'waters of the United States' under Corps of Engineers jurisdiction at the site" and Corps permit "is not required."

28.    On February 21, 2006 the Grayslake Board of Trustees voted to approve a Special Use Permit to subdivide the Property into a 25-lot **subdivision named Autumn Ridge** ("Autumn Ridge"). The subdivision left 54% of the Property in open space, a

comparison of the annexation delineation, and the Autumn Ridge delineation, shows that the two "resemble" each other as agreed in the annexation agreement, Autumn Ridge has 15.33 acres versus 13.40 acres at annexation  (see comparison in Exhibit B).

## SMC DEMANDS A PERMIT TO DEVELOP AUTUMN RIDGE

29.    On March 17, 2006 SMC sent a letter to the Plaintiff stating: "This letter is to notify you that development at the above referenced site will require a Watershed Development Permit" from SMC or the Village. (Letter attached as Exhibit C).

30.    The Plaintiff believed at the outset that SMC lacked authority to regulated wetlands within the Village of Grayslake, but sought to obtain a no impact letter from SMC in an effort to avoid friction, and because the Plaintiff feared retaliation. On March 9, 2007 the Plaintiff sought approval from SMC for a no impact letter.

31.    On April 2, 2007 SMC sent a letter informing the Plaintiff that "**SMC's review** of the proposed development for potential isolated wetland impacts is **required** prior to the Village's issuance" of a permit. The letter stated that the one wetland on the property is an isolated wetland "subject to regulation by SMC under the WDO" and "it does not appear the [isolated wetland] will be directly impacted by the development (i.e., filled). However, a wetland hydrology analysis is required to determine if **indirect impacts** to the [isolated wetland] may occur. If **no direct or indirect impacts** to the [isolated wetland] will occur, a Letter of No Wetland Impact Determination can be issued by SMC." (Letter attached to Defendants State Complaint as Exhibit A).

32.    On August 17, 2007 SMC sent a letter informing the Plaintiff that a letter of no wetland impact "from SMC's is required prior to the Village's issuance of a development permit" and SMC will also make "wetland compliance inspections" and desired an onsite meeting "in order to inspect the installed wetland protective measures." (Letter attached to Defendants State Complaint as Exhibit B).

33.    On February 13, 2008 SMC sent a letter informing the Plaintiff that "SMC's approval of isolated wetland impacts (or a no wetland impact determination) is required prior to the Village's issuance" of a permit, and that 'SMC cannot proceed further with the isolated wetland review" until SMC makes a field verified determination of the wetland boundary. The letter also repeated that SMC would also inspect the erosion. (Letter attached to Defendants State Complaint as Exhibit C).

34.    After one years effort with SMC, it became apparent to the Plaintiff that SMC desired a redesign of the approved Autumn Ridge subdivision, by requiring more than 54% of the Property be left in its natural state. The loss of additional acreage will make residential development of the Property economically non-viable and the Plaintiff abandoned its efforts for a letter of no impact from SMC.

35.    SMC did not make any individualized determination that the preservation of more than 54% of the Property is related both in nature and extent to the impact of the proposed development. The burden of preserving more than 54% of the Property is not roughly proportional, nor directly proportional, to the development's impact.

36.    SMC also did not make any individualized determination that the preservation of the low quality wetlands on the Property is related both in nature and extent to the impact of the proposed development. The burden of preserving the low quality wetlands on the Property is not roughly proportional, nor directly proportional, to the development's impact.

## DEFENDANTS STOP DEVELOPMENT WORK AT AUTUMN RIDGE

37.    The grading of Autumn Ridge will require fill. The fill is only available when a construction site has excess and must be imported when requested, or the fill is taken to other developments ready for importation.

38.    In early May 2008, the Plaintiff's grading contractor located fill ready for import; however, it had to be taken by early June 2008, or the fill would be given to other developers. On May 24, 2008 the Plaintiff's contractor installed a silt fence at the perimeter of the open space for erosion control in anticipation of commencing the importation of fill.

39.    On May 27, 2008 Glenn Westman, the Principal Wetland Specialist for SMC inspected the Property and informed the Plaintiff that the work being done was in violation of SMC and to "stop all work."

