IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LAKE COUNTY, and LAKE COUNTY          )
STORMWATER MANAGEMENT                 )
COMMISSION,                           )
                                      )
            Plaintiffs,               )
                                      )
      v.                              )      No. 08 CV 3835
                                      )
CAMPUS INVESTMENTS, INC. and          )
ZERO ENERGY ESTATES, LLC              )      Hon. Milton I. Shadur
                                      )
            Defendants.               )      Magistrate Judge Mason

**COUNTY OF LAKE AND LAKE COUNTY STORMWATER MANAGEMENT
COMMISSION'S JOINT MOTION FOR REMAND**

Plaintiffs, County of Lake (the "County") and Lake County Stormwater Management

Commission ("SMC"), by and through their counsel, Michael J. Waller, State's Attorney of Lake

County, Lisle Stalter and Dan Jasica, Assistant State's Attorneys, and James Bakk, Special

Assistant State's Attorney, moves that this Honorable Court, pursuant to 28 U.S.C. § 1447(c)

remand this case to the Illinois' Nineteenth Judicial Circuit, and in support thereof would show

the Court as follows:

1.      On June 20, 2008, the County and SMC filed their Lake County ordinance

violation enforcement actions against Campus Investments, Inc. ("Campus") and Zero Energy

Estates, LLC ("Zero Energy Estates") captioned *County of Lake and Lake County Stormwater*

*Management Commission v. Campus Investments, Inc. and Zero Energy Estates, LLC,* 08 CH

2376 (the "state court enforcement action"). The state court enforcement action sets forth

violations of the County's Highway Access Regulation Ordinance and SMC's Watershed

Development Ordinance, arising out of the illegal and unauthorized access off a County highway

and grading activities occurring at the proposed Autumn Ridge Subdivision in Grayslake, Illinois the ("Subject Property"). The state court enforcement action, seeks injunctive relief preventing further work or access to the Subject Property until required County and SMC permits have been obtained and seeks penalties against Campus and Zero Energy Estates for their violations of applicable County ordinances.

2.    On July 3, 2008 Campus filed a Notice of Removal. However, because the effect of removal is to deprive the state court of jurisdiction over a case properly before it, removal statutes are strictly construed against removal. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); 16 Moore's Federal Practice, §107.05 (Matthew Bender 3rd ed.). Moreover, defendants bear the burden of proving that federal jurisdiction exists so as to justify removal. *Long v. Bando Mfg. of America, Inc.*, 201 F.3d 754, 757 (6th Cir. 2000). Defendants do not come close to carrying their heavy burden

3.    Section 1441 of the United States Code provides for removal of "civil" actions. 28 U.S.C. § 1441. And, where the state court action is quasi-criminal in nature it is not removable under Section 1441 of the United States Code. *See, e.g., Georgia v. Fleck & Associates, Inc.*, 622 F. Supp. 256, 258-59 (D.C. Ga. 1985); *Mulligan v. Western Union Tel. Co.*, 20 F. Supp. 953, 959 (D.C. N.J. 1937). An action which seeks to vindicate a public policy and recover a penalty for the benefit of the state is not civil in nature for purposes of removal and is therefore properly remanded to state court. *Id.* Even a cursory review of the underlying state court enforcement complaint demonstrates that such is the case here. The state court enforcement action seeks to enforce local ordinances (the County Highway Access Regulation Ordinance and the SMC Watershed Development Ordinance) and to recover penalties for violation of such. The removed case is therefore not civil in nature and should be remanded.

2

4.     Further, the Notice of Removal is defective as it was not filed in the state court proceeding. (See attached Exhibit 1.) Section 1446(d) provides that "promptly after the filing of such notice of removal of civil action the defendant or defendants shall . . . file a copy of the notice with the clerk of such State court, which shall effect the removal . . ." 28 U.S.C. § 1446(d). Although the state court file contains a notice of removal by Campus which was erroneously filed (and subsequently stricken as improper) in the previously filed (and since dismissed) federal case *Campus Investments, Inc. v. County of Lake and Lake County Stormwater Management Commission* , Case No. 08 CV 3046, (the "08 CV 3046 federal case"), the notice of removal which was filed in this captioned case has not been filed with the State court. (See attached Exhibit 1.) When the notice is not filed with the state court it is defective and the case should be remanded. *See Marci v. M&M Contractors*, 897 F. Supp. 381, 385 (N.D. Ind. 1995).

5.     In addition, the state court enforcement action is not removable as complete diversity does not exist. The Notice of Removal asserts that diversity exists because Campus is incorporated in, and has its principal office in, Ohio and Zero Energy Estates is incorporated in and has its principal office in Missouri. (Notice of Removal, para. 5). Defendant bears the burden of demonstrating by competent evidence that the complete diversity requirements are met. *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997). Defendants have not submitted additional proof or evidence that the complete diversity requirements are met.

6.     In fact, complete diversity does not exist in this case, notwithstanding defendants' best efforts to fabricate a basis for federal jurisdiction. As of the date of the filing of the state court enforcement action, and the filing of this Motion to Remand, Zero Energy Estates is an Illinois domestic limited liability company in good standing registered with the Illinois Secretary

3

of State, and has been since 2007. (See attached Exhibits 2 and 3.) Further, the assertion that

Zero Energy Estates is a Missouri company is false. Zero Energy Estates first attempted to

create a connection to Missouri on June 23, 2008 – *three days after* the County and SMC filed

the state court enforcement action and almost one month after the ordinance violations occurred.

(See Zero Energy Estates' Articles of Organization filed with Missouri Secretary of State on

June 23, 2008 attached as Exhibit 4 and available online at:

https://www.sos.mo.gov/BusinessEntity/soskb/Corp.asp)

      7.     Zero Energy Estates' shenanigans aside, citizenship of the parties is determined

at the time of filing of the suit. *Kilpatrick v. Arrow Co.*, 425 F. Supp. 1378, 1380 (D.C. La.

1977). And, a suit is not removable based upon diversity when a party moves to another state

after the plaintiff files the original complaint in state court. *Id.* Such is what occurred here.

And, as there was not (and still is not) complete diversity, the state court enforcement action is

not removable based upon diversity and should be remanded.

      8.     Defendants further posit that the state court enforcement action is removable

because the state court enforcement action is "a retaliatory filing in response to" Campus' filing

of the 08 CV 3046 case. (Notice of Removal, para. 13.) Although this may be defendants'

unsubstantiated (and erroneous) "spin" on the reason for the filing of state court enforcement

action, a review of the complaint in the state court enforcement action belies this argument. The

complaint asserts straightforward violations of County and SMC ordinances. There are no

federal claims asserted in the complaint and defendants' potential constitutional *defenses* to the

ordinance enforcement action will not sustain federal question jurisdiction. *Blackburn v.

Sunstrand Corp.*, 115 F.3d 493, 494-95 (7th Cir. 1997), *cert denied*, 522 U.S. 997 (1997) ("it has

been understood for a very long time that a federal defense to a claim arising under state law

does not create federal jurisdiction and therefore does not authorize removal").

Moreover, defendants provide no substantiation for their conclusory retaliation assertion. In fact, the assertion that the state court enforcement action was filed in retaliation for the filing of the prior federal court case has already been rejected by Judge Lindberg on July 8, 2008. Specifically, in granting the motion for abstention in the 08 CV 3046 case, Judge Lindberg determined that there was no evidence that the state court enforcement action was filed in bad faith or for harassment purposes. (See Memorandum Opinion and Order entered on July 8, 2008 in case number 08 CV 3046.)[1]

9.      Thus, the allegations of the complaint are not sufficient to give federal court original jurisdiction.

10.      Defendants also attempt to argue that the inclusion of Zero Energy Estates as a defendant in the state court enforcement action was fraudulent and designed solely to prevent removal. Unfortunately for defendants, they do not and cannot back up this absurd conclusion. A claim of fraudulent joinder must be pled with particularity and supported by evidence, not conjecture. *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981). The removing party bears a heavy burden of proving the alleged fraud, *Bodine's, Inc. v. Federal Ins. Co.*, 601 F. Supp. 47, 49 (N.D. Ill.), and that showing can only be made if there is: 1) no possibility that the plaintiff can establish a cause of action against the in-state defendant or, 2) there has been outright fraud in the state court plaintiff's pleading of jurisdictional facts. *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993). Neither of these extraordinary circumstances are present here.

11.      In self-contradiction, defendants now claim that Zero Energy Estates "has no genuine interest in this controversy," and that there was no basis for its inclusion in the state

---

[1] It should be noted that Campus has filed a notice of appeal of this order.

court enforcement action. (Notice of Removal, paras. 9-12). When, in prior court filings, defendant has characterized Zero Energy Estates as the "grading contractor" responsible for all contested grading work on the Subject Property. (See prior Notice of Removal filed in the 08 CV 3046 case, Document # 29, pp. 2-3). And, in its June 12, 2008 Highway Access Permit application and related cover letter, Zero Energy Estates repeatedly represents itself to be the *contract purchaser* of the Subject Property. It is upon this contract purchaser basis that Zero Energy Estates claims entitlement to access the Subject Property, and as applicant for the Access Permit. (*See* Affidavit of Betsy Duckert, attached as Exhibit 5.) Based on these admissions, Zero Energy Estates is not a nominal or a sham defendant, but is an interest-holder in the Subject Property and a proper defendant in the state court enforcement action.

12.     Finally, remand of a removed case is appropriate when abstention is applicable. *See Liebert Corp. v. Mazur*, 2005 WL 1563202 at *3 (N.D. Ill. 2005). As Judge Lindberg already determined abstention applied to this case, it should be remanded back to Circuit Court of the Nineteenth Judicial Circuit, Illinois for all proceedings.

13.     In sum, the Notice of Removal of the state court enforcement action was improper. The underlying state case is quasi-criminal and not subject to removal. The notice of removal is defective, as complete diversity does not exist and there is no federal question jurisdiction. And, as abstention is appropriate, as previously determined by Judge Lindberg in 08 CV 3046, this case should be remanded back to the Nineteenth Judicial Circuit Lake County, Illinois, for all further proceedings.

WHEREFORE, the County of Lake and Lake County Stormwater Management Commission respectfully request that the Court enter an order remanding to the Nineteenth Judicial Circuit – Lake County the cause captioned *County of Lake and Lake County Stormwater*

*Management Commission v. Campus Investments, Inc. and Zero Energy Estates, LLC,* 08 CH

2376.

Respectfully submitted,

MICHAEL J. WALLER
State's Attorney of Lake County

s/Lisle A. Stalter
Assistant State's Attorney
for Defendant, County of Lake

s/Daniel L. Jasica
Assistant State's Attorney
for Defendant, County of Lake

s/James C. Bakk
Special Assistant State's Attorney
for Defendant, Lake County SMC

Michael J. Waller
State's Attorney of Lake County
Daniel L. Jasica (#06237373)
Lisle Stalter (#06242950)
Assistant State's Attorney
18 North County Street, 3rd Floor
Waukegan, IL 60085
(847) 377-3050

James Bakk (#3121531)
Special Assistant State's Attorney
200 N. M.L. King Ave., Suite 206
Waukegan, IL 60085
(847) 249-9900
Campus Motion to Remand FINAL.wpd

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY

## <u>CERTIFIED COPY</u>

I, SALLY D. COFFELT, Clerk of the Circuit Court of the NINETEENTH JUDICIAL

CIRCUIT, LAKE COUNTY, in and for the State of Illinois, and the keeper of the records, files

and seals thereof, do hereby certify the above and foregoing to be a true, perfect and complete

copy of a certain _____ WHOLE FILE _____

_____ , case number ___ 08CH2376 ___

filed in my office on _____ JUNE 20 _____ , _____ 2008 _____ in a

certain cause. _____ NO LONGER _____ pending in said Court,
                        now/no longer

LAKE COUNTY AND LAKE COUNTY STORMWATER MANAGEMENT COMMISSION ___ Plaintiff and

CAMPUS INVESTMENTS INC. _____ Defendant.

IN WITNESS WHEREOF, I have hereunto set my hand, and

Affixed the seal of said Court, at Waukegan, Illinois

_____ JULY 11 _____ , 20 __ 08 __

*Sally D. Coffelt*

Sally D. Coffelt
Clerk of the Circuit Court

By: _____ JL _____
              Deputy Clerk

171-17A  Rev 3/05

STATE OF ILLINOIS     )
                            ) SS.
COUNTY OF LAKE     )

**IN THE CIRCUIT COURT FOR THE NINETEENTH JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS**

| | | |
|---|---|---|
| LAKE COUNTY, and LAKE COUNTY STORMWATER MANAGEMENT COMMISSION, | ) ) ) ) | |
| Plaintiff's, | ) ) | |
| v. | ) ) | Case No. 08-CH-2376 |
| CAMPUS INVESTMENTS, INC. and ZERO ENERGY LLC, | ) ) ) | |
| Defendant's. | ) ) | |

FILED

JUN 3 0 2008

*[signature]*
CIRCUIT CLERK

## NOTICE OF REMOVAL OF THIS CIVIL ACTION
## TO THE UNITED STATES DISTRICT COURT (28 U.S.C. § 1441)

PLEASE TAKE NOTICE that the above entitled case was removed to the United States District Court for the Northern District of Illinois, pursuant to 28 U.S.C. § 1441, as shown on the attached notice of removal.

Pursuant to 28 U.S.C. § 1446(d) "after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which **shall effect removal and the State court shall proceed no further** unless and until the case is remanded."

Accordingly, removal of this case to the District Court is automatic upon the filing of the notice of removal with the clerk of this court, and this court, shall proceed no further unless the case is remanded.

Dated: June 23, 2008                    Respectfully submitted,

*[signature: Sebastian Rucci]*

Sebastian Rucci (ND IL No. 90785689)
40 The Ledges, 3C
Youngstown, Ohio 44514
Phone: (330) 707-1182
Fax:    (330) 707-1882
Email: SebRucci@Gmail.com
Attorney for Campus Inv. and Zero Energy

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CAMPUS INVESTMENTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08-cv-3046 |
| v. | ) | |
| | ) | Judge George W. Lindberg |
| LAKE COUNTY STORMWATER | ) | |
| MANAGEMENT COMMISSION, and | ) | Magistrate Judge Arlander Keys |
| LAKE COUNTY, ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |

**FILED**

**JUN 3 0 2008**

*signature*
CIRCUIT CLERK

## NOTICE OF REMOVAL OF CIVIL ACTION TO DISTRICT COURT

### (28 U.S.C. § 1441)

COMES NOW Campus Investments, Inc, and pursuant to 28 U.S.C. § 1441 files this notice of removal of a recently filed lawsuit in the Circuit Court for the Nineteenth Judicial Circuit, Lake County, Illinois, Case No. 08-CH-2376, titled *County of Lake, et. al, v. Campus Investments, et. al.,* and respectfully represents as follows:

1.    This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1441(a) and (b).

2.    On May 27, 2008 Campus Investments, Inc, filed the original complaint in this court. Lake County and the Lake County Stormwater Management Commission ("SMC") were served the summons and complaint on May 29, 2008, and attorneys made an appearance on June 16, 2008. By that time, a preliminary injunction hearing was already filed and set for hearing. Also, on that day a temporary restraining order was filed against the defendants.

3.    The allegations in this case are that Lake County and SMC have retaliated against Campus Investments for challenging it's authority to regulate wetlands within incorporated villages. Lake County has even taken the extraordinary step of fencing off the Campus Investments property.

4.    On June 20, 2008 Lake County and SMC filed a lawsuit against Campus Investments, and it's grading contractor, Zero Energy, LLC, in the Circuit Court for the Nineteenth Judicial Circuit, Lake County, Illinois, Case No. 08-CH-2376, titled *County of Lake, et. al, v. Campus Investments, et. al.* (Copy attached as Exhibit A).

5.    Campus Investments believes that the state lawsuit is a continuation of the retaliation that they have experienced from Lake County and SMC, and they have even included Campus Investments grading contractor as a defendant in the state court action, in an effort to thwart the diversity jurisdiction in this case. The state lawsuit asserts the identical issues in this case regarding the filling of wetlands and access to property.