40.    On June 10, 2008, the Village of Grayslake gave approval for the Plaintiff to bring fill onto the Property. Access to the Rollins Road property has always been from Rollins Road for over a half century, ever since Rollins Road was first constructed. On June 16, 2008 the Plaintiff started importing fill onto the Property using the existing access on Rollins Road. On June 18, 2008 the Defendants, under threat of arrest, installed a fence along the front of the Property to prevent all access, and all use of the Property.

41.    After the Plaintiff filed a complaint, Lake County refused to issue an access permit, which they approved eight months earlier, and linked the access permit with resolution of the defendants authority over wetlands. Lake County Highway Access Regulation provides in § 3.12 that "the County Engineer shall also have the **authority to**

**delay the issuance of permits** if the property served by the permitted work or facility is in violation of or has not complied with the provisions of the Access Ordinance or any other ordinance, statute, regulation or administrative order that may apply to such property."

42.     On July 2, 2008, Lake County demanded that the Plaintiff post a $62,600 bond and grant right-of-way dedication for a temporary permit to bring fill onto the Property. Since the Plaintiff's request for temporary access did not request to do any work within the county right-of-way on Rollins Road, it is apparent that demand for the bond and dedication of land is not related both in nature and extent to the right for temporary access. Also, Lake County did not make any individualized determination that their demands are roughly proportional, nor directly proportional, to the impact of the temporary access.

43.     Autumn Ridge is a multi-million dollar investment; the construction build-out will exceed $15 Million. The Plaintiff has invested over $1 Million Dollars in the development of the Property, and has worked tirelessly on the development for over four years, and unless the Defendants are ordered to stop their extraterritorial regulation of Village subdivision developments, the Plaintiff will have to seek Bankruptcy Court protection, because it does not have the financial resources to keep the Property idle pending final resolution. Bankruptcy will limit the Plaintiff's ability to compete in the marketplace and the Plaintiff will suffer imminent, irreparable harm.

44.     As a direct and proximate result of the actions of the Defendant's as stated above, the Plaintiff has been damaged in an amount to be determined upon trial of this action.

## PLAINTIFF DOES NOT HAVE AN ADEQUATE REMEDY AT LAW

45.    On February 21, 2006 Special Use Permit between the Village of Grayslake and the Plaintiff provides at paragraph 9.2 that the Plaintiff "will not seek and do not have the right to seek to recover a judgment for monetary damages against the Village."

46.    WDO Art. VIII provides that the "provisions shall not create liability on the part of the Stormwater Management Commission nor any Certified Community nor any officer or employee thereof for any claims, damages or liabilities that result from reliance on this Ordinance or any administrative decision lawfully made thereunder."

47.    Lake County Highway Ordinance § 3.13 requires the Plaintiff to "indemnify, and save harmless and defend the Lake County Department of Transportation and the County, its officers, agents, and employees against all loss, damage, or expense that it or they may sustain as a result of any suits, actions, or claims of any character."

48.    It will be impossible for the Plaintiff to determine the precise amount of damages, and even if those damages are ascertained it may be too late to save the Plaintiff from imminent demise in bankruptcy.

49.    The Plaintiff has no adequate remedy at law for the injuries which the Plaintiff has suffered and will continue to suffer in the future unless the Defendants wrongful conduct is restrained and enjoined.

50.    The Plaintiff has exhausted all administrative remedies available to compel the Defendants to allow the Plaintiff to develop the Autumn Ridge subdivision as approved by the Village of Grayslake.

## COUNT 1 (DECLARATORY RELIEF)

COMES NOW the Plaintiff and files its complaint for Declaratory Relief against the Defendant's and states as follows:

51.    The previous paragraphs of this Complaint are incorporated into this cause of action by this reference as though fully set forth herein.

52.    An actual controversy has arisen and now exists between the Plaintiff and Defendants regarding their respective rights and duties. The Plaintiff contends that the Defendants lack authority to regulate isolated wetlands and inspect the development of the Autumn Ridge subdivision. Defendant contends they have this authority under the WDO.