6.    28 U.S.C. § 1441(a) states that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

7.    This court has original jurisdiction of the lawsuit as it is based on the retaliatory filing in this case to hamper Campus Investment for having filed the lawsuit challenging it's jurisdiction in this court in the first instance.

8.    An alternative basis for removal is found in 28 U.S.C. § 1441(b) which permits the removal of any civil action "if none of the parties in interest properly joined and served

as defendants is a citizen of the State in which such action is brought" to be removed to the "the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Campus Investments is from Ohio, and Lake County and SMC, are from Illinois, Campus Investments grading contractor, Zero Energy Estates, LLC was attached as a sham defendant to thwart jurisdiction in this court. The case is properly before this Court pursuant to 28 USC § 1441.

9.    28 U.S.C. § 1446(a) provides that a defendant "desiring to remove any civil action . . . from a State court shall file in the district court . . . a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action."

10.    This notice contains the short and plain statement of the grounds for removal, and the pleadings served on the defendant are attached as required by 28 U.S.C. § 1446(a).

11.    28 U.S.C. § 1446(b) provides that the "notice of removal of a **civil action** or proceeding shall be filed within thirty days after the receipt by the defendant . . ." This notice of removal was filed the same day that the plaintiff's counsel received notice of the state complaint on June 23, 2008.

12.    Lastly, 28 U.S.C. § 1446(d) provides that "[p]romptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which **shall effect removal and the State court shall proceed no further** unless and until the case is remanded."

13.    The defendant has filed copies of this removal notice with the state court clerk and served copies on the plaintiff in the sate case, pursuant to 28 U.S.C. § 1446(d).

WHEREFORE, pursuant to 28 U.S.C. § 1441 the recently filed lawsuit in the Circuit Court for the Nineteenth Judicial Circuit, Lake County, Illinois, Case No. 08-CH-2376, titled *County of Lake, et. al, v. Campus Investments, et. al.*, is hereby removed to this Court for further proceedings.

Dated: June 23, 2008                    Respectfully submitted,

*Sebastian Rucci*

Sebastian Rucci (ND IL No. 90785689)
40 The Ledges, 3C
Youngstown, Ohio 44514
Phone: (330) 707-1182
Fax:    (330) 707-1882
Email: SebRucci@Gmail.com
Attorney for Campus Inv. and Zero Energy

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2008, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties via the Court's electronic filing system and parties may access this filing through the Court's Case management/Electronic Case Files (CM/ECF) found on the internet at https://ecf.ilnd.uscourts.gov..

*Sebastian Rucci*

Sebastian Rucci (ND IL No. 90785689)

STATE OF ILLINOIS  )
         ) ss
COUNTY OF LAKE  )

IN THE CIRCUIT COURT OF THE NINETEENTH
JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS

COUNTY OF LAKE and LAKE COUNTY )
STORMWATER MANAGEMENT   )
COMMISSION        )
     Plaintiffs,     )
            )
  vs.         )  General No. 08 CH 2 3 7 6
            )
CAMPUS INVESTMENTS, INC. and )
ZERO ENERGY ESTATES, LLC  )
            )
            )
     Defendants.    )
            )

## VERIFIED COMPLAINT FOR ORDINANCE VIOLATIONS
## SEEKING INJUNCTIVE RELIEF AND MONETARY FINES

   Plaintiffs, County of Lake and Lake County Stormwater Management Commission, by

and through their counsel, Michael J. Waller, State's Attorney of Lake County, and Daniel L.

Jasica and Lisle Stalter, Assistant State's Attorney, and James Bakk, Special Assistant State's

Attorney  complains of Defendants Campus Investments, Inc. and Zero Energy Estates, LLC and

allege as follows:

   1.  Plaintiff County of Lake ("County") is a body politic and corporate of the State of

Illinois.

   2.  Plaintiff Lake County Stormwater Management Agency ("SMC") is an agency of

Lake County established pursuant to 55 ILCS 5/5-1062.

   3.  Defendant Campus Investments, Inc. ("Campus") is the owner of an

1.

approximately 28-acre parcel of undeveloped property located at 21157 West Rollins Road, Grayslake, Illinois, PIN 06-15-200-018 (the "Subject Property").

4.    Zero Energy Estates, LLC ("Zero") represents itself to be the contract purchaser of the Subject Property.

5.    Venue is proper in this Court pursuant to Section 2-101(2) and 2-102(a) of the Illinois Code of Civil Procedure, 735 ILCS 5/2-101(2) and 5/2-102(a).

6.    Commencing over the Memorial Day weekend, May 24-26, 2008, and continuing thereafter, grading and other development activities occurred on the Subject Property and fill material has been brought onto the Subject Property from Rollins Road, dumped, and bulldozed into existing wetlands on the Subject Property, without the necessary highway access permits from the Lake County Division of Transportation ("LCDOT") or the necessary permits and approvals from SMC.

8.    This conduct by or at the direction of Campus and Zero violates the Lake County Highway Access Regulation Ordinance and the SMC Watershed Development Ordinance for which the County and SMC seek injunctive relief and monetary fines from the Defendants.

COUNT I-Violations of the Watershed Development Ordinance

1-8. SMC restates and realleges Paragraphs 1-8 above as and for Paragraphs 1-8 of this Count I of this Complaint as if fully set forth herein.

9.    That, at all times pertinent to this action, there was and is in full force and effect a Lake County Watershed Development Ordinance ("WDO"), which provides county-wide minimum stormwater management rules and regulations relating to development or improvement of real property in Lake County, Illinois.

2

10.  That the Subject Property consists of approximately 28 acres, upon which is located an Isolated Waters of Lake County (hereinafter "wetlands"), as defined in the WDO (Appendix A), consisting of approximately 16.5 acres.

11.  That the Village of Grayslake is not certified to administer the Wetlands provisions of the WDO, and, therefore, the WDO Wetlands provisions are administered by SMC.

12.  That WDO, Art. IV, §A.(1), provides:

> No person ... shall commence any development regulated by this Ordinance on any lot or parcel of land without first obtaining a Watershed Development Permit from the (SMC) ... A Watershed Development Permit is required for any development ... which:
>
>> (d) Creates a wetland impact within an area defined as ... Isolated Waters of Lake County; ....

13.  That WDO, Art. IV, § E (2)(c) specifies certain of the Watershed Development Permit submittal requirements for proposed developments with wetland impacts to Isolated Waters of Lake County.

14.  Defendants, knowing of WDO permit requirements, submitted to SMC on March 8, 2007 a General Development Plan for the Subject Property, as well as a wetland delineation report, prepared by Christopher B. Burke Engineering, Ltd. (CBBEL).  On April 2, 2007, the SMC sent to Defendants, or their representatives, a review letter which identified the Subject Property as having Isolated Waters of Lake County located thereon. (A copy of the April 2, 2007 SMC letter is attached hereto, marked Exhibit A, and incorporated by reference.)

15.  Defendants' next contact with the SMC was an August 2, 2007 requesting a Letter of No Wetland Impact determination from the SMC.  By a letter dated August 17, 2007, the SMC responded to Defendants, or their representatives, advising that a grading plan showing the

3

surveyed wetland boundary was required. (A copy of the SMC August 17, 2007 letter is attached, marked Exhibit B, and incorporated by reference.)

16. On January 9, 2008, Defendants submitted to the SMC updated plans for the development of the Subject Property, along with a revised wetland hydrology analysis. By a letter dated February 13, 2008, the SMC responded to Defendants' submittals by, among other things, noting that the wetland limits shown on the grading plan do not coincide with the wetland boundaries shown in the CBBEL wetland delineation report. The SMC advised Defendants that review of the wetlands submittals could not proceed until the delineated wetland boundary was reviewed in the field. The SMC asked Defendants to re-stake the wetland boundary and call for a site inspection. (A copy of the February 13, 2008 SMC letter is attached, marked Exhibit C, and incorporated by reference.)

17. Defendants did not respond to the SMC February 13, 2008, request for a field review of the wetland boundary.

18. Over the Memorial Day weekend, on or about May 24-26, 2008 Defendants, or their agents, contractors, or representatives, commenced grading on the Subject Property and filled in or impacted approximately 2.5 acres of the Isolated Waters of Lake County on the site.

19. Defendant(s) actions in commencing development activities on the Subject Property, without a properly issued Watershed Development Permit, on or about May 24-26, 2008, and thereafter, constitute a violation of the WDO permit requirements.

20. On Tuesday, May 27, 2008 the Village of Grayslake issued a stop work order to Defendant(s).

21. Other development activity, including additional importation of fill, has been

4

performed on the Subject Property during the first two weeks of June 2008, in further violation of

WDO permitting requirements.

22. That SMC has no adequate legal remedy to effectuate the replacement or restoration

of the wetlands that Defendants have caused to be filled in knowing violation of applicable

county-wide minimum WDO permitting requirements and regulations relating to isolated waters

of Lake County.

WHEREFORE,  Plaintiff Lake County Stormwater Management Commission prays that

this Honorable Court:

A) enter a preliminary injunction and, after trial, a permanent injunction against

Defendants, enjoining Defendants to cease and desist from any development activities on the

Subject Property unless and until after all required WDO permits have been first obtained;

B) enter a preliminary injunction and, after trial, a permanent injunction against

Defendants, that Defendants be ordered to restore the filled or impacted wetlands in accordance

with WDO requirements, or to replace the filled or impacted wetlands with newly established

wetlands of a size, hydrology, and function as provided in the applicable mitigation provisions of

the WDO;

C) that the Defendants be fined $1,000 for each day that the Court finds that a violation

has existed; and,

D) for such other or further relief as is just and equitable under the circumstances.

COUNT II-Violations of the Lake County Highway Access Regulation Ordinance

9.    The County restates and realleges Paragraphs 1 through 8 above as and for

Paragraphs 1 through 8 of this County II of this Complaint, as though fully set forth herein.

5

10.    Rollins Road is a county highway owned and operated by the Lake County Division of Transportation. The Subject Property abuts the south side of the Rollins Road right-of-way.

11.    Prior to the recent events, a seasonal dirt farm field access for farm equipment existed on the Subject Property. On or about June 14, 2008, the existing dirt access was expanded, modified, and improved by Defendants, or their agents, contractors, or representatives, with multiple loads of fill and topped with course gravel to allow construction equipment to enter the Subject Property.

12.    Pursuant to its statutory authority set forth at 605 ILCS 5/5-413 and 605 ILCS 8/801, the County has adopted the Lake County Highway Access Regulation Ordinance (the "Access Ordinance"), in effect at all relevant times, which regulates access to and from County highways, such as Rollins Road.

13.    Pursuant to Section 4 of the Access Ordinance:

An access permit shall be required for the construction of any new access facility or the modification of any existing access facility within the right-of-way of a County Highway when the work is to be done by any person or public agency other than Lake County or when the use of an existing facility is changed.

14.    Section 2.4 of the Access Ordinance defines an "access facility" as "[a] private or public driveway or road providing service to and/or from abutting property to a highway."

15.    Defendants have violated and continue to violate the Access Ordinance by modifying, expanding, altering, and changing the use of an access facility without having obtained a permit for LCDOT and by allowing construction equipment to access to the Subject Property through the illegal access.

16.    Section 3.12 of the Ordinance provides that:

6

Whoever shall construct, or cause to be constructed, any access facility in violation of the requirements of this Ordinance shall be subject to a fine of not less than $100.00 and not more than $500.00 for each access facility so constructed.  Each day that the access facility is in place in violation of this Ordinance shall constitute a separate offense, subject to the above penalties.  A violation shall also include any access facilities to County highways built without approval, and a permit as required by this Ordinance as well as approved facilities built with substandard designs and specifications....

The provisions of this Ordinance shall not be deemed exclusive and shall not be deemed to prevent the maintenance of any other action or proceeding in law or in equity to enforce the provisions of this Ordinance or to vacate and remove any access facility constructed in violation of this Ordinance.

WHEREFORE, Plaintiff County of Lake respectfully prays that this Honorable Court:

Order:

A.    Enter a preliminary injunction and, after trial, a permanent injunction, enjoining Defendants from accessing the Subject Property from Rollins Road unless and until they have obtained all necessary permits from LCDOT for the access facility to the Subject Property, or alternatively, compelling Defendants to remove the access facility from the Subject Property;

B.    Fining Defendants, jointly and severably, $500.00 per day for each day the illegal access facility has been in place and continues to be in place in violation of the Access Ordinance; and

C.    Ordering such other and further relief as this Court deems just and equitable.

Respectfully submitted,
COUNTY OF LAKE

MICHAEL J. WALLER
State's Attorney of Lake County

DANIEL L. JASICA
Assistant State's Attorney

Michael J. Waller
State's Attorney of Lake County
Daniel L. Jasica #06237373
Lisle Stalter
Assistant State's Attorney
18 North County Street, 3rd Floor
Waukegan, IL 60085
(847) 377-3050

James Bakk (#3121531)
Special Assistant State's Attorney
200 N. M.L. King Ave., Suite 206
Waukegan, IL 60085
(847) 249-9900

U:\WPDATA\CIVIL\LSdlj\08 cv3046-Campus Inv\complaint.wpd

8

## VERIFICATION

Tony Wolff., Chief Engineer, Lake County Stormwater Management Commission,

being of legal age and sound mind, and being sworn on oath does state and depose and, under

penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, certifies

that the statements set forth in Count I, Paragraphs 1-22 of this instrument are true and correct,

and that statements made on information and belief, based upon reasonable investigation, the

undersigned certifies that he verily believes the same to be true.

_____
Tony Wolff

SUBSCRIBED & SWORN to before
me this 20th of June, 2008.

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
LESLIE BULAICH
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 10-7-2009

## <u>VERIFICATION</u>

Betsy Duckert, Development Engineer, Lake County Division of Transportation,

being of legal age and sound mind, and being sworn on oath does state and depose and, under

penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, certifies

that the statements set forth in Count II, Paragraphs 1-16 of this instrument are true and correct,

and that statements made on information and belief, based upon reasonable investigation, the

undersigned certifies that she verily believes the same to be true.



Betsy Duckert

SUBSCRIBED & SWORN to before
me this 20th of June, 2008.

NOTARY PUBLIC

LINDA J. MILLER
MY COMMISSION EXPIRES
NOVEMBER 10, 2011



**STORMWATER MANAGEMENT COMMISSION**

April 2, 2007

Mr. Sebastian Rucci
3058 Chardonnay Lane
Poland, OH  44514

Subject:    **Watershed Development File #07-11-040**
            **Proposed Autumn Ridge Subdivision on Rollins Road**
            **(PIN # 06-15-200-018)**
            **Grayslake, Lake County, Illinois**
            **ISOLATED WETLANDS REVIEW #1**

Dear Mr. Rucci:

Thank you for your submittal for the subject development, received by the Lake County
Stormwater Management Commission (SMC) on March 8, 2007.  The submittal included the
General Development Plan prepared by your firm dated 2-07-07 and the wetland delineation
report prepared by Christopher B. Burke Engineering, Ltd. (CBBEL) dated 10-18-05.  Please
reference the above Watershed Development File # in future correspondence with SMC
related to this development.

A Watershed Development Permit (WDP) from the Village of Grayslake is required for the
proposed development, in accordance with the Lake County Watershed Development
Ordinance (WDO, 1-10-06). Grayslake is a certified community for approval and enforcement
of the standard (stormwater management) provisions of the WDO, but not the isolated
wetland provisions of the WDO.  Please contact Mr. Kurt Baumann of Baxter & Woodman,
the Village's WDO Enforcement Officer, at (847)223-5088 for the WDP standard provisions
submittal requirements.  **SMC's review of the proposed development for potential
isolated wetland impacts is required prior to the Village's issuance of the WDP.**

We have the following comments on your submittal, with respect to isolated wetlands:

1)  The one wetland identified on the development site is an *Isolated Water of Lake County*
    (IWLC), per the jurisdictional determination letter from the U.S. Army Corps of Engineers
    dated 5-17-02 (Corps ref. #200200622).  The IWLC is subject to regulation by SMC
    under the WDO. Please confirm that the wetland limits shown on the General
    Development Plan are the surveyed boundaries from CBBEL's wetland delineation.