53.    The Plaintiff desires a judicial determination of its rights and duties, and a declaration that Lake County and SMC is without authority to regulate isolated wetlands, and inspect development of the 25-lot Autumn Ridge subdivision, in the Village of Grayslake.

54.    A judicial declaration is necessary and appropriate at this time under all the circumstances so that the Plaintiff may determine its rights and duties. The Plaintiff has no available administrative remedies by which to challenge the refusal by the SMC to regulate developments in incorporated villages well outside its limited legislative authority.

WHEREFORE, the Plaintiff prays for judgment against Defendants for the following:

(a).    For a declaration that the provisions in the WDO that regulate isolated wetlands within incorporated villages (Art IV § E pg 48-56) is an improper extension of the power granted to Lake County under 55 ILCS 5/5-1062, and invalid, unconstitutional and unenforceable as applied to the development of the Autumn Ridge subdivision; and

(b).    For such other and further relief this Court may deem just and proper.

## COUNT 2 (INJUNCTIVE RELIEF)

COMES NOW the Plaintiff and files its complaint for Injunctive Relief against the Defendants and states as follows:

55.    The previous paragraphs of this Complaint are incorporated into this cause of action by this reference as though fully set forth herein.

56.    Unless Lake County and SMC's wrongful conduct is restrained and enjoined, the Plaintiff will suffer great and irreparable harm, and will be forced to file bankruptcy.

WHEREFORE, the Plaintiff prays for judgment against Defendants for the following:

(a).    For issuance of a preliminary injunction, and followed by a permanent injunction, enjoining Lake County and SMC, and anyone acting on its behalf, from regulating the wetlands and inspecting the development for the 25-lot Autumn Ridge subdivision; and

(b).    For such other and further relief this Court may deem just and proper.

## COUNT 3 (VIOLATION OF DUE PROCESS)

COMES NOW the Plaintiff and for its complaint for violation of the Due Process Clause of the Fourteenth Amendment against the Defendants, state as follows:

57.    The previous paragraphs of this Complaint are incorporated into this cause of action by this reference as though fully set forth herein.

58.    The defendants efforts to preserve wetlands is without statutory authority. This is not a valid regulation of land use but an out-and-out plan of extortion by requiring wetlands to be left in open space under fear of economic harm.

59.    The Plaintiff has a constitutional right to be free from the extortion of wetlands without compensation, and the Plaintiff is in fear of economic harm, and possible bankruptcy, due to the Defendants preservation of wetlands without statutory authority.

60.    The conduct of the Defendants officials who regulate wetlands and access to county roads was performed under color or laws, ordinances, regulations, and statutes and all such conduct constitutes "acts of the state" within the meaning of the Fourteenth Amendment and the Federal Civil Rights Act, 42 U.S.C. §1983.

61.    The actions of the Defendants alleged above violate the Plaintiff's rights to due process as provided by the Fourteenth Amendment to the United States Constitution, and any violation of the same is compensable under 42 U.S.C. § 1983 permitting damages for violation of the right of due process.

WHEREFORE, the Plaintiff prays for judgment against the Defendants, as follows:

(a).    For damages against the Defendants in an amount to be determined upon trial of this action, which amount exceeds $100,000; and

(b).    For reasonable attorneys fees in accordance with 42 U.S.C. § 1988, and for such other and further relief this court may deem just and proper.

### COUNT 4 (VIOLATION OF EQUAL PROTECTION)

COMES NOW the Plaintiff and for its complaint for violation of the Equal Protection Clause of the Fourteenth Amendment against the Defendants, state as follows:

62.    The previous paragraphs of this Complaint are incorporated into this cause of action by this reference as though fully set forth herein.

63.    The Plaintiff received treatment inconsistent with decisions by the Defendants in favor of owners of similar properties who agreed to preserve wetlands.

64.    The actions of the Defendants alleged above violate the Plaintiff's rights to equal protection as provided by the Fourteenth Amendment to the United States Constitution, and any violation of the same is compensable under 42 U.S.C. § 1983 permitting damages for violation of the right of equal protection.