2)  According to the General Development Plan, it does not appear the IWLC will be directly
    impacted by the development (i.e., filled). However, a wetland hydrology analysis is
    required to determine if indirect impacts to the IWLC may occur (see #3 below).  If no
    direct or indirect impacts to the IWLC will occur, a Letter of No Wetland Impact
    Determination ("LONI") can be issued by SMC.  The LONI review fee is $920.  Please

**LAKE COUNTY STORMWATER MANAGEMENT COMMISSION**
333-B Peterson Road  •  Libertyville, Illinois 60048  •  847/918-5260  •  FAX 847/918-9

EXHIBIT
*A*

*Sebastian Rucci*
*WDP # 07-11-040*
*April 2, 2007*
*Page 2 of 2*

provide the LONI review fee prior to or with your next submittal. If it is determined that IWLC impacts will occur form the development, a full wetland submittal will be required in accordance with WDO IV.E.2.c. and additional review fees will apply.

3) Please provide a "80-150%" wetland hydrology analysis for the preserved IWLC meeting the requirements of WDO IV.E.7.a. If the wetland hydrology requirement is not met, a wetland impact will be assumed and mitigation will be required per WDO Article IV.E.7.b.

4) The IWLC is greater than 2.5 acres in size; therefore, a minimum 50-foot buffer width is required for this wetland (WDO, IV.B.1.i.(1)(b)(iii)). Final approval of the wetland buffer will be by the Village. Note that the preserved wetland and buffer on the development site shall be protected by a deed or plat restriction (WDO, IV.B.1.i.(12)). Please provide SMC and the Village with a draft copy of a proposed plat restriction and any associated exhibit(s) for review. For your consideration, we are enclosing SMC's example Wetland and Wetland Buffer Restrictive Covenant by Plat. Final approval of the plat restriction will be by the Village.

5) According to the General Development Plan, the wetland buffer area will be graded. Note that the disturbed buffer area shall be planted with appropriate native vegetation per WDO IV.B.1.i.(9). Please provide SMC and the Village with the proposed native seeding list for the disturbed buffer area.

We would like to be of assistance. If you have any questions, or would like to set up a meeting, please call me at (847) 918-3611 or e-mail me at gwestman@co.lake.il.us.

Sincerely,
LAKE COUNTY STORMWATER MANAGEMENT COMMISSION

Glenn H. Westman, PWS, CWS, CFM
Principal Wetland Specialist

Enclosure: Example Wetland and Wetland Buffer Restrictive Covenant

cc:     Kurt Baumann, Baxter & Woodman, Inc. (EO - Village of Grayslake)
        Greg Waller, Campus Investments, Inc.

U:\Regulatory Program\Permits\07 Permits\07-11-040\Wetland Review 1_040207



**STORMWATER MANAGEMENT COMMISSION**

August 17, 2007

Mr. Sebastian Rucci
3058 Chardonnay Lane
Poland, OH 44514

Subject:    **Watershed Development File #07-11-040**
**Proposed Autumn Ridge Subdivision on Rollins Road**
**(PIN # 06-15-200-018)**
**Grayslake, Lake County, Illinois**
**ISOLATED WETLANDS REVIEW #2**

Dear Mr. Rucci:

On August 2, 2007, the Lake County Stormwater Management Commission (SMC) received a wetland submittal for the subject development on your behalf from Bollinger, Lach & Associates, Inc. (BLA). The submittal included a request for a "Letter of No Wetland Impact Determination" (LONI) from SMC for the development. Please reference the above Watershed Development File # in future correspondence with SMC related to this development.

A Watershed Development Permit (WDP) from the Village of Grayslake is required for the proposed development, in accordance with the Lake County Watershed Development Ordinance (WDO, 1-10-06). Grayslake is a certified community for approval and enforcement of the standard (stormwater management) provisions of the WDO, but not the isolated wetland provisions of the WDO. Please contact Mr. Kurt Baumann of Baxter & Woodman, the Village's WDO Enforcement Officer, at (847)223-5088 for the WDP standard provisions submittal requirements. **A LONI or Isolated Wetland Impacts Approval from SMC's is required prior to the Village's issuance of the WDP.**

We have the completed our review of BLA's submittal. Please amend (or direct your consultants to amend) the submittal to address the following:

1) Please provide a grading plan and revised erosion control plan showing the surveyed wetland boundary.

2) Please provide a revised wetland hydrology analysis for the preserved isolated wetland based on <u>runoff volume</u>, as outlined in WDO Article IV.E.7.a. The analysis submitted by BLA was based on <u>flow rate</u>. If the wetland hydrology requirement is not met, a wetland impact will be assumed and mitigation will be required per WDO Article IV.E.7.b.



Sebastian Rucci
WDP # 07-11-040
August 17, 2007
Page 2 of 2

3) The proposed location of silt fence is unclear on the Erosion & Sediment Control Plan (Sheet 10). Please enhance the plan to clearly show the silt fence around the perimeter of all areas that will be disturbed, with a minimum of 1' outside the surveyed wetland boundary. SMC recommends that a double-row of silt fence be installed along the edge of the wetland boundary to provide maximum protection of the wetland from disturbance and sedimentation. Note that silt fence materials and installation must meet the applicable sections of AASHTO Standard Specification 288-00, per WDO Article IV.B.1.j(1)(f.). Since the development exceeds 10 acres in size, a Designated Erosion Control Inspector (DECI) is required per WDO Article IV.B.1.j.(2). The Village has final approval authority for the erosion and sediment control measures.

4) According to the Landscaping Plan (Sheet 11), the disturbed wetland buffer is to be seeded with the IDOT Class 4A low-profile native grass mixture. To increase the density and diversity of the native buffer vegetation, SMC recommends the proposed seed mix be enhanced by adding the IDOT Class 5 native forb with annuals mixture to the Class 4A mixture. The Village has final approval authority for the landscape plan.

5) Prior to issuance of the LONI or isolated wetland impacts approval for the development, SMC requires a *deposit* be provided in the amount of $1,600 to ensure we are notified of the pre-construction meeting and to cover the cost of potential wetland compliance inspections. We request the pre-construction meeting be held onsite with you or your consultant, the general contractor, and the DECI in order to inspect the installed wetland protective measures (e.g., silt fence). If SMC is notified at least five (5) working-days in advance of the field pre-construction meeting, $500 of the deposit will be returned upon your written request. The remaining $1,100 of the deposit, minus any assessed wetland inspection fees, will be returned upon your written request following permanent site stabilization and a final site inspection by SMC.

We would like to be of assistance. If you have any questions, or would like to set up a meeting, please call me at (847) 918-3611 or e-mail me at gwestman@co.lake.il.us.

Sincerely,
LAKE COUNTY STORMWATER MANAGEMENT COMMISSION

Glenn H. Westman, PWS, CWS, CFM
Principal Wetland Specialist

cc:    Kirk Smith, Village of Grayslake
       Kurt Baumann, Baxter & Woodman, Inc. (EO - Village of Grayslake)
       Cynthia Flower, Bollinger, Lach & Associates, Inc.

U:\Regulatory Program\Permits\07 Permits\07-11-040\Wetland Review 2_081707



**STORMWATER MANAGEMENT COMMISSION**

February 13, 2008

Mr. Sebastian Rucci, P.E.
3058 Chardonnay Lane
Poland, OH 44514

Subject:    **Watershed Development File #07-11-040**
**Proposed Autumn Ridge Subdivision on Rollins Road**
**(PIN # 06-15-200-018)**
**Grayslake, Lake County, Illinois**
**ISOLATED WETLANDS REVIEW #3**

Dear Mr. Rucci:

Thank you for your submittal for the subject development, received by the Lake County Stormwater Management Commission (SMC) on January 9, 2008. The submittal included updated plans prepared by your office and a revised wetland hydrology analysis prepared by Bollinger, Lach & Associates, Inc. (BLA). Please reference the above Watershed Development File # in future correspondence with SMC related to this development.

A Watershed Development Permit (WDP) from the Village of Grayslake is required for the proposed development, in accordance with the Lake County Watershed Development Ordinance (WDO, 1-10-06). Grayslake is a certified community for approval and enforcement of the standard (stormwater management) provisions of the WDO, but not the isolated wetland provisions of the WDO. Please contact Mr. Kurt Baumann of Baxter & Woodman, the Village's WDO Enforcement Officer, at (847)223-5088 for the WDP standard provisions submittal requirements. **SMC's approval of isolated wetland impacts (or a no wetland impact determination) is required prior to the Village's issuance of the WDP.** Note that SMC's approval of the Base Flood Elevation (BFE) for the non-riverine flood-prone depressional area on the property will also be required prior to issuance of the WDP if the tributary drainage area to the depression is greater than 20 acres.

We have the completed our review of your submittal. Please address (or direct your consultants to address) the following comments:

1) The "Wetland Limits" line shown on the grading plan (Sheet 5) does not appear to correlate with the wetland boundary delineated by Christopher B. Burke Engineering, Ltd. (CBBEL), as depicted on Exhibit 9 in CBBEL's wetland report for the property dated October 18, 2005 (Revised). <u>SMC cannot proceed further with the isolated wetlands review for the proposed development until we verify the delineated wetland boundary in the field.</u> Please have the surveyed wetland boundary re-staked and notify SMC when this has been completed — we will then schedule a review to verify the boundary as soon as field conditions allow (currently there is a 12+ inch snow cover). The field-verified wetland boundary shall be shown on the development plans for permitting purposes.

EXHIBIT
C

2) SMC does not concur with BLA's wetland hydrology analysis (rev. 9-06-07). Please revise the analysis to address the items below. If the "80-150" wetland hydrology requirement is not met, a wetland impact will be assumed and mitigation will be required per WDO Article IV.E.7.b.

   a) The existing condition land use (outside the wetland) appears to be agricultural row crops, not grassland/pasture as indicated in BLA's analysis. Please clarify and adjust the runoff curve numbers appropriately.

   b) Our review identified several discrepancies between the detention volume calculations and the plan sheet. For example:

      i) The calculations indicate a 2-year high water level (HWL) of 779.50 and the plan sheet indicates a 2-year of 779.95.
      ii) The provided 2-year volume is 1.44 ac-ft per the plan sheet; 0.88 ac-ft per calculation summary; and approximately 0.45 ac-ft per the volume calculations table.

   c) The report did not include calculations for the total 2-year detention discharge volume. The required peak detention volume may be 0.88 ac-ft; however, runoff is discharging continuously before and after the peak volume. Please provide the total discharge volume from the beginning of the storm event to the end.

   d) If the verified wetland boundary is different from the boundary currently shown on the plans (see #1 above), the tributary drainage areas and hydrology calculations will need to be revised accordingly to reflect the verified wetland boundary.

3) Please enhanced the Erosion & Sediment Control Plan (Sheet 10) as follows:

   a) the note regarding seeding of the wetland buffer should match the revised Landscape Plan (Sheet 11) - buffer shall be seeded with a mixture of IDOT Class 4A low-profile native grasses and IDOT Class 5 native forbs; and,
   b) the field-verified wetland boundary (see #1 above) should also be included on this plan.

4) Prior to issuance of the LONI or isolated wetland impacts approval for the development, SMC requires a *deposit* be provided in the amount of $1,600 to ensure we are notified of the pre-construction meeting and to cover the cost of potential wetland compliance inspections. We request the pre-construction meeting be held onsite with your field construction manager, the general contractor, and your designated erosion control inspector (DECI) in order to inspect the installed wetland protective measures (e.g., silt fence). If SMC is notified at least five (5) working-days in advance of the field pre-construction meeting, $500 of the deposit will be returned upon your written request. The remaining $1,100 of the deposit, minus any assessed wetland inspection fees, will be returned upon your written request following permanent site stabilization and a final site inspection by SMC.

Sebastian Road
WDP # 07-11-040
February 13, 2008
Page 3 of 3

If you have any questions, or would like to set up a meeting, please call me at (847)918-3611 or e-mail me at gwestman@co.lake.il.us.

Sincerely,

LAKE COUNTY STORMWATER MANAGEMENT COMMISSION

Glenn H. Westman, PWS, CWS, CFM
Principal Wetland Specialist

cc:    Kurt Baumann, Baxter & Woodman, Inc. (EO - Village of Grayslake)
       Kirk Smith, Village of Grayslake
       Greg Waller, Campus Investments, Inc. (via fax)
       Cynthia Flower, Bollinger, Lach & Associates, Inc.
       Kurt Woolford, SMC

U:\Regulatory Program\Permits\07 Permits\07-11-040\Wetland Review3_012308

County of Lake )
)
vs. )
)
Campus Investments, Inc. )

General No. 08 CH 2376

## CERTIFICATE OF ATTORNEY – CIVIL DIVISION

Pursuant to Local Rule 3.01(c), I hereby certify that:

☐ There has been no previous Voluntary or Involuntary Dismissal of the subject matter of this litigation.

☐ There has been a previous Voluntary or Involuntary Dismissal of the subject matter of this litigation and at the time of dismissal the Case No. _____ was assigned to the
Honorable _____

☒ There is no other litigation presently pending in the county involving these parties.

☐ There is other litigation presently pending in the county involving the parties to or subject matter of this lawsuit and that case(s) is/are
assigned Case No.(s) _____
which is/are assigned to the
Honorable _____

Please check the box stating the appropriate sub-type action. This data is being gathered for administrative purposes and will not be used for any other purpose.

**Arbitration – AR**
☐ Arbitration/Tort
☐ Arbitration/Contract

**Chancery – CH**
☐ Mortgage Foreclosure
☒ Injunction
☐ Specific Performance
☐ Mechanics Lien Foreclosure
☐ Complaint for Recision
☐ Partition
☐ Quiet Title
☐ Class Action
☐ Registration of Foreign Judgment
☐ Other

**Eminent Domain – ED**
☐ Eminent Domain
☐ Condemnation

**Law Magistrate – LM**
☐ Tort
☐ Contract
☐ Forcible Entry and Detainer
☐ Replevin
☐ Detinue
☐ Distress for Rent
☐ Class Action
☐ Enroll Judgment
☐ Confirm Arbitrator's Award
☐ Confession of Judgment
☐ Registration of Foreign Judgment
☐ Other

**Law – L**
☐ Tort
☐ Contract
☐ Product Liability
☐ Medical Malpractice
☐ Legal Malpractice
☐ Class Action
☐ Replevin
☐ Accounting Malpractice
☐ Enroll Judgment
☐ Confirm Arbitrator's Award
☐ Registration of Foreign Judgment
☐ Other

**Municipal Corporation – MC**
☐ Annexation
☐ Disconnection

**Miscellaneous Remedy – MR**
☐ Declaratory Judgment
☐ Corporation Dissolution
☐ Election Contest
☐ Mandamus
☐ Habeas Corpus
☐ Review of Administrative Proceeding/Statutory
☐ Review of Administrative Proceeding/Certiorari
☐ Quo Warranto
☐ Change of Name
☐ Forfeiture
☐ Fugitive from Justice
☐ Search Warrant
☐ Application for Eavesdropping Device
☐ Class Action
☐ Registration of Foreign Judgment
☐ Request for Subpoena/Foreign Jurisdiction
☐ Other

**Probate – P**
☐ Decedent/Testate > $15,000
☐ Decedent/Intestate > $15,000
☐ Decedent/Testate $15,000 or less
☐ Decedent/Intestate $15,000 or less
☐ Guardianship of Person/Disabled Person
☐ Guardianship of Estate/Disabled Person
☐ Guardianship of Person/Minor
☐ Guardianship of Estate/Minor
☐ Guardianship of Person and Estate/Minor
☐ Proof of Heirship Alone
☐ Registration of Foreign Judgment
☐ Other

**Tax – TX**
☐ Deeds
☐ Objections
☐ Disposition of Collections of Judgment of Settlement
☐ Class Action
☐ Other

Print Name   Daniel Jasica

Signature   Daniel Jasica

☒ Attorney     ☐ Pro-se

171-366 Rev 12/06

STATE OF ILLINOIS         )
                          ) ss
COUNTY OF LAKE            )



IN THE CIRCUIT COURT OF THE NINETEENTH
JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS

COUNTY OF LAKE and LAKE COUNTY    )
STORMWATER MANAGEMENT             )
COMMISSION                        )
                 Plaintiffs,      )
                                  )
    vs.                           )    General No. 08 CH
                                  )
CAMPUS INVESTMENTS, INC. and      )
ZERO ENERGY ESTATES, LLC          )
                                  )
                                  )
                 Defendants.      )
                                  )

08 CH 2376

**VERIFIED COMPLAINT FOR ORDINANCE VIOLATIONS
SEEKING INJUNCTIVE RELIEF AND MONETARY FINES**

Plaintiffs, County of Lake and Lake County Stormwater Management Commission, by

and through their counsel, Michael J. Waller, State's Attorney of Lake County, and Daniel L.