WHEREFORE, the Plaintiff prays for judgment against the Defendants, as follows:

(a).    For damages against the Defendants in an amount to be determined upon trial of this action, which amount which exceeds $100,000; and

(b).    For reasonable attorneys fees in accordance with 42 U.S.C. § 1988; and for such other and further relief this court may deem just and proper.

## COUNT 5 (VIOLATION OF FIRST AMENDMENT)

COMES NOW the Plaintiff and for its complaint for violation of the First Amendment to the United States Constitution against the Defendants states as follows:

65.    The previous paragraphs of this Complaint are incorporated into this cause of action by this reference as though fully set forth herein.

66.    After the Defendants halted the development, the Plaintiff filed the lawsuit in this case. The Defendants retaliated against the Plaintiff in violation of the Plaintiff's rights under the First Amendment prohibiting retaliation for seeking redress of grievances.

67.    The Defendants seek to **chill the assertion of constitutional and statutory rights**, by forcing developers to give up their rights to isolated wetlands or face retaliatory denials of their project in violation of the First Amendment to the U.S. Constitution

68.   By retaliating, the Defendants seek to chill the assertion of constitutional and statutory rights. The Defendants' retaliatory acts would chill a person of ordinary firmness from filing the lawsuit in this case and from complaining about the violations to their constitutionally protected activity in violation of the **constitutional rights of others** provided by the First Amendment, which is actionable under 42 U.S.C. § 1983.

WHEREFORE, the Plaintiff prays for judgment against the Defendants, as follows:

(a).   For damages against the Defendants in an amount to be determined upon trial of this action, which amount exceeds $100,000; and

(b).   For reasonable attorneys fees in accordance with 42 U.S.C. § 1988, and for such other and further relief this court may deem just and proper.

### COUNT 6 (ILLINOIS REGULATORY TAKING)

COMES NOW the Plaintiff and for its complaint for violation of Article I, § 15 of the Illinois Constitution, prohibiting the taking of property without just compensation, against the Defendants state as follows:

69.   The previous paragraphs of this Complaint are incorporated into this cause of action by this reference as though fully set forth herein.

70.   Article I, § 15 of the Illinois Constitution provides that "private property shall not be taken or damaged for public use without just compensation."

71.   Article I, § 15 of the Illinois Constitution is designed to bar Lake County from forcing some people alone to bear public burdens which, in all fairness and justice, the public should bear, and to ensure that the Plaintiff should not have to bear alone the economic burdens that rightly belong on the society that benefits from their imposition.

72.      Forcing the Plaintiff to retain more than 54% of the land in permanent open space will substantially interfere with the Plaintiff's enjoyment of the land, and deprive the Plaintiff of economically viable use of the land in violation of Article I, § 15 of the Illinois Constitution. As a result of the Defendant's regulatory taking of the Property, a right has accrued to the Plaintiff for just compensation from the Defendants; however, the Defendants have not instituted condemnation proceedings to acquire the Property, nor have they paid, or offered to pay, the Plaintiff any just compensation.

WHEREFORE, the Plaintiff prays for judgment against the Defendants, as follows:

(a).      For damages against the Defendants in an amount to be determined upon trial of this action, which amount which exceeds $100,000; and

(b).      For reasonable attorneys fees, and for such other relief this court may deem just and proper.


PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.


Sebastian Rucci (ND IL No. 90785689)
40 The Ledges, 3C
Youngstown, Ohio 44514
Phone: (330) 707-1182
Fax:    (330) 707-1882
Email: SebRucci@Gmail.com
Attorney for the Plaintiff

## VERIFICATION

I am the president of Campus Investments, Inc., the Plaintiff in this action. I have read the above Verified Complaint and know its contents, and the matters stated in Verified Complaint are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

I Greg Waller, under penalty of perjury under the laws of the State of Illinois that the foregoing is true and correct.

Dated July 8, 2008                            Campus Investments, Inc.

_____

Greg Waller, president

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2008, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties via the Court's electronic filing system and parties may access this filing through the Court's Case management/Electronic Case Files (CM/ECF) found on the internet at https://ecf.ilnd.uscourts.gov.

Sebastian Rucci (ND IL No. 90785689)

