Jasica and Lisle Stalter, Assistant State's Attorney, and James Bakk, Special Assistant State's

Attorney complains of Defendants Campus Investments, Inc. and Zero Energy Estates, LLC and

allege as follows:

    1.    Plaintiff County of Lake ("County") is a body politic and corporate of the State of

Illinois.

    2.    Plaintiff Lake County Stormwater Management Agency ("SMC") is an agency of

Lake County established pursuant to 55 ILCS 5/5-1062.

    3.    Defendant Campus Investments, Inc. ("Campus") is the owner of an

1

approximately 28-acre parcel of undeveloped property located at 21157 West Rollins Road,

Grayslake, Illinois, PIN 06-15-200-018 (the "Subject Property").

4.      Zero Energy Estates, LLC ("Zero") represents itself to be the contract purchaser of

the Subject Property.

5.      Venue is proper in this Court pursuant to Section 2-101(2) and 2-102(a) of the

Illinois Code of Civil Procedure, 735 ILCS 5/2-101(2) and 5/2-102(a).

6.      Commencing over the Memorial Day weekend, May 24-26, 2008, and continuing

thereafter, grading and other development activities occurred on the Subject Property and fill

material has been brought onto the Subject Property from Rollins Road, dumped, and bulldozed

into existing wetlands on the Subject Property, without the necessary highway access permits

from the Lake County Division of Transportation ("LCDOT") or the necessary permits and

approvals from SMC.

8.      This conduct by or at the direction of Campus and Zero violates the Lake County

Highway Access Regulation Ordinance and the SMC Watershed Development Ordinance for

which the County and SMC seek injunctive relief and monetary fines from the Defendants.

<u>COUNT I-Violations of the Watershed Development Ordinance</u>

1-8. SMC restates and realleges Paragraphs 1-8 above as and for Paragraphs 1-8 of this

Count I of this Complaint as if fully set forth herein.

9.  That, at all times pertinent to this action, there was and is in full force and effect a

Lake County Watershed Development Ordinance ("WDO"), which provides county-wide

minimum stormwater management rules and regulations relating to development or improvement

of real property in Lake County, Illinois.

10.  That the Subject Property consists of approximately 28 acres, upon which is located

an Isolated Waters of Lake County (hereinafter "wetlands"), as defined in the WDO (Appendix

A), consisting of approximately 16.5 acres.

11.  That the Village of Grayslake is not certified to administer the Wetlands provisions

of the WDO, and, therefore, the WDO Wetlands provisions are administered by SMC.

12.  That WDO, Art. IV, §A.(1), provides:

> No person … shall commence any development regulated by this Ordinance
> on any lot or parcel of land without first obtaining a Watershed Development
> Permit from the (SMC) … A Watershed Development Permit is required for
> any development … which:
>
> > (d) Creates a wetland impact within an area defined as … Isolated
> > Waters of Lake County; ….

13.  That WDO, Art. IV, § E (2)(c) specifies certain of the Watershed

Development Permit submittal requirements for proposed developments with wetland impacts

to Isolated Waters of Lake County.

14.  Defendants, knowing of WDO permit requirements, submitted to SMC on March 8,

2007 a General Development Plan for the Subject Property, as well as a wetland delineation

report, prepared by Christopher B. Burke Engineering, Ltd. (CBBEL).  On April 2, 2007, the

SMC sent to Defendants, or their representatives, a review letter which identified the Subject

Property as having Isolated Waters of Lake County located thereon. (A copy of the April 2, 2007

SMC letter is attached hereto, marked Exhibit A, and incorporated by reference.)

15.  Defendants' next contact with the SMC was an August 2, 2007 requesting a Letter of

No Wetland Impact determination from the SMC.  By a letter dated August 17, 2007, the SMC

responded to Defendants, or their representatives, advising that a grading plan showing the

surveyed wetland boundary was required. (A copy of the SMC August 17, 2007 letter is attached, marked Exhibit B, and incorporated by reference.)

16.  On January 9, 2008, Defendants submitted to the SMC updated plans for the development of the Subject Property, along with a revised wetland hydrology analysis.  By a letter dated February 13, 2008, the SMC responded to Defendants' submittals by, among other things, noting that the wetland limits shown on the grading plan do not coincide with the wetland boundaries shown in the CBBEL wetland delineation report.  The SMC advised Defendants that review of the wetlands submittals could not proceed until the delineated wetland boundary was reviewed in the field.  The SMC asked Defendants to re-stake the wetland boundary and call for a site inspection.  (A copy of the February 13, 2008 SMC letter is attached, marked Exhibit C, and incorporated by reference.)

17.  Defendants did not respond to the SMC February 13, 2008, request for a field review of the wetland boundary.

18. Over the Memorial Day weekend, on or about May 24-26, 2008 Defendants, or their agents, contractors, or representatives, commenced grading on the Subject Property and filled in or impacted approximately 2.5 acres of the Isolated Waters of Lake County on the site.

19.  Defendant(s) actions in commencing development activities on the Subject Property, without a properly issued Watershed Development Permit, on or about May 24-26, 2008, and thereafter, constitute a violation of the WDO permit requirements.

20.  On Tuesday, May 27, 2008 the Village of Grayslake issued a stop work order to Defendant(s).

21.  Other development activity, including additional importation of fill, has been

4

performed on the Subject Property during the first two weeks of June 2008, in further violation of WDO permitting requirements.

22. That SMC has no adequate legal remedy to effectuate the replacement or restoration of the wetlands that Defendants have caused to be filled in knowing violation of applicable county-wide minimum WDO permitting requirements and regulations relating to isolated waters of Lake County.

WHEREFORE, Plaintiff Lake County Stormwater Management Commission prays that this Honorable Court:

A) enter a preliminary injunction and, after trial, a permanent injunction against Defendants, enjoining Defendants to cease and desist from any development activities on the Subject Property unless and until after all required WDO permits have been first obtained;

B) enter a preliminary injunction and, after trial, a permanent injunction against Defendants, that Defendants be ordered to restore the filled or impacted wetlands in accordance with WDO requirements, or to replace the filled or impacted wetlands with newly established wetlands of a size, hydrology, and function as provided in the applicable mitigation provisions of the WDO;

C) that the Defendants be fined $1,000 for each day that the Court finds that a violation has existed; and,

D) for such other or further relief as is just and equitable under the circumstances.

COUNT II-Violations of the Lake County Highway Access Regulation Ordinance

9. The County restates and realleges Paragraphs 1 through 8 above as and for Paragraphs 1 through 8 of this County II of this Complaint, as though fully set forth herein.

5

10.     Rollins Road is a county highway owned and operated by the Lake County Division of Transportation.  The Subject Property abuts the south side of the Rollins Road right-of-way.

11.     Prior to the recent events, a seasonal dirt farm field access for farm equipment existed on the Subject Property.  On or about June 14, 2008, the existing dirt access was expanded, modified, and improved by Defendants, or their agents, contractors, or representatives, with multiple loads of fill and topped with course gravel to allow construction equipment to enter the Subject Property.

12.     Pursuant to its statutory authority set forth at 605 ILCS 5/5-413 and 605 ILCS 8/801, the County has adopted the Lake County Highway Access Regulation Ordinance (the "Access Ordinance"), in effect at all relevant times, which regulates access to and from County highways, such as Rollins Road.

13.     Pursuant to Section 4 of the Access Ordinance:

An access permit shall be required for the construction of any new access facility or the modification of any existing access facility within the right-of-way of a County Highway when the work is to be done by any person or public agency other than Lake County or when the use of an existing facility is changed.

14.     Section 2.4 of the Access Ordinance defines an "access facility" as  "[a] private or public driveway or road providing service to and/or from abutting property to a highway."

15.     Defendants have violated and continue to violate the Access Ordinance by modifying, expanding, altering, and changing the use of an access facility without having obtained a permit for LCDOT and by allowing construction equipment to access to the Subject Property through the illegal access.

16.     Section 3.12 of the Ordinance provides that:

6

Whoever shall construct, or cause to be constructed, any access facility in violation of the requirements of this Ordinance shall be subject to a fine of not less than $100.00 and not more than $500.00 for each access facility so constructed. Each day that the access facility is in place in violation of this Ordinance shall constitute a separate offense, subject to the above penalties. A violation shall also include any access facilities to County highways built without approval, and a permit as required by this Ordinance as well as approved facilities built with substandard designs and specifications....

The provisions of this Ordinance shall not be deemed exclusive and shall not be deemed to prevent the maintenance of any other action or proceeding in law or in equity to enforce the provisions of this Ordinance or to vacate and remove any access facility constructed in violation of this Ordinance.

WHEREFORE, Plaintiff County of Lake respectfully prays that this Honorable Court:

Order:

A.    Enter a preliminary injunction and, after trial, a permanent injunction, enjoining Defendants from accessing the Subject Property from Rollins Road unless and until they have obtained all necessary permits from LCDOT for the access facility to the Subject Property, or alternatively, compelling Defendants to remove the access facility from the Subject Property;

B.    Fining Defendants, jointly and severally, $500.00 per day for each day the illegal access facility has been in place and continues to be in place in violation of the Access Ordinance; and

C.    Ordering such other and further relief as this Court deems just and equitable.

Respectfully submitted,
COUNTY OF LAKE

MICHAEL J. WALLER
State's Attorney of Lake County

DANIEL L. JASICA
Assistant State's Attorney

Michael J. Waller
State's Attorney of Lake County
Daniel L. Jasica #06237373
Lisle Stalter
Assistant State's Attorney
18 North County Street, 3rd Floor
Waukegan, IL 60085
(847) 377-3050

James Bakk (#3121531)
Special Assistant State's Attorney
200 N. M.L. King Ave., Suite 206
Waukegan, IL 60085
(847) 249-9900

U:\WPDATA\CIVIL\LSdlj\08 cv3046-Campus Inv\complaint.wpd

## VERIFICATION

Tony Wolff., Chief Engineer, Lake County Stormwater Management Commission, being of legal age and sound mind, and being sworn on oath does state and depose and, under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, certifies that the statements set forth in Count I, Paragraphs 1-22 of this instrument are true and correct, and that statements made on information and belief, based upon reasonable investigation, the undersigned certifies that he verily believes the same to be true.

_____
Tony Wolff

SUBSCRIBED & SWORN to before
me this 20th of June, 2008.

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
LESLIE BULAICH
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 10-7-2009

## <u>VERIFICATION</u>

Betsy Duckert, Development Engineer, Lake County Division of Transportation, being of legal age and sound mind, and being sworn on oath does state and depose and, under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, certifies that the statements set forth in Count II, Paragraphs 1-16 of this instrument are true and correct, and that statements made on information and belief, based upon reasonable investigation, the undersigned certifies that she verily believes the same to be true.

Betsy Duckert

Betsy Duckert

SUBSCRIBED & SWORN to before
me this 20th of June, 2008.

Linda J. Miller
NOTARY PUBLIC



OFFICIAL SEAL
NOTARY PUBLIC STATE OF ILLINOIS
LINDA J. MILLER
MY COMMISSION EXPIRES
NOVEMBER 10, 2011

**LAKE COUNTY**

**STORMWATER MANAGEMENT COMMISSION**

April 2, 2007

Mr. Sebastian Rucci
3058 Chardonnay Lane
Poland, OH  44514

Subject:     **Watershed Development File #07-11-040**
             **Proposed Autumn Ridge Subdivision on Rollins Road**
             **(PIN # 06-15-200-018)**
             **Grayslake, Lake County, Illinois**
             **ISOLATED WETLANDS REVIEW #1**

Dear Mr. Rucci:

Thank you for your submittal for the subject development, received by the Lake County
Stormwater Management Commission (SMC) on March 8, 2007.  The submittal included the
General Development Plan prepared by your firm dated 2-07-07 and the wetland delineation
report prepared by Christopher B. Burke Engineering, Ltd. (CBBEL) dated 10-18-05.  Please
reference the above Watershed Development File # in future correspondence with SMC
related to this development.

A Watershed Development Permit (WDP) from the Village of Grayslake is required for the
proposed development, in accordance with the Lake County Watershed Development
Ordinance (WDO, 1-10-06). Grayslake is a certified community for approval and enforcement
of the standard (stormwater management) provisions of the WDO, but not the isolated
wetland provisions of the WDO.  Please contact Mr. Kurt Baumann of Baxter & Woodman,
the Village's WDO Enforcement Officer, at (847)223-5088 for the WDP standard provisions
submittal requirements.  **SMC's review of the proposed development for potential
isolated wetland impacts is required prior to the Village's issuance of the WDP**.

We have the following comments on your submittal, with respect to isolated wetlands:

1) The one wetland identified on the development site is an *Isolated Water of Lake County*
   (IWLC), per the jurisdictional determination letter from the U.S. Army Corps of Engineers
   dated 5-17-02 (Corps ref. #200200622).  The IWLC is subject to regulation by SMC
   under the WDO. Please confirm that the wetland limits shown on the General
   Development Plan are the surveyed boundaries from CBBEL's wetland delineation.

2) According to the General Development Plan, it does not appear the IWLC will be directly
   impacted by the development (i.e., filled). However, a wetland hydrology analysis is
   required to determine if indirect impacts to the IWLC may occur (see #3 below).  If no
   direct or indirect impacts to the IWLC will occur, a Letter of No Wetland Impact
   Determination ("LONI") can be issued by SMC.  The LONI review fee is $920.  Please

**EXHIBIT**
*A*

provide the LONI review fee prior to or with your next submittal. If it is determined that IWLC impacts will occur form the development, a full wetland submittal will be required in accordance with WDO IV.E.2.c. and additional review fees will apply.

3) Please provide a "80-150%" wetland hydrology analysis for the preserved IWLC meeting the requirements of WDO IV.E.7.a. If the wetland hydrology requirement is not met, a wetland impact will be assumed and mitigation will be required per WDO Article IV.E.7.b.

4) The IWLC is greater than 2.5 acres in size; therefore, a minimum 50-foot buffer width is required for this wetland (WDO, IV.B.1.i.(1)(b)(iii)). Final approval of the wetland buffer will be by the Village. Note that the preserved wetland and buffer on the development site shall be protected by a deed or plat restriction (WDO, IV.B.1.i.(12)). Please provide SMC and the Village with a draft copy of a proposed plat restriction and any associated exhibit(s) for review. For your consideration, we are enclosing SMC's example Wetland and Wetland Buffer Restrictive Covenant by Plat. Final approval of the plat restriction will be by the Village.

5) According to the General Development Plan, the wetland buffer area will be graded. Note that the disturbed buffer area shall be planted with appropriate native vegetation per WDO IV.B.1.i.(9). Please provide SMC and the Village with the proposed native seeding list for the disturbed buffer area.

We would like to be of assistance. If you have any questions, or would like to set up a meeting, please call me at (847) 918-3611 or e-mail me at gwestman@co.lake.il.us.

Sincerely,
LAKE COUNTY STORMWATER MANAGEMENT COMMISSION

Glenn H. Westman, PWS, CWS, CFM
Principal Wetland Specialist

Enclosure:  Example Wetland and Wetland Buffer Restrictive Covenant

cc:    Kurt Baumann, Baxter & Woodman, Inc. (EO - Village of Grayslake)
       Greg Waller, Campus Investments, Inc.

U:\Regulatory Program\Permits\07 Permits\07-11-040\Wetland Review 1_040207

**STORMWATER MANAGEMENT COMMISSION**

August 17, 2007

Mr. Sebastian Rucci
3058 Chardonnay Lane
Poland, OH 44514

Subject:    **Watershed Development File #07-11-040**
            **Proposed Autumn Ridge Subdivision on Rollins Road**
            **(PIN # 06-15-200-018)**
            **Grayslake, Lake County, Illinois**
            **ISOLATED WETLANDS REVIEW #2**

Dear Mr. Rucci:

On August 2, 2007, the Lake County Stormwater Management Commission (SMC) received a wetland submittal for the subject development on your behalf from Bollinger, Lach & Associates, Inc. (BLA). The submittal included a request for a "Letter of No Wetland Impact Determination" (LONI) from SMC for the development. Please reference the above Watershed Development File # in future correspondence with SMC related to this development.

A Watershed Development Permit (WDP) from the Village of Grayslake is required for the proposed development, in accordance with the Lake County Watershed Development Ordinance (WDO, 1-10-06). Grayslake is a certified community for approval and enforcement of the standard (stormwater management) provisions of the WDO, but not the isolated wetland provisions of the WDO. Please contact Mr. Kurt Baumann of Baxter & Woodman, the Village's WDO Enforcement Officer, at (847)223-5088 for the WDP standard provisions submittal requirements. **A LONI or Isolated Wetland Impacts Approval from SMC's is required prior to the Village's issuance of the WDP.**

We have the completed our review of BLA's submittal. Please amend (or direct your consultants to amend) the submittal to address the following:

1) Please provide a grading plan and revised erosion control plan showing the surveyed wetland boundary.

2) Please provide a revised wetland hydrology analysis for the preserved isolated wetland based on <u>runoff volume</u>, as outlined in WDO Article IV.E.7.a. The analysis submitted by BLA was based on <u>flow rate</u>. If the wetland hydrology requirement is not met, a wetland impact will be assumed and mitigation will be required per WDO Article IV.E.7.b.

**LAKE COUNTY STORMWATER MANAGEMENT COMMISSION**
333-B Peterson Road   •   Libertyville, Illinois 60048   •   847/918-5260   •   FAX 847/918-98


EXHIBIT
B

*Sebastian Rucci*
*WDP # 07-11-040*
*August 17, 2007*
*Page 2 of 2*

3) The proposed location of silt fence is unclear on the Erosion & Sediment Control Plan (Sheet 10). Please enhance the plan to clearly show the silt fence around the perimeter of all areas that will be disturbed, with a minimum of 1' outside the surveyed wetland boundary. SMC recommends that a double-row of silt fence be installed along the edge of the wetland boundary to provide maximum protection of the wetland from disturbance and sedimentation. Note that silt fence materials and installation must meet the applicable sections of AASHTO Standard Specification 288-00, per WDO Article IV.B.1.j(1)(f.). Since the development exceeds 10 acres in size, a Designated Erosion Control Inspector (DECI) is required per WDO Article IV.B.1.j.(2). The Village has final approval authority for the erosion and sediment control measures.

4) According to the Landscaping Plan (Sheet 11), the disturbed wetland buffer is to be seeded with the IDOT Class 4A low-profile native grass mixture. To increase the density and diversity of the native buffer vegetation, SMC recommends the proposed seed mix be enhanced by adding the IDOT Class 5 native forb with annuals mixture to the Class 4A mixture. The Village has final approval authority for the landscape plan.

5) Prior to issuance of the LONI or isolated wetland impacts approval for the development, SMC requires a *deposit* be provided in the amount of $1,600 to ensure we are notified of the pre-construction meeting and to cover the cost of potential wetland compliance inspections. We request the pre-construction meeting be held onsite with you or your consultant, the general contractor, and the DECI in order to inspect the installed wetland protective measures (e.g., silt fence). If SMC is notified at least five (5) working-days in advance of the field pre-construction meeting, $500 of the deposit will be returned upon your written request. The remaining $1,100 of the deposit, minus any assessed wetland inspection fees, will be returned upon your written request following permanent site stabilization and a final site inspection by SMC.

We would like to be of assistance. If you have any questions, or would like to set up a meeting, please call me at (847) 918-3611 or e-mail me at gwestman@co.lake.il.us.

Sincerely,
LAKE COUNTY STORMWATER MANAGEMENT COMMISSION

*Glenn H. Westman*

Glenn H. Westman, PWS, CWS, CFM
Principal Wetland Specialist

cc:    Kirk Smith, Village of Grayslake
       Kurt Baumann, Baxter & Woodman, Inc. (EO - Village of Grayslake)
       Cynthia Flower, Bollinger, Lach & Associates, Inc.

U:\Regulatory Program\Permits\07 Permits\07-11-040\Wetland Review 2_081707

**STORMWATER MANAGEMENT COMMISSION**

February 13, 2008

Mr. Sebastian Rucci, P.E.
3058 Chardonnay Lane
Poland, OH  44514

| Subject: | **Watershed Development File #07-11-040** |
|---|---|
| | **Proposed Autumn Ridge Subdivision on Rollins Road** |
| | **(PIN # 06-15-200-018)** |
| | **Grayslake, Lake County, Illinois** |
| | **ISOLATED WETLANDS REVIEW #3** |

Dear Mr. Rucci:

Thank you for your submittal for the subject development, received by the Lake County Stormwater Management Commission (SMC) on January 9, 2008.  The submittal included updated plans prepared by your office and a revised wetland hydrology analysis prepared by Bollinger, Lach & Associates, Inc. (BLA).  Please reference the above Watershed Development File # in future correspondence with SMC related to this development.

A Watershed Development Permit (WDP) from the Village of Grayslake is required for the proposed development, in accordance with the Lake County Watershed Development Ordinance (WDO, 1-10-06).  Grayslake is a certified community for approval and enforcement of the standard (stormwater management) provisions of the WDO, but not the isolated wetland provisions of the WDO.  Please contact Mr. Kurt Baumann of Baxter & Woodman, the Village's WDO Enforcement Officer, at (847)223-5088 for the WDP standard provisions submittal requirements.  **SMC's approval of isolated wetland impacts (or a no wetland impact determination) is required prior to the Village's issuance of the WDP. Note that SMC's approval of the Base Flood Elevation (BFE) for the non-riverine flood-prone depressional area on the property will also be required prior to issuance of the WDP if the tributary drainage area to the depression is greater than 20 acres.**

We have the completed our review of your submittal. Please address (or direct your consultants to address) the following comments:

1) The "Wetland Limits" line shown on the grading plan (Sheet 5) does not appear to correlate with the wetland boundary delineated by Christopher B. Burke Engineering, Ltd. (CBBEL), as depicted on Exhibit 9 in CBBEL's wetland report for the property dated October 18, 2005 (Revised).  <u>SMC cannot proceed further with the isolated wetlands review for the proposed development until we verify the delineated wetland boundary in the field.</u>  Please have the surveyed wetland boundary re-staked and notify SMC when this has been completed – we will then schedule a review to verify the boundary as soon as field conditions allow (currently there is a 12+ inch snow cover). The field-verified wetland boundary shall be shown on the development plans for permitting purposes.

EXHIBIT
C

2) SMC does not concur with BLA's wetland hydrology analysis (rev. 9-06-07). Please revise the analysis to address the items below. If the "80-150" wetland hydrology requirement is not met, a wetland impact will be assumed and mitigation will be required per WDO Article IV.E.7.b.

   a) The existing condition land use (outside the wetland) appears to be agricultural row crops, not grassland/pasture as indicated in BLA's analysis. Please clarify and adjust the runoff curve numbers appropriately.

   b) Our review identified several discrepancies between the detention volume calculations and the plan sheet. For example:

      i) The calculations indicate a 2-year high water level (HWL) of 779.50 and the plan sheet indicates a 2-year of 779.95.

      ii) The provided 2-year volume is 1.44 ac-ft per the plan sheet; 0.88 ac-ft per calculation summary; and approximately 0.45 ac-ft per the volume calculations table.

   c) The report did not include calculations for the total 2-year detention discharge volume. The required peak detention volume may be 0.88 ac-ft; however, runoff is discharging continuously before and after the peak volume. Please provide the total discharge volume from the beginning of the storm event to the end.

   d) If the verified wetland boundary is different from the boundary currently shown on the plans (see #1 above), the tributary drainage areas and hydrology calculations will need to be revised accordingly to reflect the verified wetland boundary.

3) Please enhanced the Erosion & Sediment Control Plan (Sheet 10) as follows:

   a) the note regarding seeding of the wetland buffer should match the revised Landscape Plan (Sheet 11) - buffer shall be seeded with a mixture of IDOT Class 4A low-profile native grasses and IDOT Class 5 native forbs; and,

   b) the field-verified wetland boundary (see #1 above) should also be included on this plan.

4) Prior to issuance of the LONI or isolated wetland impacts approval for the development, SMC requires a *deposit* be provided in the amount of $1,600 to ensure we are notified of the pre-construction meeting and to cover the cost of potential wetland compliance inspections. We request the pre-construction meeting be held onsite with your field construction manager, the general contractor, and your designated erosion control inspector (DECI) in order to inspect the installed wetland protective measures (e.g., silt fence). If SMC is notified at least five (5) working-days in advance of the field pre-construction meeting, $500 of the deposit will be returned upon your written request. The remaining $1,100 of the deposit, minus any assessed wetland inspection fees, will be returned upon your written request following permanent site stabilization and a final site inspection by SMC.

If you have any questions, or would like to set up a meeting, please call me at (847)918-3611 or e-mail me at gwestman@co.lake.il.us.

Sincerely,

LAKE COUNTY STORMWATER MANAGEMENT COMMISSION

Glenn H. Westman, PWS, CWS, CFM
Principal Wetland Specialist

cc:    Kurt Baumann, Baxter & Woodman, Inc. (EO - Village of Grayslake)
       Kirk Smith, Village of Grayslake
       Greg Waller, Campus Investments, Inc. (via fax)
       Cynthia Flower, Bollinger, Lach & Associates, Inc.
       Kurt Woolford, SMC

U:\Regulatory Program\Permits\07 Permits\07-11-040\Wetland Review3_012308

File Number          0230835-5



## To all to whom these Presents Shall Come, Greeting:

*I, Jesse White, Secretary of State of the State of Illinois, do hereby certify that*

ATTACHED HERETO IS A TRUE AND CORRECT COPY, CONSISTING OF 4 PAGE(S), AS TAKEN FROM THE ORIGINAL ON FILE IN THIS OFFICE FOR ZERO ENERGY ESTATES, LLC.



## In Testimony Whereof, *I hereto set my hand and cause to be affixed the Great Seal of the State of Illinois, this* 11TH *day of* JULY *A.D.* 2008 .

*Jesse White*

**SECRETARY OF STATE**

Authentication #: 0819301453
Authenticate at: http://www.cyberdriveillinois.com

LC0099619

**Form LLC-5.5**

April 2007

**Secretary of State Jesse White**
Department of Business Services
Limited Liability Division
501 S. Second St., Rm. 351
Springfield, IL 62756
217-524-8008
www.cyberdriveillinois.com

Payment must be made by certified check, cashier's check, Illinois attorney's check, C.P.A.'s check or money order payable to Secretary of State.

**Illinois**
**Limited Liability Company Act**
**Articles of Organization**

SUBMIT IN DUPLICATE
Must be typewritten.

This space for use by Secretary of State.

Filing Fee:   $500
Approved:    _JB_

**FILE #** _____0230835-$_____

This space for use by Secretary of State.

**FILED**

AUG 2 0 2007

JESSE WHITE
SECRETARY OF STATE

**PAID**

AUG 2 0 2007

---

1. Limited Liability Company Name: Zero Energy Estates, LLC

The LLC name must contain the words Limited Liability Company, L.L.C. or LLC and cannot contain the terms Corporation, Corp., Incorporated, Inc., Ltd., Co., Limited Partnership or L.P.

2. Address of Principal Place of Business where records of the company will be kept: (P.O. Box alone or c/o is unacceptable.) 2524 Webster, River Grove, IL 60171

3. Articles of Organization effective on: (check one)
   ☑ the filing date
   ☐ a later date (not to exceed 60 days after the filing date): _____
   _Month, Day, Year_

4. Registered Agent's Name and Registered Office Address:

   Registered Agent: John                          M.                          Krisky
                     First Name                    Middle Initial              Last Name

   Registered Office: 2524 Webster
   (P.O. Box alone or     Number                    Street                      Suite #
   c/o is unacceptable.)

                     River Grove                    60171                      Cook
                     City                           ZIP Code                   County

5. Purpose(s) for which the Limited Liability Company is organized: (If more space is needed, attach additional sheets of this size.)

   "The transaction of any or all lawful business for which Limited Liability Companies may be organized under this Act."

6. Latest date, if any, upon which the company is to dissolve: _____
   **(Leave blank if duration is perpetual.)**            _Month, Day, Year_

Printed by authority of the State of Illinois. April 2007 — 4M — LLC-4.11

LLC-5.5

7.  **(OPTIONAL)** Other provisions for the regulation of the internal affairs of the Company: (If more space is needed, attach additional sheets of this size.)

8.  The Limited Liability Company: (Check either a or b below.)
    a. ☑ is managed by the manager(s) (List names and business addresses.)

    John M. Krisky, 2524 Webster, River Grove, IL 60171
    Adam V. Fiala, 1420 Middlebury Drive, Aurora, IL 60504

    b. ❏ has management vested in the member(s) (List names and addresses.)

9.  **Name and Address of Organizer(s)**
    I affirm, under penalties of perjury, having authority to sign hereto, that these Articles of Organization are to the best of my knowledge and belief, true, correct and complete.

    Dated _____ August 15 _____, 2007 _____
                    Month & Day              Year

    1. _____        1. 729 Saddlewood Drive
               Signature                     Number            Street

    Vito P. LoVerde, Law Office of Vito P. LoVerde    Wauconda, IL 60084
            Name (type or print)                          City/Town

    _____              _____
    Name if a Corporation or other Entity, and Title of Signer    State        ZIP Code

    2. _____        2. _____
               Signature                     Number            Street

    _____              _____
            Name (type or print)                          City/Town

    _____              _____
    Name if a Corporation or other Entity, and Title of Signer    State        ZIP Code

    **Signatures must be in black ink on an original document. Carbon copy, photocopy or rubber stamp signatures may only be used on conformed copies.**

LC0219411

Form **LLC-1.36/ 1.37**
July 2005

Secretary of State Jesse White
Department of Business Services
Limited Liability Division
Room 351 Howlett Building
501 S. Second St.
Springfield, IL 62756
www.cyberdriveillinois.com

Payment must be made by business
firm check payable to Secretary of State.
(If check is returned for any reason
this filing will be void.)

**Illinois
Limited Liability Company Act**
Statement of Change of Registered Agent
and/or Registered Office

FILE # 0030-855-5

This space for use by Secretary of State.

**SUBMIT IN DUPLICATE**
Must be typewritten

This space for use by Secretary of State.

Filing Fee:  $25
Approved:

**FILED**

**FEB 1 3 2008**

**JESSE WHITE
SECRETARY OF STATE**

**PAID**

**FEB 1 4 2008**

1.  Limited Liability Company Name: Zero Energy Estates, LLC

2.  Name and Address of Registered Agent and Registered Office as they appear on the records of the Office of the Secretary of State (before change):

Registered Agent ___ John ___ M. ___ Krisky ___
First Name    Middle Name    Last Name

Registered Office 2524 Webster ___
Number  Street    Suite No. (P.O. Box alone is unacceptable)

River Grove ___ 60171 ___ Cook ___
City    ZIP Code    County

3.  Name and Address of Registered Agent and Registered Office shall be (after all changes herein reported):

Registered Agent ___ Vito ___ P. ___ LoVerde ___
First Name    Middle Name    Last Name

Registered Office 729 Saddlewood Drive ___
Number  Street    Suite No. (P.O. Box alone is unacceptable)

Wauconda ___ 60084 ___ Lake ___
City    ZIP Code    County

4.  The address of the registered office and the address of the business office of the registered agent, as changed, will be identical.

5.  The above change was authorized by: (check one box only)
    a. ☑ resolution duly adopted by the members or managers. (See Note 4.)
    b. ☐ action of the registered agent. (See Note 5.)

**SEE REVERSE FOR SIGNATURE(S).**

6.  **If the change to the registered agent or registered office is authorized by the members or managers, sign here. (See Note 4 below.)**

The undersigned affirms, under penalties of perjury, having authority to sign hereto, that this statement to change the registered agent or address is to the best of my knowledge and belief, true, correct and complete.

Dated _____ , 2008
                Month/Day                                              Year

_____
Signature (Must comply with Section 5-45 of ILLCA.)

John M. Krisky, Manager
_____
Name and Title (type or print)

_____
If the member or manager signing this document is a company or
other entity, state name of company and indicate whether it is a
member or manager of the Limited Liability Company.

**If change of registered office by registered agent, sign here. (See Note 5 below.)**

The undersigned, under penalties of perjury, affirms that the facts stated herein are true, correct and complete.

Dated _____ , _____
                Month/Day                                              Year

_____
Signature of Registered Agent of Record

_____
Name (type or print)
If registered agent is a corporation,
name and title of officer who is signing on its behalf.

## NOTES

1.  The registered office may, but need not be, the same as the principal office of the Limited Liability Company; however, the registered office and the office address of the registered agent must be the same.

2.  The registered office must include a street or road address (P.O. Box alone is unacceptable).

3.  A Limited Liability Company cannot act as its own registered agent.

4.  Any change of registered agent or registered address effected by the Limited Liability Company must be by resolution adopted by the members or managers.

5.  The registered agent may report a change of the registered office of the Limited Liability Company for which he/she is a registered agent. When the agent reports such a change, this statement must be signed by the registered agent. If a corporation is acting as the registered agent, a duly authorized officer of such corporation must sign this statement.

CYBER *ILLINOIS*                    JESSE WHITE
                                    SECRETARY OF STATE

SERVICES      PROGRAMS      PRESS      PUBLICATIONS      DEPARTMENTS      CONTACT

## LLC FILE DETAIL REPORT

| | | | |
|---|---|---|---|
| Entity Name | ZERO ENERGY ESTATES, LLC | File Number | 02308355 |
| Status | GOODSTANDING | On | 08/20/2007 |
| Entity Type | LLC | Type of LLC | Domestic |
| File Date | 08/20/2007 | Jurisdiction | IL |
| Agent Name | VITO P. LOVERDE | Agent Change Date | 02/13/2008 |
| Agent Street Address | 729 SADDLEWOOD DRIVE | Principal Office | 2524 WEBSTER RIVER GROVE 60171 |
| Agent City | WAUCONDA | Management Type | MGR |
| Agent Zip | 60084 | Dissolution Date | PERPETUAL |
| Annual Report Filing Date | 00/00/0000 | For Year | 2008 |
| Series Name | NOT AUTHORIZED TO ESTABLISH SERIES | | |

**Return to the Search Screen**

Purchase Certificate of Good Standing

(One Certificate per Transaction)

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE





**File Number: 200817591040**
**LC0903138**
**Date Filed: 06/23/2008**
**Robin Carnahan**
**Secretary of State**

## State of Missouri
### Robin Carnahan, Secretary of State

# Articles of Organization

1. The name of the limited liability company is:

   **ZERO ENERGY ESTATES, LLC**

2. The purpose(s) for which the limited liability company is organized:

   **To own, manage and lease real property; To perform all activities necessary or beneficial to this purpose;**

   **The transaction of any lawful business for which a limited liability company may be organized under the Missouri Limited Liability Company Act, Chapter 347 RSMo.**

3. The name and address of the limited liability company's registered agent in Missouri is:

   **Kim E Gardner**                    **4 Meppen Drive, St. Louis MO 63128**
   *Name*                                *Address*

4. The management of the limited liability company is:    [X] Manager        [ ] Member

5. The duration (period of existence) for this limited liability company is:

   **Perpetual**

6. The name(s) and street address(es) of each organizer:

   **Greg Waller, 8650 Lavelle Road, Athens OH 45701**

## In Affirmation thereof, the facts stated above are true and correct:

(The undersigned understands that false statements made in this filing are subject to the penalties provided under Section 575.040, RSMo)

**Greg Waller**
*(Organizer Name)*

# State of Missouri



### Robin Carnahan
### Secretary of State

CERTIFICATE OF ORGANIZATION

WHEREAS,

*ZERO ENERGY ESTATES, LLC*
*LC0903138*

filed its Articles of Organization with this office on the June 23, 2008, and that filing was found to conform to the Missouri Limited Liability Company Act.

NOW, THEREFORE, I, ROBIN CARNAHAN, Secretary of State of the State of Missouri, do by virtue of the authority vested in me by law, do certify and declare that on the June 23, 2008, the above entity is a Limited Liability Company, organized in this state and entitled to any rights granted to Limited Liability Companies.

IN TESTIMONY WHEREOF, I hereunto set my hand and cause to be affixed the GREAT SEAL of the State of Missouri. Done at the City of Jefferson, this June 23, 2008.



_____
Secretary of State

# Missouri Secretary of State, Robin Carnahan

SOS Home :: Business Services :: Business Entity Search

Search
- By Business Name
- By Charter Number
- By Registered Agent
- For New Corporations
    Verify
- Verify Certification
    Annual Report
- File Online
    File Fictitious Name
    Registration
- File Online
    File LLC Registration
- File Online
    Online Orders
- Register for Online
  Orders
- Order Good Standing
- Order Certified Documents

All Annual Reports filed 1999 forward are available to view &/or print as well as all documents filed on or after 5-12-03.

Status of filed documents prior to 5-12-03: If the Creation Filing is not available to be viewed, the entire file may be incomplete because it has not been scanned. Therefore, there may be other types of filings associated with this entity.

Once a copy request and appropriate fees have been received on a specific entity the entire file is completely scanned and available online to view and/or print.

Date: 7/7/2008

**Current Name:** ZERO ENERGY ESTATES, LLC

| Image | Date | Document |
|---|---|---|
| | 6/23/2008 | Creation Filing |

*View the images on-line!! Netscape users, use the* 🄽 *button.*

# Missouri Secretary of State, Robin Carnahan

SOS Home :: Business Services :: Business Entity Search

### Search
- By Business Name
- By Charter Number
- By Registered Agent
- For New Corporations Verify
- Verify Certification Annual Report
- File Online File Fictitious Name Registration
- File Online File LLC Registration
- File Online Online Orders
- Register for Online Orders
- Order Good Standing
- Order Certified Documents

### Filed Documents
(Click above to view filed documents that are available.)

**Date:** 7/7/2008

## Business Name History

| Name | Name Type |
| --- | --- |
| ZERO ENERGY ESTATES, LLC | Legal |

## Limited Liability Company - Domestic - Information

| | |
| --- | --- |
| **Charter Number:** | LC0903138 |
| **Status:** | Active |
| **Entity Creation Date:** | 6/23/2008 11:35:35 PM |
| **Expiration Date:** | Perpetual |

## Registered Agent

| | |
| --- | --- |
| **Agent Name:** | Gardner, Kim E |
| **Office Address:** | 4 Meppen Drive St. Louis MO 63128 |
| **Mailing Address:** | |

## Organizers

| | |
| --- | --- |
| **Name:** | Greg Waller |
| **Address:** | 8650 Lavelle Road Athens OH 45701 |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CAMPUS INVESTMENTS, INC.,           )
                                    )
              Plaintiff,            )
       v.                           )        No. 08 CV 3046
                                    )
LAKE COUNTY STORMWATER              )
MANAGEMENT COMMISSION, and          )
COUNTY OF LAKE,                     )
                                    )
              Defendants.           )        Hon. George W. Lindberg

### AFFIDAVIT OF BETSY DUCKERT

Betsy Duckert, being duly sworn on oath, does hereby state as follows:

1.      I am the Development Engineer for the Lake County Division of Transportation (hereinafter, "LCDOT") and have held that position since January 1991. As the Development Engineer I am primarily responsible for the processing and review of County highway access permit applications within LCDOT.

2.      Rollins Road is part of the Lake County highway system and is controlled and maintained by the Lake County Division of Transportation. Consequently, pursuant to the Lake County Highway Access Ordinance (the "Access Ordinance") any person seeking a new or modified access to Rollins Road must obtain an Access Permit from LCDOT. Attached hereto as Exhibit 1 are a true and correct copy of Sections 4, 8.1 and 10.4 of the Access Ordinance which have been in effect, in its present form, since 2002. (A full copy of the Access Ordinance is available at: http://www.co.lake.il.us/elibrary/ordinances/07feerev_accweb.pdf )

1

3.      As the Development Engineer, I processed and reviewed the Major Access Permit Application submitted on behalf of Campus Investments, Inc. on July 20, 2007, relating to the approximately 25-acre proposed development on the south side of Rollins Road known as "Autumn Ridge."

4.      Following the initial submittal of Campus Investments' application, additional information was provided on behalf of Campus Investments in support of the permit application as required by the Access Ordinance, including a sight distance study and cost estimate for the necessary roadway improvements to serve the proposed Autumn Ridge development.

5.      On October 23, 2007, I sent a letter to Campus Investments' engineer, advising Campus Investments of the remaining outstanding items that needed to be addressed before a Final Access Permit could be issued for the proposed Autumn Ridge development in accordance with the Access Ordinance.  A true and correct copy of my letter to Campus Investments' engineer (a copy of which was copied to Greg Waller of Campus Investments) is attached to this Affidavit as Exhibit 2.  My October 23, 2007 letter outlines the remaining issues that needed to be addressed before an Access Permit could be issued to Campus Investments for the Autumn Ridge development.

6.      Until April 2008, no one on behalf of Campus Investments had any further contact or interaction with LCDOT or made any additional submittals or inquiries to LCDOT in response to my October 2007 letter.

7.      Subsequently, LCDOT was contacted by Adam Fiala, who represented to me that he was the contract purchaser of the Autumn Ridge property.  At that time I provided a copy of my October 2007 letter to Mr. Fiala and advised him that he could re-apply for the Major Access

Permit and that he would need to address the items outstanding identified in my October 2007 letter.

    8.     Meetings were set up with Mr. Fiala for April 9, 2008 and again on April 16, 2008, to discuss the permitting process and what would be required for an Access Permit to issue. On both occasions, neither Mr. Fiala nor anyone on his behalf showed up at the agreed-upon meeting times.

    9.     To date a final decision has not been made on the Major Access Permit Application as the following items remain outstanding to process the application:

        A.     The permit fee has not been paid;

        B.     Proof of insurance has not been provided;

        C.     A performance guarantee has not been provided; and

        D.     A plat of dedication has not been submitted.

    10.    An Access Permit is necessary for this development pursuant to Sections 4 and 10.4 of the Access Ordinance as the development constitutes a modification to the existing seasonal farm field access and a change in land-use from the previously permitted farm access. Modifications to the existing access have been made recently without a permit as is evidenced by the photograph taken June 18, 2008. (See Attached Exhibit 3.)

    11.    It is a violation of the Access Ordinance to make modifications to an existing access without obtaining an Access Permit.

    12.    Mr. Fiala subsequently contacted me on June 10, 2008 and inquired about the possibility of obtaining an access permit in order to bring fill onto the Autumn Ridge development. On June 12, 2008, Zero Energy Estates, LLC, the purported contract purchaser of

3

the Autumn Ridge development filed its application for conditional access to the Autumn Ridge development in order to allow fill to be brought on to the property. A true and correct copy of the June 12, 2008, conditional access application is attached hereto as Exhibit 4.

14.     Pursuant to Section 8.1 of the Access Ordinance, LCDOT is allowed a minimum of fifteen working days to review any submittal. Fifteen working days from June 12th submittal date is July 3rd. Nonetheless on June 13, Mr. Fiala contacted me and demanded the issuance of an access permit. I advised him that I had not yet reviewed the June 12th submittal.

15.     Even in the event that the other standards for issuance of a conditional access permit are found to be present following the LCDOT review of the June 12 permit application, the permit cannot be issued because neither Campus Investments nor Zero Energy have submitted the following:

      A.     Proof of insurance;

      B.     Performance guarantee; and

      C.     A plat of dedication.

16.     The conditional access permit is still under review.

17.     On or about June 18, 2008 Mr. Fiala contacted LCDOT and conveyed that the access permit was necessary as they needed to bring in 15,000 semi-loads of fill to the property.

18.     In reviewing and processing the application, I have communicated with Greg Waller for Campus Investments, to the best of my knowledge I have not talked with Sebastian Rucci.

4

FURTHER THE AFFIANT SAYETH NOT.

Betsy Duckert

Subscribed and sworn to before me
this 20 day of June, 2008.

NOTARY PUBLIC

LINDA J. MILLER
MY COMMISSION EXPIRES
NOVEMBER 10, 2011

O:\Work\Duckert Aff.wpd
December 12, 2005 (4:41pm)

5

# CHAPTER 4    Classification of Access Types and General Requirements

An access permit shall be required for the construction of any new access facility or the modification of any existing access facility within the right-of-way of a County Highway when the work is to be done by any person or public agency other than Lake County or when the use of an existing facility is changed. An access permit shall not be required for a public agency when a joint agreement covers the work involved therein or at such times as the County Engineer is exercising statutory supervisory authority.  The Access Control Officer may, upon written request, extend the term of an access permit for such a period as the Access Control Officer may determine.  The access type corresponds to specific design standards and specifications.  The owner must specify the type of access being requested. If the access type is unknown or ambiguous, the owner shall consult the Access Control Officer. The County Engineer has the responsibility and final authority for determining the access type. The various access types are described below.

## 4.1    Minor Access

A Minor Access is one which serves property abutting a County Highway, has an anticipated normal daily two-way traffic volume (total number of entrance and exit trips by vehicles using the access) of no more than 50 trips, and has no regular use by vehicles or vehicle combinations of three axles or more (personal recreational vehicles excluded).

COMMENTARY:  Examples of land-uses served by a Minor Access include farm entrances, a small residential community (e.g., one to four houses), and an apartment complex with eight or fewer units, or an office building with less than 3,000 gross square feet.



## 4.2  Major Access

A Major Access is one, which serves property abutting a County Highway and has an anticipated daily two-way traffic volume of more than 50 trips.  Since higher volume access facilities to highways have an impact on the capacity, use, and traffic flow of the highway, and because of the uniqueness of the traffic generation and characteristics of each access facility, it is difficult to establish universal standards or requirements for such access facilities. It is the responsibility of the owners to design their access facilities to suit their needs and those of the County Highway in accordance this Ordinance.  Preliminary meetings between the owner and the Access Control Officer should be held to discuss locations, basic requirements, and future changes or plans for the County Highway.

COMMENTARY:  Examples of land-uses served by major driveway access facilities include regional shopping centers, multiple-unit, single-family, multifamily residential developments, office, industrial complexes, public, religious, education or recreation uses.

## 4.3  Designated Freeway Access

605 ILCS 5/8-101 et. seq. Illinois Compiled Statutes, as amended, grants the authority to a County Board to designate particular highways on the County Highway System as freeways for the purpose of promoting the safety and convenience of highway traffic by regulating access to the freeway.  This designation may also apply to approach roads which intersect or approach the freeway.  A permit for an access facility to such freeways shall be termed a "Designated Freeway Access Permit." The County Board has the sole authority to grant or deny new points of access or changes, modifications, and/or revisions to existing points of access. A designated freeway access facility shall be considered a Major Access.

COMMENTARY: As of December 2001,  there are currently two such designated freeways on the County Highway System. They are: (1) Washington Street (County

Highway 45) from U.S. 41 to IL 21, and (2) Peterson Road (County Highway 20) from U.S. 45 to IL 60.

## 4.4  Conditional Access

A Conditional Access is one, which serves property abutting a County Highway and is valid for six months or less. A Conditional Access shall be located at the final access location. Circumstances under which Conditional Access may be granted include construction work at abutting properties, temporary facilities for special events, or any other nonpermanent uses. A Conditional Access permit may be extended upon written approval by the Access Control Officer. A written request is required to consider such action. A Conditional Access facility may be either a Major Access or a Minor Access, depending on the daily traffic volumes. The volume standards are discussed in Sections 4.1 and 4.2 as now existing or hereafter amended.

A Conditional Access shall not be permitted if permanent access to a County Highway will not be granted unless good and substantial reason is submitted in writing to the Access Control Officer. In those instances the Access Control Officer may stipulate reasonable requirements and conditions on any Conditional Access Permit so issued.

## 4.5  Temporary Access

A Temporary Access is one, which serves property abutting a County Highway until such time as indirect access (refer to Section 10.3 Indirect Access) to a County Highway can be provided by another road, but which road has not been built at the time access to the County Highway is requested for the abutting property. At such time as access to the property can be provided from another road, indirect access shall be required and the Temporary Access facility shall be removed and the County Highway right-of-way restored. A Temporary Access facility may be either a Minor Access or a Major Access depending on the daily traffic volumes as established in Sections 4.1 and 4.2 as now existing or hereafter amended. A Temporary Access can also be an access granted for an emergency access. The applicant for the emergency access must be a municipality or a fire district. This access shall be

removed at the request of the County Engineer, at no cost to the County, if its intended use is violated or deemed no longer necessary.

## 4.6   General Requirements

The following requirements shall apply to all types of access facilities:

4.6.1 Joint Highway Improvements

4.6.1.a   Programmed Improvements

In certain circumstances, the LCDOT may have a highway improvement programmed for the section of County Highway for which a owner is applying for access and the owner, in accordance with the provisions set forth in this Ordinance, is required to construct highway improvements to accommodate the proposed access facility. The County Engineer may recommend that both improvements proceed simultaneously and as a coordinated joint improvement.

For joint improvement projects, the County Engineer shall have the option to require a formal joint agreement to be approved by the County Board. The joint agreement shall be prepared by the LCDOT and shall specifically provide for the responsibilities and obligations of the County and the owner as related to the joint improvement. Nothing in this section shall be construed to relieve the owner of any financial responsibilities related to an access facility.

If the owner or the County Engineer determines a joint agreement for a joint improvement is not appropriate, the County Engineer shall specify the conditions to be made a part of the access permit so that construction of the access facility shall not interfere with the proposed County Highway improvement project.

4.6.1.b   Ongoing Improvements

In certain circumstances, the LCDOT may have a highway improve-ment under construction for the section of County Highway for which an owner, in accordance with the provisions set forth in this Ordinance, is required to construct highway improvements to accommodate a proposed access facility. The County Engineer may recommend that the highway improvements for the access facility be incorporated into the ongoing County Highway improvement project by means of a formal joint agreement or by a donation of money to be made a part of the access permit. If a formal joint agreement is recommended, the parties shall proceed as in Section 4.6.1.a.

If a donation of money is recommended by the County Engineer, the owner shall have the option to agree in writing to an amount determined by the LCDOT. This amount shall be sufficient to cover the cost of the required access improvement, including engineering costs and construction supervision, as part of the ongoing County Highway improvement project. The donation shall be subject to acceptance by the Public Works and Transportation Committee, in accordance with  605 ILCS 5/5-101.7 et. seq., as amended.

If the Public Works and Transportation Committee, elects not to proceed with a donation, the County Engineer. shall specify the conditions to be made a part of the access permit so that construction of the access improvement by the owner required for the access facility shall not interfere with the ongoing County Highway improvement project.

Nothing in this section shall be construed to relieve the owner of any financial responsibilities as related to an access facility.

4.6.1.c    Donations

The Public Works and Transportation Committee, in accordance with, 605 ILCS 5/5-101.7 et. seq., as amended, shall have the authority to accept money or right-of-way donated from any source and to use the same for County Highway purposes.

4.6.2    Coordination of Development

a.    If property abutting a County Highway is being developed and access is requested to the County Highway, it shall be the responsibility of the owner to effect any coordination necessary to comply with the requirements and provisions of this Ordinance and the requirements of the governmental authority having land-use regulatory authority.

b.    If two or more owners of property abutting a County Highway are being developed during the same time period, the Access Control Officer may require each owner to effect any coordination necessary to comply with the requirements and provisions of this Ordinance.

c.    The issuance of an access permit by the LCDOT shall not be construed to relieve an owner of any responsibility to secure any other permits or comply with any requirements of any other governmental authority having any jurisdictional responsibilities as it relates to a development. The owner shall also be responsible for securing any permits or complying with any other requirements of any governmental authority as they may relate to the construction of an access facility or highway improvement.

4.6.3    Costs of Access Facilities and Improvements to County Highways

The owner shall be solely responsible for paying all costs associated with the design and construction of an access facility and all costs associated with the design and construction of any improvements to a County Highway as required

4-6

by this Ordinance to accommodate the access facility and the traffic using the access facility. Costs to the owner shall include but are not limited to the following:

a.      Preparation of any plans, studies, information, or data required by the LCDOT to review an access request and any revisions thereto.

b.      Obtain traffic counts and classification counts.

c.      Preparation of a Traffic Impact Study and any revisions thereto.

d.      Preparation of preliminary plans and any revisions thereto.

e.      Preparation of a geometric plan.

f.      Preparation of a traffic signal warrant analysis and any revisions thereto.

g.      Preparation of engineering plans and specifications, including estimates of costs and any revisions thereto.

h.      Traffic control signage.

i.      Traffic signalization.

j.      Pavement markings and markers and all other traffic control devices.

k.      Relocation of utilities and facilities out from underneath the existing or proposed pavement.

l.      Relocation of utility poles to the new right-of-way line.

m.    Removal of objects in the right-of-way (See Section 4.6.6.f).

n.    All easements and right-of-way necessary to construct improvements required by this Ordinance.

o.    Obtaining and posting Performance Guarantees, Certificates of Insurance, and Maintenance Guarantees.

p.    Fees and other charges as required by this Ordinance.

q.    All other costs associated with an access facility and improvements to a County Highway as required in this Ordinance.

## 4.6.4 Right-of-Way Requirements

This section sets forth right-of-way requirements, including minimum widths, restoration, and prohibition of objects in the right-of-way.

### 4.6.4.a    Right-of-Way Widths

The right-of-way widths for County Highways shall be a total of 100 to 120 feet, 50 to 60 feet half right-of-way width, as designated by the County Engineer. If the property abutting a County Highway is to be subdivided or a major access facility is being requested, the owner shall dedicate, at no cost to the County, sufficient land to satisfy this right-of-way requirement.

If additional right-of-way is needed in order to construct the major access facility or is needed to accommodate a future improvement to a County Highway, due to the particular circumstances of the nature of the major access facility, the additional right-of-way shall be dedicated by the owner at no cost to the County.  If the additional right-of-way needed is

from property not controlled by the owner, the owner shall obtain the additional right-of-way in the name of the County at no cost to the County.

4.6.4.b    Minimum Right-of-Way Widths at Major Intersections and to Accommodate Future County Bike Paths

At certain major intersections and along County Highways where future County Bike Paths will be constructed as identified by the County Engineer the minimum total right-of-way width required shall be 120 feet, 60 feet half right-of-way width. If the abutting property is being subdivided or a major access facility is being requested, the owner shall dedicate, at no cost to the County, sufficient land to satisfy this right-of-way requirement.

4.6.4.c    Radius at the Intersection of Right-of-Way Lines

A minimum radius of 35 feet shall be provided at intersecting right-of-way lines.   For major intersections as described in Section 4.6.6.b, the minimum radius at the intersecting right-of-way lines shall be 50 feet.

4.6.4.d    Wording on Plat

The following wording shall be used to dedicate right-of-way on a   plat of subdivision or plat of dedication: HEREBY DEDICATED FOR PUBLIC ROAD PURPOSES.

4.6.4.e    Restoration of Right-of-Way

Upon completion of any construction work within the right-of-way, the right-of-way shall be restored in accordance with the permitted plans acceptable to the LCDOT.

4.6.4.f     Objects in the Right-of-Way

No new objects, trees, plantings, bushes, landscaping, fences, signs, rocks, debris, berms, detention or retention facilities, or any such materials shall be permitted within the right-of-way. In those instances where additional right-of-way is being dedicated as required by this Ordinance, brush, fences, signs, rocks, landscaping, objects, berms, detention facilities, wetlands, floodplains, and other such obstacles shall be removed or relocated beyond the new right-of-way line. All existing utility poles shall be relocated to the new right-of-way line along the entire frontage of the development.

4.6.4.g     Right-of-Way Encumbrances

All right-of-way to be dedicated shall be free and clear of any existing encumbrances, which would render the right-of-way in any manner or form unusable for road purposes or would in any manner or form, result in any extraordinary costs to the County at such time as said right-of-way is to be used for road purposes.

COMMENTARY: The additional right-of-way required in this section is needed to accommodate future highway improvements that are needed because of the cumulative traffic generation of developments and to accommodate access facilities. The right-of-way widths are also needed to accommodate roadway drainage, snow storage, and utilities and facilities, and to provide for traffic and pedestrian safety.

4-10

4.6.5    Coordination with Other LCDOT Permits

After the engineering plans, specifications, estimate of cost, payment of fees, performance guarantee, and certificate of insurance are received and approved by the LCDOT, the plat of subdivision will be signed by the County Engineer. Also at this time any utility/facility permits that have been applied for can be issued with the issuance of the access permit. Gas, electric and telephone service permits will also be released with the issuance of the access permit.  Construction may then commence in accordance with the rules, regulations, and specifications of this Ordinance.

# CHAPTER 8   Conditional Access

## 8.1   Administrative Requirements

1.   All submittals received by the LCDOT will be reviewed within 15 working days or as deemed a reasonable time period given manpower, workload, and budgeting constraints.

2.   The initial submittal shall include a cover letter explaining what documents are enclosed.  All resubmittals shall include a cover letter with a detailed disposition of comments, two sets of all documents, and previously reviewed red marked submittals.

## 8.2   Permit Process and Requirements

Before a Conditional Access request is considered, the Major Access Permit process must be started.  The Major Access application and application fee shall be submitted.  Additionally, the following studies, plans, and information must be submitted and approved.  The Access Control Officer may require other additional studies, plans, and information in order to review and evaluate the owner's application.

- Traffic Impact Study
- Traffic Signal Warrant Analysis
- Sight Distance Study
- Geometric Plan
- Pavement Design
- Drainage Study
- Water Quality Plan
- Erosion Control Plan
- Engineering Plans
- On-site Engineering Plan

- Plat of Subdivision/Plat of Dedication
- Cost Estimate
- Photographs of the existing right-of-way at 100 foot intervals. All photographs must be taken along, not perpendicular to, the right-of-way.

The application and application fee for a Conditional Access are required at the time of the Conditional Access request. The permit is valid until the Major Access Permit is issued for the Development or a maximum of six (6) months, whichever is less. Should the Access Control Officer approve the request for a Conditional Access, the Applicant must submit (1) a performance guarantee equal to one hundred ten percent (110%) of the engineer's estimate of cost based upon the approved geometric plan; (2) a plat of dedication, which dedicates all the right-of-way required for a Major Access Permit; and (3) proof of insurance in accordance with Chapter 15 prior to the issuance of a Conditional Access Permit.

## 8.3   Design Standards

Refer to Chapter 11.

8-2

roads such as County Highways is to carry traffic to and from such sites, not to augment or be a part of an internal circulation system.

10.3.3    Wording on the Plat of Subdivision

When indirect access is required and there is a plat of subdivision, the following note shall be placed on the plat of subdivision:

Direct Access to _____ Road,

County Highway _____, from Lots

_____is prohibited.

This note shall be placed on all plats that have additional lots or outlots along the County Highway frontage that will not take direct access to the County Highway.

## 10.4 Changes in Land-Use

If a change in land-use or land-use density occurs and an existing access facility is proposed to be used, the owner shall make application to the LCDOT to continue use of the existing access facility. The application for use of the existing access facility shall be reviewed as if it were a new access facility and all the provisions of this Ordinance shall apply.

COMMENTARY: Changes in land-use or land-use density result in a change in the number of vehicles using an access facility; therefore, modifications, improvements, or revisions may be required to the access facility and/or the County Highway to accommodate the change.



Division of Transportation

Martin G. Buehler, P.E.
Director of Transportation/County Engineer

600 West Winchester Road
Libertyville, Illinois 60048-1381
Phone  847 362 3950
Fax      847 362 5290

**Engineering Review 2**
**Autumn Ridge**
**Rollins Road**

**October 23, 2007**

Ms. Cynthia R. Flower, P.E.
Bollinger, Lach & Associates, Inc.
600 Route 31, Suite B
Crystal Lake, IL  60012

Dear Ms. Flower:

Thank you for your engineering submittal for the Autumn Ridge Development on Rollins Road in the Village of Grayslake.  Attached is a copy of the Major Access Permit Checklist that will be used to track your progress through our process.  This will be updated with every submittal made to our office and a copy of this checklist will be returned to you.  The following comments are made:

1.  We are returning the application and application fee for the emergency access on Rollins Road.  As was discussed in the meeting of March 5, 2007, any emergency access request must come from the Municipality or Fire Protection District.  **This has not yet been addressed by the Village or Fire Protection District as to why an emergency access is needed less than 200 feet from the subdivision access.**
2.  The stationing does not match the stationing you were provided from the right-of-way strip maps.  The stationing shown was the baseline of construction that you may have gotten from the County's construction project.  Should you wish to show this that is okay, but your construction must be tied into the stationing of Rollins Road.  **This has not yet been fully addressed as all your construction must be tied to the existing stationing of Rollins Road, this plan still shows all stations and offsets to the baseline of construction from a County construction project.**
3.  We have no objection to the filling shown on Sheet 10A.

The following items must be submitted before the Access Permit can be issued:

1.  Four final sets of engineering plans, signed and sealed.  Either the plans need to change to remove the proposed emergency access, or an application must be received from the Village of Grayslake for the emergency access.
2.  A $1550.00 permit fee and inspection fee (check made payable to "Treasurer - County of Lake".  This does not include any permit fees for an emergency access.
3.  Acceptable Proof of Insurance adding the Lake County Division of Transportation, its employees and its agents, and the County of Lake, its employees and its agents, as additional insured to the Campus Investments General liability insurance, per Chapter 15 of the Access Ordinance.
4.  Acceptable Performance Guarantee in the amount of $62,600.00 for a two year (minimum) term.  Enclosed is the format of the Irrevocable Letter of Credit.

1



5. Name, address, telephone number and State of Illinois Certificate number of the Registered Professional Engineer who will be the Resident Engineer for this project. This Engineer will be responsible for submitting weekly construction inspection reports in the IDOT Motor Fuel Tax format. This letter must come from the Engineer, written on his letterhead.

6. Plat of dedication.  The original mylar must contain all the signatures except that of the County Engineer.

7. One set of the Village approved onsite plans.

Should you have any questions, do not hesitate to contact me at (847) 362-3950.

Very truly yours,

Betsy A. Duckert, P.E.
Development Engineer

Enclosures

cc:    Greg Waller, Campus Investments
       Kirk Smith, Village of Grayslake
       William Heinz, Baxter & Woodman (Village Engineer)

*17 (42) Working days at LCDOT (Cumulative)*
*49 Working days since last review*
*91 Working days since first submittal*

2



AutumnRidge-Rollins01.JPG  2008/06/18 14:09:22



AutumnRidge-Rollins02.JPG  2008/06/18 14:09:45



**ZERO ENERGY ESTATES, LLC.**
7959 West Grand Avenue
Elmwood Park, IL 60707
Phone: (888) 976-9995
eb_excavation@yahoo.com

Lake County DOT
Attn: Betsy A. Duckert
600 West Winchester Road
Libertyville, IL 60048

Dear Mrs. Duckert:

Enclosed is the appropriate application fee and approved plan by the Village of Grayslake to import fill onto our property at 21157 W Rollins Road in the Village of Grayslake. We would like a conditional access, and we believe that we comply with the requirements for the same as required by the "Lake County Highway Access Regulation Ordinance" as last amended November 12, 2002.

Bollinger, Lach & Assoc. (through engineer Cindy Flower) submitted plans for a major access to the property last year. After making corrections you requested, you approved the work designed for Rollins Road in front of the property (re-stripping of center median). The final engineering is close to completion, and will be completed very soon. Nonetheless, on June 10, 2008 the Village granted approval to import fill onto the property. Attached is a copy of the letter granting this approval, and the signed plan approving the same.

We would appreciate a conditional access permit, so that we may import the fill. The fill material is only available when a construction site has excess and unless we accept the import we will lose the fill to other developments. For that reason, time is of the essence. We do not wish to perform any work on the county right-of-way at this time. We simply would like a permit to access the property to import fill.

L.C. High. Acc. Reg. § 4.4 titled "Conditional Access" states that a "Conditional Access is one, which serves property abutting a County Highway and is valid for six months or less. A Conditional Access shall be located at the final access location. Circumstances under which Conditional Access may be granted include **construction work at abutting properties. . . .**"



EXHIBIT
4

We believe that we comply with the requirements for a conditional access, pursuant to the "Lake County Highway Access Regulation Ordinance" as last amended November 12, 2002. Pursuant to Chapter 8 "[b]efore a Conditional Access request is considered, the Major Access Permit process must be started." (L.C. High. Acc. Reg. § 8.2). The major access permit has been concluded and is only awaiting final engineering approval from the Village for it's attainment. Since the engineering submitted by Bollinger, Lach & Assoc. was already approved, there is no other condition for attainment of a conditional access permit. Please notice that requirement for "a copy of on-site plans approved by the appropriate municipality" is not required for a conditional access pursuant to Chapter 8 (compare L.C. High. Acc. Reg. § 6.2.4(2) with § 8.2).

During our phone call you indicated that the owner needs to make the application. According, to L.C. High. Acc. Reg. § 2.4 the "owner" is the "person having the right of legal title or beneficial or controlling interest in or a **contractual right to purchase** a lot or parcel of land." The "developer" is similarly defined as the "legal or beneficial owner of a lot or parcel of any land proposed for inclusion in a development, including the holder of an option or contract to purchase." We are under contract to purchase the land and are therefore the owner, the developer and the "contractor" as the "firm engaged in construction."

The property has been farmed for many decades and has a curb cut along Rolling Road and has access to Rollins Road prior to the adopted date when the L.C. High. Acc. Reg. was adopted on April 12, 1988. (L.C. High. Acc. Reg. § 10.7). Additionally, on April 29, 2003 the Lake County DOT acquired right-of-way from the prior owner of the land and in return agreed to grant major access to the property.

We would appreciate getting a conditional access permit for the property as stated above. If you have any questions please call me on my cell phone at (708) 935-2007. Thank you.

Sincerely,
Zero Energy Estates, LLC.


Adam Fiala, vice-president



**B A X T E R**

**W O O D M A N**

*Consulting Engineers*

June 10, 2008

Mr. Kirk Smith
Village Zoning Officer
Village of Grayslake
10 South Seymour Avenue
Grayslake, Illinois 60030

**Subject: *Village of Grayslake – Campus Development***
**    *Autumn Ridge – Soil Stockpile Plan Approval***

Dear Mr. Smith:

In accordance with your instructions received June 8, 2008, we have completed an office review of the soil stockpile plan for Autumn Ridge, dated June 9, 2008 and prepared by Mr. Sebastian Rucci, P.E., for Campus Development, developer of the project, to determine compliance with Village Ordinances and good engineering design practices.

Based upon our review, we recommend approval of the plan. Prior to beginning operations on the project site, the developer must present a copy of the LCDOT access permit, post any required security or permit fees, and provide at least 48 hours notice to the Village.

By copy of this letter, the approved plans are being distributed to the engineer for use during construction. A stamped set of plans must be available on the project site at all times. Any future revisions, whether due to site conditions or reviews by other permitting agencies, should be submitted to the Village for review and approval. In case of conflict between differing plan sets, the stamped plans will govern.

The above-noted recommendation constitutes a provisional local review only. The developer and his engineer are responsible for obtaining all County, State, Federal or private approvals, permits, authorizations or easements required to construct the improvements as depicted by the referenced plans.  To the extent that changes are required to the plans on which this recommendation is based due to the requirements of any other approval, permit, or authorization, the recommendation above may be modified or revoked as appropriate.  Neither the Village nor Baxter & Woodman, Inc. bear any responsibility for notifying the developer or his



**B A X T E R**

**W O O D M A N**

*Consulting Engineers*

Mr. Kirk Smith                                                                  June 10, 2008
Village of Grayslake                                            080509.07 • Page 2

engineer of the requirements of any other entity except as provided for by ordinance.

Our review did not include field verification of existing conditions, elevations, grades or topography as shown on the plans. The developer and their consultants have the ultimate responsibility for the correct representation of existing field conditions as well as providing a design that complies with Village ordinances and standards.

In order to provide the most expeditious review process possible, this letter has been sent to your office, the developer and his engineer concurrently. Therefore, the developer is warned that the Village reserves the right to amend or include additional comments as necessary to assure the plans satisfy all aspects of Village codes, ordinances and policies.

Very truly yours,

BAXTER & WOODMAN, INC.
CONSULTING ENGINEERS

Gregory E. Mitchell, P.E.

GEM:lmc

C:  Mr. Michael Ellis, Village of Grayslake
    Mr. Kevin McCrory, Village of Grayslake
    Mr. William Heinz, Village of Grayslake
    Mr. Michael DeBennette, Baxter & Woodman
    Mr. Greg Waller, Campus Development
    Mr. Sebastian Rucci, P.E.

M:\GRAYL\080509- Escrow Projects\080509.07 - Autumn Ridge\2008 06 10 Stockpile Plan Approval.doc

31 S. Seymour

Grayslake, IL 60030

847.223.5068

Fax 847.543.1661

info@baxterwoodman.com



E B Excavation & Development, Inc    0905

PO Box 6346
Aurora IL 60598
Office 888.976.9995

5152

6/11/2008

PAY TO THE
ORDER OF    Treasurer - County of lake                    $ **450.00

Four Hundred Fifty and 00/100************************************************    DOLLARS

BANK OF AMERICA, NA
CHICAGO, IL
70-4808/819

Treasurer - County of lake
600 Winchester Road
Libertyville, IL 60048

Void after 90 days

MEMO Minor Conditional Access Permit Rollins Road
Zero Energy Estates, LLC

Eric R. Fiala

⑈005152⑈ ⑈081904808⑈ 29100166077⑈⑈

© 2005 INTUIT INC. # 785  1-800-433-8810

E B Excavation & Development, Inc

5152

Treasurer - County of lake

450.00

6/11/2008

Grayslake

RECEIVED
JUN 1 2 2008
LAKE CO. CIV. TRANS.

450.00

Bank of America

**LakeCounty**
Division of Transportation

Application Number / Date _____

600 W. Winchester Road
Libertyville, IL 60048
(Telephone 847/362-3950)

RECEIVED
JUN 1 2 2008
LAKE CO. DIV. TRANS.

# APPLICATION FOR ACCESS TO A COUNTY HIGHWAY  *(Please print or type)*

APPLICANT (Name and address of property owner or holder of an option or contract to purchase):
Zero Energy Estates, LLC., 7959 West Grand Avenue, Elmwood Park, IL 60707

Telephone Number:  888-976-9995

In accordance with the provisions of the Lake County Highway Access Regulation Ordinance, as amended, the above named applicant hereby makes application to the County Engineer of Lake County for access to a Highway that is part of the County Highway System of Lake County, Illinois.  This access is described as follows:

1.  **Name of County Highway:**  Rollins Road

2.  **Property Identification Number (PIN) or Tax Parcel ID Number:**  06-15-200-018

3.  **Location of Proposed Access:**
    Property Address:  21157 W Rollins Road, Grayslake, IL
    Side of County Highway:    ☐ North       ☐ East       ☒ South       ☐ West

4.  **Use of Property to be Served By Proposed Access** (explain use of land, such as single family dwelling, farming purposes, construction project, real estate office, shopping center, subdivision, etc.):
    Autumn Ridge Single Family Subdivision (25 Lots)

5.  **Other Information**
    a.  Does the property to be served have frontage along another road or street?  (If yes, explain):  No.

    b.  Will or does the property to be served have other access?  (If yes, explain):  No.

    c.  Will the proposed access be removed or no longer be needed in the near future?  (If yes, explain):  No.

    d.  Comments  (if needed):

6.  **Additional Information** (if applicable)
    a.  Name, address and telephone number of agent for above property owner:
        Adam Fiala  CELL 708 935 2007
    b.  Name, address and telephone number of Design Engineer or firm:
        Bollinger Lach & Assoc. Attn Cynthia Flower, 600 Route 31 Suite B, Crystal Lake, IL 60012
    c.  Comments (if needed):

**Amount of Enclosed Application Fee (non-refundable):** _____

☐ Minor Access    ☐ Major Access    ☐ Freeway Access    ☒ Conditional Access    ☐ Temporary Access

**NOTE: This Application is subject to the General Conditions as printed on the reverse side of this form.**
**The Application is only valid when an original signature is provided on page 2.**

Page 1 of 2

Rev. 6/2004

## GENERAL CONDITIONS FOR APPLICATION FOR ACCESS TO A COUNTY HIGHWAY

1.  In submitting this application, the Applicant agrees to comply with the Lake County Highway Access Regulation Ordinance, as amended.

2.  This application shall be used for only one access. Any additional access will require a separate application form and fee.

3.  The submittal of this application does not obligate the County Engineer to issue an access permit if such access facility will not comply with the provisions of the Lake County Highway Access Regulation Ordinance, as amended.

4.  Lack of immediate response to a submitted application form or submitted preliminary information, engineering plans or other submittals shall not be construed as approval or acceptance of the submittal.

5.  The Lake County Division of Transportation, its employees and its agents, and the County of Lake, its employees and its agents shall not be held responsible for costs or delays to the Applicant due to the processing time required by the Lake County Division of Transportation to review submittals by the Applicant or his authorized agents.

6.  The Applicant is responsible for the total cost of the access. This includes engineering, construction and inspection costs as well as any costs the Lake County Division of Transportation may incur such as traffic control signage installations and emergency corrective actions.

7.  Application and Permit fees are non-refundable once processed.

_____
(Signature of Property Owner or Developer)

**Adam Fiala**
_____
(Printed name of above signature)

Vice President
_____
(Title)

Page 2 of 2

Rev 6/2004

Division of Transportation

Martin G. Buehler, P.E.
Director of Transportation/County Engineer

 LakeCounty

600 West Winchester Road
Libertyville, Illinois 60048 -1381
Phone  847 362 3950
Fax      847 362 5290

**Engineering Review 2**
**Autumn Ridge**
**Rollins Road**

October 23, 2007

Ms. Cynthia R. Flower, P.E.
Bollinger, Lach & Associates, Inc.
600 Route 31, Suite B
Crystal Lake, IL  60012

Dear Ms. Flower:

Thank you for your engineering submittal for the Autumn Ridge Development on Rollins Road in the Village of Grayslake. Attached is a copy of the Major Access Permit Checklist that will be used to track your progress through our process. This will be updated with every submittal made to our office and a copy of this checklist will be returned to you. The following comments are made:

1. We are returning the application and application fee for the emergency access on Rollins Road. As was discussed in the meeting of March 5, 2007, any emergency access request must come from the Municipality or Fire Protection District. **This has not yet been addressed by the Village or Fire Protection District as to why an emergency access is needed less than 200 feet from the subdivision access.**
2. The stationing does not match the stationing you were provided from the right-of-way strip maps. The stationing shown was the baseline of construction that you may have gotten from the County's construction project. Should you wish to show this that is okay, but your construction must be tied into the stationing of Rollins Road. **This has not yet been fully addressed as all your construction must be tied to the existing stationing of Rollins Road, this plan still shows all stations and offsets to the baseline of construction from a County construction project.**
3. We have no objection to the filling shown on Sheet 10A.

The following items must be submitted before the Access Permit can be issued:

1. Four final sets of engineering plans, signed and sealed. Either the plans need to change to remove the proposed emergency access, or an application must be received from the Village of Grayslake for the emergency access.
2. A $1550.00 permit fee and inspection fee (check made payable to "Treasurer - County of Lake". This does not include any permit fees for an emergency access.
3. Acceptable Proof of Insurance adding the Lake County Division of Transportation, its employees and its agents, and the County of Lake, its employees and its agents, as additional insured to the Campus Investments General liability insurance, per Chapter 15 of the Access Ordinance.
4. Acceptable Performance Guarantee in the amount of $62,600.00 for a two year (minimum) term. Enclosed is the format of the Irrevocable Letter of Credit.

Division of Transportation

 **LakeCounty**

Martin G. Buehler, P.E.
Director of Transportation/County Engineer

600 West Winchester Road
Libertyville, Illinois 60048 -1381
Phone  847 362 3950
Fax     847 362 5290

## Major Access Permit Checklist

The following checked items must be provided to the LCDOT permit department for review and approval.  Additional information may be requested during your permit process.  The format for the preparation of these items may be found in the Lake County Highway Access Regulation Ordinance. The ordinance may be found online at www.co.lake.il.us/dot

### Autumn Ridge

| Not Required | Submitted | Completed | Date Completed | |
|---|---|---|---|---|
| ☐ | ☐ | ☒ | 3-05-07 | **Pre-Application Meeting** |
| ☒ | ☐ | ☐ | XXX | **Variance Application & Fee** |
| ☐ | ☒ | ☒ | 7-20-07 | **Access Application & Fee** |
| ☐ | ☒ | ☒ | 7-20-07 | **Facility Application & Fee** |
| ☐ | ☐ | ☐ | | **Municipal Acceptance Form** |
| ☐ | ☒ | ☒ | 7-20-07 | **Photographs of the Right-of-Way** |
| ☐ | ☒ | ☒ | 10-23-07 | **Sight Distance Study** |
| ☒ | ☐ | ☐ | XXX | **Traffic Impact Study** |
| ☒ | ☐ | ☐ | XXX | **Traffic Signal Warrant Analysis** |
| ☐ | ☒ | ☐ | | **Geometric Plan** |
| ☒ | ☐ | ☐ | XXX | **Pavement Design** |
| ☒ | ☐ | ☐ | XXX | **Drainage Study** |
| ☒ | ☐ | ☐ | XXX | **Water Quality Plan** |
| ☐ | ☐ | ☐ | | **Plat of Dedication** |
| ☐ | ☐ | ☐ | | **Plat of Subdivision** |
| ☐ | ☒ | ☐ | | **Engineering Plans** |
| ☐ | ☒ | ☒ | 10-23-07 | **Cost Estimate** |
| ☐ | ☐ | ☐ | | **Performance Guarantee (Letter of Credit)** |
| ☐ | ☐ | ☐ | | **Certificate of Insurance & Endorsement** |
| ☐ | ☐ | ☐ | | **Permit & Inspection Fees** |
| ☐ | ☐ | ☐ | | **Resident Engineer Letter** |
| ☐ | ☐ | ☐ | | **On-site Engineering Plan (approved by Village)** |
| ☐ | ☐ | ☐ | | **Electric Utility Application (N/A)** |
| ☐ | ☐ | ☐ | | **Telephone Utility Application (N/A)** |
| ☐ | ☐ | ☐ | | **Cable Utility Application (N/A)** |
| ☐ | ☐ | ☐ | | **Gas Utility Application (N/A)** |
| ☐ | ☐ | ☐ | | **As-built Plans** |
| ☐ | ☐ | ☐ | | **Performance Guarantee Inspection Request Letter** |
| ☐ | ☐ | ☐ | | **Maintenance Guarantee (Letter of Credit)** |
| ☐ | ☐ | ☐ | | **Maintenance Guarantee Inspection Request Letter** |

Last printed 10/23/2007